JUDGE WOODS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALROY  RICHARDS

_____

_____

Write the full name of each plaintiff.

-against-

1.CITY OF NEW YORK COMPTROLLER

2.NEW YORK CITY PARKS & RECREATION

3.EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

_____

Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

# 1 9 CV 10697

_____CV_____
(Include case number if one has been
assigned)

Do you want a jury trial?

☒ Yes     ☐ No

## EMPLOYMENT DISCRIMINATION COMPLAINT

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with
the court should therefore *not* contain: an individual's full social security number or full birth
date; the full name of a person known to be a minor; or a complete financial account number. A
filing may include *only*: the last four digits of a social security number; the year of an individual's
birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule
of Civil Procedure 5.2.

---

Rev. 3/24/17

## I.   PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Alroy | D | Richards |
|---|---|---|
| First Name | Middle Initial | Last Name |

| 179 Elm Street |
|---|
| Street Address |

| Valley Stream (Nassau) | NY | 11580 |
|---|---|---|
| County, City | State | Zip Code |

| 347-779-3620 | alroyrichards7@gmail.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

| CITY OF NEW YORK COMPTROLLER |
|---|
| Name |
| 1 Centre Street, Room #1225 |
| Address where defendant may be served |

| New York | NY | 10007-2341 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

| New York City Parks and Recreation (c/o Legal Department) |
|---|
| Name |
| Central Park, 830 - 5th Avenue (Room #313) |
| Address where defendant may be served |

| New York | NY | 10021 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Name

**33 Whitehall Street (c/o Legal Department)**

Address where defendant may be served

| New York | NY | 10004-2112 |
|---|---|---|
| County, City | State | Zip Code |

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

**New York City Parks and Recreation**

Name

**179 Elm Street**

Address

| Queens | NY | 11368 |
|---|---|---|
| County, City | State | Zip Code |

## III.   CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

- ☒ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

  The defendant discriminated against me because of my (check only those that apply and explain):

  - ☒ race:          Black
  - ☒ color:         Black
  - ☐ religion:      _____
  - ☐ sex:           _____
  - ☒ national origin:   Jamaican. 10 Year Greencard.

☒ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is:  Black

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year:  1972

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is:  _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is:  _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.   Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

Breach of Contract ("Wrongful Termination"), Retaliations, Libel, Negligence, Breach of Due & Admin. Processes, Emotional Distress, Hostile Work Environment, inter alia.

## IV.   STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐ did not hire me

☒ terminated my employment

☐ did not promote me

☐ did not accommodate my disability

☒ provided me with terms and conditions of employment different from those of similar employees

☒ retaliated against me

☒ harassed me or created a hostile work environment

☐ other (specify):   Breach of Contract ("Wrongful Termination" - At Will Employment Exemptions),

Breach of Due & Admin. Processes, Hostile Work Environment, (Non-Sexual) Harassment, Emotional Distress, Libel, Negligence,

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

Additional pages are attached, for the Court's perusal. Matter had been with the Equal Employment Opportunity Commission, since August 31, 2017, until August 31, 2019. No actions were taken by Respondents #2/Defendants #2,despite the many verbal reports, the many visits to other (Corporate) locations to lodge related complaints, as well as the many letters written and submitted, by the

Plaintiff, to the Respondent s#2/Defendants #2. Instead, the agents (well some), at the local level retaliated against the Plaintiff, publicly humiliated Plaintiff, embarrassed Plaintiff, harassed Plaintiff, concocted against the Plaintiff, caused the Plaintiff to suffer further indignity, and which furthered loss of Plaintiff's humanity. Human Rights of the Plaintiff were not upheld. There were no official

investigations into the complaints, by the Plaintiff, despite the records (Memo Books - to be submitted later in the case), notes, meetings, and correspondence. No Good Faith were shown, even despite the concepts taught by proponents of Respondents#2/Defendant #2, in training, and via pamphlets, etc. Attached also is former Mayor Mr. Michael Bloomberg's directions, in a Manual, issued to the Plaintiff, by the said Respondents #2/Defendants #2. Standards of Conduct were also outlined, in the dispensation, to the Plaintiff, upon being employed. Yet, the agents (some) of Respondents #2/

#1/Defendant #2, never adhered to these tenets. Nor did Respondents #2/Defendant #2, ensured that these were upheld, as per City, State and Constitutional requirements. Diversity, inclusiveness, non-discrimination, equal opportunity, and equal employment, were blantantly breached, and where the Plaintiff sought to have these upheld, and restored, Plaintiff was instead retaliated against. The

behaviors towards the Plaintiff by (some of) the said agents of Respondents#2/Defendants #2. The actions, or lack thereof, from (some) agents of Respondents #2/Defendants #2, are tantamount to being malicious, hateful, disdain, Nativism, Isolationism, inter alia. Subsequently, Respondents #2/Defendants #2 solution to the issue, was to terminate the Plaintiff, without cause, without Due Process, and without Administrative Process, causing actions that are ultimately egregious, arbitrary, and capricious. Hence, Plaintiff is merely Appealing that E.E.O.C. should have found more than merits in the

Complaints made by the Plaintiff. No Appeal Processes were embarked on, by Respondents#1/Defendants#2, nor Defendants #3/Defendants #3, latter being the E.E.O.C., even despite At-Will Employment Exemptions, to name a few.  Plaintiff have attached Exhibits, in aid of his Claims, but that these are not limited to the attached.

Att.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

      ☒ Yes (Please attach a copy of the charge to this complaint.)

            When did you file your charge?   August 31, 2017.

      ☐ No

Have you received a Notice of Right to Sue from the EEOC?

      ☒ Yes (Please attach a copy of the Notice of Right to Sue.)

            What is the date on the Notice?   August 31, 2019.

            When did you receive the Notice?   September 2, 2019.

      ☐ No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

      ☐ direct the defendant to hire me

      ☐ direct the defendant to re-employ me

      ☐ direct the defendant to promote me

      ☐ direct the defendant to reasonably accommodate my religion

      ☐ direct the defendant to reasonably accommodate my disability

      ☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

The sum of three million seven hundred thousand dollars ($3,700,000.00) with

interests, and any other relief, deemed just, by this honorable Court.  A break down of figures (nature

of entire Claims) to be shown in attached section. Exhibits have also been  attached, by the Petitioner/Plaintiff.

Att.

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| November   , 2019 | | x | |
|---|---|---|---|
| Dated | | Plaintiff's Signature | |
| Alroy | D. | Richards | |
| First Name | Middle Initial | Last Name | |
| 179 Elm Street | | | |
| Street Address | | | |
| Valley Stream (Nassau) | | NY | 11580 |
| County, City | | State | Zip Code |
| 347-779-3620 | | alroyrichards7@gmail.com | |
| Telephone Number | | Email Address (if available) | |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes    ☐ No

    If you do consent to receive documents electronically, submit the completed form with your
    complaint. If you do not consent, please do not attach the form.



**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1. Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2. Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1. You will no longer receive documents in the mail;

2. If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3. This service does *not* allow you to electronically file your documents;

4. It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# UNITED STATES DISTRICT COURT

## For The

## <u>Southern District Of New York</u>

**ALROY  RICHARDS**

**Petitioner/Plaintiff**

Vs.

**APPENDIX**

Civil  Action  No.: 19CV 10697

**JURY TRIAL: Yes**
**(If applicable)**

**1.CITY  OF  NEW  YORK  COMPTROLLER**
**2.NEW  YORK  CITY  PARKS  and  RECREATION**
**3.NYS  EQUAL  EMPLOYMENT  OPPORTUNITY  COMMISSION**

**Respondents/Defendants**

### <u>APPENDIX  TO  EMPLOYMENT  DISCRIMINATION</u>  Complaint

- I, Alroy  Richards, is the Petitioner/Plaintiff, and that my address is 179 Elm Street, Valley Stream, N.Y. 11580, and that I worked as a *City Seasonal Aide* (*CSA*), for the New York City Parks and Recreation, **from June 14, 2017, to August 26, 2017**.

- That the Petitioner/Plaintiff has brought forth this Civil Action, in Federal Court, against the following Respondents/Defendants: City of New York Comptroller, New York City Parks and Recreation, and the New York State Equal Employment Opportunity Commission (E.E.O.C.), and that the addresses are as follows: 1 Centre Street – Room #1225, New York, N.Y. 10007 – 2341 (Comptroller), then The Arsenal, Central Park, 830 – 5th Avenue, Room #313, c/o Legal Department, and lastly, (E.E.O.C.) New York District, 33 Whitehall Street – 5th Floor, New York, N.Y. 10004 – 2112, respectively.

- That this Civil Action, is based primarily on the tenets of: ***<u>Breach of Contract</u> ("Wrongful Termination", and At-Will Employment Exemptions,** plus breach of explicit, and implicit contracts*), Breaches of ***<u>Civil Right Act</u>*** (C.R.A.), of ***<u>1964</u>*** (*race*, *national origin* – encompassing perceived Nativism, and Isolationism), ***<u>Retaliations</u>*** (for Petitioner/Plaintiff exercising *First Amendment*, and *Fifth Amendment* rights, and for being a *"Whistleblower"- Legislations in place* (**<u>Whistleblower Protection Act, of 1989</u>**, *5 U.S.C. 2302(b)(8)-(9) – Pub.L.101-12. that mitigate against such*) ***<u>Hostile Work Environment</u>*** (*verbal abuses, attempted physical attacks* on Petitioner/Plaintiff, by Supervisory staff of Respondents #2/Defendants #2, plus those associated with some

patrons). Further, elements of *__Libel__* (despite having control of all records, resources, and information, publications, by agents of Respondents #2/Defendants #2, without ***Due Process***, nor due considerations, for ***Natural Justice***, and ***Administrative Process***, for Petitioner/Plaintiff – without investigating unsolicited written and verbal reports, made by Petitioner/Plaintiff, which are without duress).

*__Emotional Distress__* (***willful***, ***intentional***), is another claim, as well as *__Negligence__* (in not following up on such reports, made by the Petitioner/Plaintiff, neither did agents of Respondents #2/Defendants #2 ensured ***safe***, ***fair***, ***work environment***, nor ***investigate***, ***collate*** information, ***mitigate***, call ***Hearing***, by ***competent***, ***independent*** Hearing Officer, or other ***meetings***, then to make ***informed***, ***unbiased decisions***, then inform, and make ***alleviations/recommendations***). Also proven (Non-Sexual) *__Harassment__*, towards Petitioner/Plaintiff, by Supervisors *__Sgt. Cenko Soyer__* and *__Sgt. Muhammed Kamel__* (Parks and Recreation designated Seargants), of Respondents #2/Defendants #2, through series of ***direct***, and ***intentional*** verbal, ***physical impositions***, ***physical threats***, and ***intimidations***, publicly, in the presence of hundreds of patrons, and staff, alike. Petitioner/Plaintiff is also claiming the *__Age in Discrimination Act__*, of *__1975__*.

- That the Petitioner/Plaintiff, is *__appealling__* the Equal Employment and Opportunity Commission's *__Decision__*, and *__Determination__*, dated ***August 31, 2019***. Also, that in both processes with Respondents #2/Defendants #2, and Respondents #3/Defendants #3 (E.E.O.C.), that *__no Appeals processes were engaged__*, despite *__Petitioner's/Plaintiff's__* formal or *__written requests__*, on at least two(2) occasions, each. Petitioner/plaintiff is of the view that this Appeal, in principle, is called an *__Article 78 Proceeding__*.

- The Complaints and Claims, were submitted by the Petitioner/Plaintiff, to both Respondents #1/Defendant #1 (Comptroller), being **file #2019PI026515**, on October 1, 2019, and with Respondents #3/Defendants #3, as *__file #846-2017-36034__*, this being done, on August 31, 2017. As Pro-Se, and being new to this country, and to the jurisdictions, the Petitioner/Plaintiff had not been told, at the outset, to report the Claims, and Allegations, to either Respondents #3/Defendants #3, neither to Respondents #1/Defendants #1 – "Without Prejudice", to any Respondents/Defendants, and its agents.

- That unless this honorable Court may decide otherwise, in the interests of resolving the case, or that the Respondents/Defendants may agree upon, otherwise, after consulting with the Petitioner/Plaintiff, latter having agreed, that the Petitioner/Plaintiff is *__requesting a Trial by Jury__*, *once, and if applicable*.

- Petitioner/Plaintiff wishes to also inform this honorable Court, that *__no Good Faith__*, were shown, in the possibilities for any ***Mediations***, or ***Conciliatory talks***, given the extent of damage to Petitioner/Plaintiff, emotionally, to his career, to his ***welfare***, ***character***, and ***reputation***.

- That the Petitioner/Plaintiff, in support of his Claims, have procured *__four(4) Memo Books__*, three(3) comprising *__fifty(50) pages each__*, and the final one, being ten(10) pages, which were issued to him, by Respondents #2/Defendants #2, to record daily events. In the event that it is warranted, the Petitioner/Plaintiff will provide copies, to this honorable Court. They are in Petitioner's/Plaintiff's own handwriting, with the daily signatures of related ***Supervisors***, *__Sgt. Cenko Soyer__* and *__Sgt. Muhammed Kamel__*, of

Respondents #2/Defendant #2. Without Prejudice, Without Any Intended Offence, and Without Discriminating, Sgt. Cenko Soyer is **white**, while Sgt. Muhammed Kamel is **Hispanic** (reportedly converted to Muslim). There are <u>**Exhibits**</u> that the Petitioner/Plaintiff had submitted to Respondents #2/Defendants #2, plus, similarly, to Respondents #1/Defendants #1. These are also attach, <u>**numbering 1 – 51**</u> (top left hand corner of every Exhibit), but which are not just limited to the submissions, and which include Petitioner's/Plaintiff's **letters**, to Respondents #2/Defendants #2 (copies also being submitted, in advance, to Respondents #3/Defendants #3), as follows: ***July 25, 2017*** (ten pages), ***August 7, 2017*** (***two letters***, 4 pages, and 5 pages, respectively), August 17, 2017 (4 pages), ***August 28, 2017*** (4 pages), inter alia. <u>***Termination***</u> of Petitioner/Plaintiff, was **on <u>August 26, 2017</u>**.

- Other incidences were documented, by Petitioner/Plaintiff, which did not necessarily result in any adverse effects, nor matters to be disputed. Congruence, truth, facts, and consistency is critical, plus these reports were routine, and unsolicited.

- Exhibits also included Respondents #2/Defendants' #2's <u>***Standards of Conduct***</u>, and <u>***Conflicts of Interests***</u>, which is also part of authoritative and guiding principles, used by Respondents #1/Defendants #1. Conduct of all related employees, inclusive of Management (Respondents #1/Defendants #1), is imperative, especially in dealing with the public, and ensuring accountability.

- Former Mayor Mr. Michael Bloomberg's own statement, is seen in <u>***Equal Employment Opportunity***</u> (E.E.O) <u>***Booklet***</u>, issued to Petitioner/Plaintiff, by Respondents #2/Defendants #2. Excerpts attached, by Petitioner/Plaintiff, and which were also given to all Respondents/Defendants, by Petitioner/Plaintiff, in his submissions, at the relevant times, as a reminder.

- In the preceding, ideally, document alluded generally to: <u>***diversity***</u>, <u>***inclusiveness***</u>, <u>***non-discrimination***</u>, <u>***equal opportunity***</u>, and <u>***equal employment***</u>, *amongst other mandates*. Were these principles being upheld by Respondents #2/Defendants #2, relative to the Petitioner/Plaintiff? It does not appear so - blatantly. These are inalienable rights, postulated by both the City of New York, the State of New York, as well as Federal (Constitutionally, in general, that is).

- Mostly, the a pivotal matter is when CSA staff Ms. Shileah McClain "hatefully" yelling out to Petitioner/Plaintiff, and telling him that – <u>***"Why don't you go back to your country"***</u>? ***Exhibit 31.*** This was done on July 16, 2017, at Astoria Pool (Queens), when a meeting was called by Supervisor, Sgt. Cenko Soyer, for input, and suggestions or recommendations, as to how to handle situations, when patrons produce problems (unruly patrons), and what to do, in the event that the Supervisors, and the police, cannot be reached. Interestingly, it emanated from an incident that day (July 16, 2017), that the Petitioner/Plaintiff had reported, when an adult male patron left his alleged five(5) year old daughter, in the pool, to swim alone, and then said adult male, went on a frolic, in the facility, with his cellphone (breach), seemingly taking pictures, or videos, of women – supposedly. Subsequent to immediate reporting of incident, by Petitioner/Plaintiff, Petitioner/Plaintiff later learnt that the "violator" reported against the Petitioner/Plaintiff, and was given the right, before looking at the report, by

Petitioner/Plaintiff, nor before checking the fully functional Closed Circuit Television (C.C.T.V.) images, at the facility, as referred to, by Petitioner/Plaintiff.

- In following on the preceding…Sgt. Cenko Soyer, and other staff were present, in that material meeting, and heard what CSA Shileah McClain said to/about the Petitioner/Plaintiff. Memo Book records will show. Petitioner/Plaintiff then asked Sgt. Cenko Soyer if he heard what CSA Shileah McClain said, to which Sgt. Cenko Soyer said – **"yes, I fucking heard, so what"**. On hearing this, Petitioner/Plaintiff again asked Sgt. Cenko Soyer the said question (if he heard). Sgt. Cenko Soyer, again said – **"yes, I heard; so what"?** These are in the Memo Book records. The said Sgt. Said that that CSA McLain said – "why don't you (Petitioner/Plaintiff) go back home", which is not true.

- Alleged matter of a (personal) ___**name tag**___, and later a ___**hat**___, issued by Respondents #2/Defendants #2 (hat lost/"stolen", after Petitioner/Plaintiff started documenting serious breaches). Petitioner/Plaintiff is new to Respondents #2/Defendants #2, unlike all the other staff. No one indicated how, nor where, to obtain a name tag. Besides, the Petitioner/Plaintiff was not the only staff without a hat, or name tag. More than half staff, inclusive of most Supervisors, example Sgt Cenko Soyer and Sgt. Muhammed Kame, did not have either a name tag, or hat, nor both. Copy of ___**receipt for name tag**___ is attached (**Exhibit #50**), bought by Petitioner/Plaintiff, on ___**August 1, 2017**___.
  Inclusive of the said Supervisors mentioned, all the staff are returning (yearly) staff, excluding the Petitioner/Plaintiff. Yet, only the Petitioner/Plaintiff was being verbally abused, "threatened", written up, harassed, embarrassed, shown condescending behavior, amongst other things, based on the recordings that Petitioner/Plaintiff had been making. Issues of the name tag, and hat, along with the various confrontations shown by Sgt. Cenko Soyer, and Sgt. Muhammed Kamel, are documented throughout Petitioner's/Plaintiff's various writings, in Memo Books, and by way of letters (plus verbal complaints).  Records of **"stolen"** hat, voluntarily made by Petitioner/Plaintiff (written, plus done verbally). Petitioner asked that Closed Circuit Television (C.C.T.V.) be viewed, as hat was taken, in meeting, where only staff was present (**Exhibit #33**)

- Petitioner/Plaintiff was being directly told, by **Sgt. Cenko Soyer, and Sgt. Muhammed Kamel, that Petitioner/Plaintiff should desist from making records in the Memo Books**. Given higher, and hirer mandates, Petitioner/Plaintiff respectfully refused, as these records can become crucial, in protection of all persons, and ensure safety (to name a few), subject to the observations, and happenings.

- Petitioner/Plaintiff, via his letters, had indicated that he (incumbent) would have been further victimized, based on the truth being reported, by Petitioner/Plaintiff. The Petitioner/Plaintiff also made reference to the critical ___**Performance Evaluation (Exhibit #13)**___, long before one was due, and predicted that retaliations from agents of Respondents #2/Defendants #2, were imminent. Date of this Performance Evaluation is ___**August 1, 2017**___, and which was **only signed by Sgt. Cenko Soyer**. There are three(3) Supervisors: Sgt. Cenko Soyer, Sgt. Odelia Lee, and Sgt. Muhammed Kamel. Said instrument was handed to me, by Sgt. Cenko Soyer and Sgt. Muhammed Kamel, **without any discussions** with Petitioner/Plaintiff, **without explaining how process works**, **neither criteria**. No efforts were made, as to arrival of positives, or negatives,

*corrections*, or **training**, if necessary, nor other (legal, established, agreeable, congruent) recommendations.

- No copies of any reports, whether written by patrons, or staff (Supervisors, or Management) were ever provided to the Petitioner/Plaintiff, for veracity, or to challenge such. Supposed "untrue reports", written by patrons (Petitioner/Plaintiff is wondering "whom knows whom") were only told to Petitioner/Plaintiff, after termination. No mention will even be made of the "convenient", willfully deceiving and highly untrue reports, allegedly written by some ("conflicting") staff. Again, the reports were on pretexts, done after termination, aim at trying to discredit or muzzle the Petitioner/Plaintiff, are mischievous, and trying to desist or intimidate the petitioner/Plaintiff, in taking matters further, to a duly constituted forum.

Now, based on the rather limited, **_baseless_**, **_pretexts_**, defense, by Respondents #2/Defendants #2, filled with **_innuendos_**, at most, and which appear to employ elements of **_malice_**, and **_disdain_**, towards Petitioner/Plaintiff. The Petitioner/Plaintiff will make a summary submission, in that regard. The attachments/Exhibits, to this honorable Court, also include a Statement position of (Defense) Counsel, to the NYS Equal Employment Opportunity Commission (Respondents #3/Defendants #3), along with those from purported employees of Respondents #2/Defendants #2.
**_Out of these six(6) concocted, inartful, seemingly coerced statements, from these alleged employees, five(5) are personnel that Petitioner/Plaintiff had made crucial, and important complaints about. These written and verbal complaints about the said conflicting witnesses, are unsolicited, without duress, and were done concurrently, during Petitioner's/Plaintiff's employment_**, with Respondents #2/Defendants #2, and "not after complaints to the NYS Equal Employment Opportunity Commission. Ironically, the two(2) main Supervisors, Sgt. Cenko Soyer and Sgt. Muhammed Kamel, being the personnel that the Petitioner/Plaintiff has constantly complained about (few others too though), and wrote reports about, were not interviewed, by Management of Respondents #2/Defendants #2, neither submitted any reports. Rightfully so, given the extent of the evidences, as documented by the Petitioner/Plaintiff.

Respondents #2/Defendants #2, in view of Petitioner/Plaintiff, do have case to answer to, relative to the complaints, and claims, by the Petitioner/Plaintiff. **Their (Respondents #2/Defendants #2) defenses, as per Counsel's May 30, 2018 presentations, to the Equal Employment Opportunity Commission, are set out below, in summary** (records being attached). **_Petitioner's/Plaintiff's case is not limited to these, contrary to what is being presented by Respondents' #2/Defendant #2 Counsel_**. Respondents #1/Defendants #1, are the "oversight"/or "accounting body", for Respondents #2/Defendants #2. Respondents #3/Defendants #3, in their supposed opinion, may very well think that "the Courts is the best place to seek redress", in this matter, as Respondents #2/Defendants #2, are totally not without blame. **Petitioner/Plaintiff did not receive Counsel's reported March 30, 2018 Verified Answer, and attachments, until May 2019** – from Equal Employment Opportunity Commission.

**CASE, AS PER RESPONDENTS #2/DEFENDANTS #2:**

**i).**First report, from one **_Mr. Heny Michael_**, a suppose **patron**. Whom is he, really? This report was typed I computer format. Respondents #2/Defendants #2 have attached copy of an email affiliated document, dated July 3, 2017, which was supposedly authored by their **employee**, Ms. **_Deborah Zingdale_**. This docuemnt, was directed to (addressed to) an email address, as follows: **_'habbi_333@yahoo.com'_**. Recipient of this email, is seemingly a non-existent "complainant" ('ghost' patron), towards the Petitioner/Plaintiff. Apologies were in order (email contents) for this "complainant", such apologies seen to be effectuated by Ms. Deborah Zingdale. None to the Petitioner/Plaintiff, as well as no investigations, despite verbal, and written reports (in Memo Book), by Petitioner, which no one asked him to complete, nor to submit. Fortunately, Petitioner/Plaintiff had willingly volunteered this information – no solicitation, by Supervisory, nor Management i.e. matter was immediately documented, and reported, by Petitioner/Plaintiff. Petitioner/Plaintiff was not brought into the discussions, prior to any libelous pronouncements, which is rather irresponsible, by the party, or parties, casting aspersions. As indicated in subsequent writing, as a response to such information being received from the Equal Employment Opportunity Commission, information being forthright falsehoods. Petitioner/Plaintiff had this report, in his Memo Book, as occurring on **_July 2, 2017_**. The complaint was against this rude, dangerous patron, whom exposed his less than 2 year old child, to very extreme danger ("Child Abandonment", I would say). Part of **_Exhibit #45_**.

**(ii).**Two(2) written reports (done long after Petitioner's/Plaintiff's termination), reportedly done by **CSAs**, **_Ms. Shileah McClain_**, and **_Ms. Michelle Wright_**, both 'close' friends of Sgt. Cenko Soyer. These reports are allegedly **_dated July 22, 2017_**, and **_July 23, 2017_**, respectively. Ms. Shileah McClain, is the individual whom made the discriminatory and nativism comment, to the Petitioner/Plaintiff, of – "Why don't you go back to your country"? Ms. Michelle Wright is apparently (as I can recall) one of the smokers, smoking on the premises, in full view of staff, and patrons. Patrons are being told not to smoke, or risk being "evicted", or barred, from premises – rule, policy, signs are discinct. Petitioner/Plaintiff had made previous complaints, to include written ones, to these effect – immediately, as they happened, not afterwards, nor under duress, neither being "forced" to do so, or may be under **_quid pro quo_**. Exactly, quid pro quo. **_When were these reports requested? By whom? Why? What about other related reports, say for the July 16, 2017 incident of national origin, and nativism?_** As Petitioner/Plaintiff indicated in his response to Respondents #2/Defendants #2 Counsel, via the equal Employment Opportunity Commission, these reports, from both these employees, are untrue. Copies attached. Ms. Michelle Wright is reportedly a yearly returnee, to the summer program, for quite some time. Part of **_Exhibit #45_**.

**iii).**Another report was allegedly written by **_PEP Officer, Ms. S. Ross_**, in her Memo Book dated July 25, 2017. Now, Ms. S. Ross, as Petitioner/Plaintiff can recall, is one of the smokers, encompassed in the general reporting, by the Petitioner/Plaintiff. Patrons are being told not to smoke, or risk being "evicted", or barred, from premises – rule, policy, signs are distinct. Ms. S. Ross is also a full time PEP employee of Respondents #2/Defendants #2, and has been working with this employer, for quite some time, the allegations went. CSA S. Ross was extensively included in the Petitioner's/ Plaintiff's Memo Book, as being present, as witness, when Sgt. Cenko Soyer tried to get Petitioner/Plaintiff to exit the Astoria Pool premises, without permission, or authorization, when also incumbent was verbally, and almost physically abused, by Sgt. Cenko Soyer. In full view, and earshot of Ms. S. Ross, whom, at all times, is only two(2)

feet away, each from either myself, or Sgt. Cenko Soyer, together, in the same place, when these related incidences unfolded. It is definitely disingenuous to see that PEP Officer S. Ross, may be after duress, or other threats, or possibly quid pro quo, has chosen not to tell the truth. Petitioner's/Plaintiff's  Memo Book excerpt, and untrue report, by this conflicting employee, is also attached. Part of **Exhibit #45**.

**iv)**.Then, an August 25, 2017 report, by **Pool Supervisor**, one **Mr. Holly Tyson**. Mr. Holly Tyson, is also a regular smoker, on the premises, in the presence of both staff, and patrons. Again, patrons are being told not to smoke, or risk being "evicted", or barred, from premises – rule, policy, signs are distinct. Mr. Holly Tyson's report is **dated August 25, 2017**. Petitioner/Plaintiff had artfully documented an unwarranted outburst, boisterous, and threatening behavior, towards him, by Mr. Holly Tyson, which was immediately documented in Petitioner's/Plaintiff's Memo Book. Petitioner/Plaintiff also reported said verbally to Supervisor Sgt. Mr. Muhammed Kamel, a few minutes after. Sgt. Muhammed Kamel told Petitioner/Plaintiff that he (said Supervisor) will be reporting Mr. Holly Tyson, to Borough level top Command (one **Captain Andrew Greenfield**). Also, Sgt. Muhammed Kamel told Petitioner/Plaintiff not to pay Mr. Holly Tyson any mind, and that Petitioner/Plaintiff did nothing wrong in the issue. These events were also documented in Petitioner's/Plaintiff's Memo book – copies attached, plus Mr. Holly Tyson's untruth, and malicious report, filled with vendetta. Reports sent through the Equal Employment Opportunity Commission, Respondents #2/Defendants #2 Counsel remitting same, dated March 30, 2019. What a convenient date of the "report", by Mr. Holly Tyson? The day prior to the termination of the Petitioner/Plaintiff. In view of Petitioner/Plaintiff, this report sent by the Respondents #2/Defendants #2, was "procured" after it was realized that the Petitioner/Plaintiff, is pursuing legal matters, in the development – not before, or at the time of the report, as per the claim – of August 25, 2017. Part of **Exhibit #45**.

**v)**.Finally, a supposed report from a **Ms. Ashley Bernal**, employee. This report is also dated **August 25, 2017**. These allegations by her, are indeed frivolous, and arise, now, due to subsequent position taken by Petitioner/Plaintiff prior to (written records, and reports) and subsequent to termination (legal recourse). The report, by Ms. Ashley Bernal, as with the others, are without merit, are untrue, and appeared coerced. Part of **Exhibit #45**.

As per the presentations, by Respondents' #2/Defendant #2 Counsel, via **March 30, 2018 VERIFIED ANSWER** (and with all due, and greatest respects to Counsel), **these are the strong points, on which the case of the causative agents or causative employee, appear to reside. In Petitioner's/Plaintiff's views, these reports, and claims, by the Respondents #2/Defendants #2, are folly.** Petitioner/Plaintiff received Answer from Respondents #2/Defendants #2 Counsel, in May 2019.

### Petitioner's/Plaintiff's Own Brief Summation , of Claims/Complaints

Petitioner/Plaintiff is putting to this honorable Court, that the Defenses being presented by the Respondents #2/Defendants #2, in particular, are indeed frivolous, and that **such Defenses be set aside, in favor of the Petitioner/Plaintiff**. In addition, Petitioner/Plaintiff is **requesting that relevant aspects of the Decision, and Determination, by the Respondents #3/Defendants #3, be overturned, by this honorable Court**, again, **in favor of the Petitioner/Plaintiff**.

- Respondents (specifically, and in particular, Respondents #2/Defendants #2, then Respondents #3/Defendants #3) have failed to show that no Probable Cause exist, for the Petitioner's/Plaintiff's claims. Actions of some of the agents of Respondents #2/Defendant #2, are purely on *Pretexts*, and *pre-determined* (*prejudicial*) towards Petitioner/Plaintiff, for being different, with intended positive outcomes.
- Agents of Respondents #2/Defendants #2 cannot deny that the reports made, by Petitioner/Plaintiff, against Sgt. Cenko Soyer and Sgt. Muhammed Kamel, verbally, in meeting, by letters, and by Memo Books, are indeed true. In addition, that other misconduct by other staff, as reported by the Petitioner/Plaintiff, were done on a professional basis, as per requirement, were without motive, nor malice, and can stand to any scrutiny. See Exhibits.
- Petitioner/Plaintiff is asking this honorable Court, to unearth the malicious, unverifiable, vindictive allegations, as Defense, being put forward, by particularly Respondents #2/Defendants #2. Reports by the conflicting and alleged witnesses, on behalf of Respondents #2/Defendants #2, are out of malice, bruised egos, motives, and at most Nativism, and Isolationism, at most, towards the Petitioner/Plaintiff.
- Actions of the Respondents #2/Defendants #2, are rather *egregious*, *capricious*, and *arbitrary*, and especially in arriving at termination of the Petitioner/Plaintiff, on August 26, 2017.
- No reports, from the Petitioner/Plaintiff were actually investigated, except in very few circumstances, by the agents of Respondents #2/Defendants #2. There were negligible follow up, at most, if any. These few follow ups, included email correspondence from Respondents' #2/Defendants' #2's *Ms. Iyana Titus*, *Deputy Commissioner*, in charge of Equal Employment Opportunity, and that of *Deputy Inspector*, *Mr. Benny McCants* (with his August 2, 2017 meeting, with Petitioner/Plaintiff, and two Captains of Queens Borough Management – Managers). Alluded to, in Petitioner's/Plaintiff's written correspondence, in form of letters, as well as via Memo Book #3, respectively. *Exhibit #7*, and *Exhibit #37*.
- Alleged concocted, biased, egotistical reports, from reportedly two(2) patrons, and few employees (Conflicts of Interests) of Respondents #2/Defendants #2, were not presented previously, and were done after the termination of the Petitioner/Plaintiff, and subsequent reports to Respondents #3/Defendants #3, by the Petitioner/Plaintiff. Petitioner/Plaintiff was not afforded natural Justice nor engaged in *Disclosure*, neither given the rightful opportunity, to challenge these untruths, by *calling of witnesses*, *cross-examination of witnesses*, in an appropriate, *duly convened*, *Hearing setting*, with a competent Hearing Officer. *Predisposition* towards the Petitioner/Plaintiff seemed to have dominated, falsely accusing the Petitioner/Plaintiff, causing *irreprehensible harm*.
- Despite many references to the *Closed Circuit Television* (*C.C.T.V.*) *images*, and other records, and overwhelming independent *written and verbal reports, from Petitioner/Plaintiff*, *concurrently*, and *simultaneously*, *documented immediately*, not

after wards, or after any major "impacting" event, no effective investigations by agents of Respondents #2/Defendants #2 emanated. Example, *Exhibit #39*.

- Petitioner/Plaintiff do have ***common-law claims***, in the matter.
- Callousness, abuse and ***usurping of power***, and ***abuse of authority***, abounded, leading to extreme prejudice, and unreasonableness, by agents of Respondents #2/Defendants #2, abounded, towards the Petitioner/Plaintiff.
- ***At-Will Employment Exemptions***, were provided to especially Respondents #3/Defendants #3, plus to Respondents #1/Defendants #1, regarding the entire escapade. Constitutional and other provisions were cited, and alluded to, by Petitioner/Plaintiff, making case, or claims otherwise of (especially) Respondents #2/Defendants #2, not plausible. Examples of cases were also provided, by Petitioner/Plaintiff. *Exhibit #15*.
- Petitioner/Plaintiff was dealt with in an ***inhumane***, ***prejudicial***, and ***"scornful"*** way, by agents of Respondents #2/Defendants #2, because he ***failed to have broken Laws, Statutes, and Agreements***. Heinous behavior, towards Petitioner/Plaintiff, by agents of Respondents #2/Defendants #2 resulted (namely Sgt. Cenko Soyer and Sgt. Muhammed Kamel), based on Petitioner's/Plaintiff ***cultural***, ***historical***, ***belief*** system, as to right, or wrong, based on his ***skills***, ***experience***, ***training***, and ***socialization*** – being "different".
- Petitioner/Plaintiff had been ***performing an excellent job***, for Respondents #2/Defendants #2, ***increasing*** effective ***Customer Services***, speaking to patrons in the appropriate fashion, adhered to ***courtesy***, and ***respect***, ***for all***, adhering to ***safety considerations***, for all, at all times, regardless.
- Were any other employees for that summer terminated? Why? Was it because they fairly, voluntarily and truthfully told the truth? Did anyone (Supervisory, Queens Borough level Management) tried cajoling them? Did anyone (Supervisory, Queens Borough level Management) tried 'intimidating", or "threaten" such individuals?
- ***No apologies***, ***nor remorse*** *, were shown to the Petitioner/ Plaintiff* - except in a few cases, by at least one Supervisor (not complained about), and few members of Management, of Respondents #2/Defendants #2. Simply put, the hate, and the inequitable treatments, towards the Petitioner/Plaintiff, "seem well deserved". Why?
- ***Rights of the patron, and rights of Respondents #2/Defendants #2, and/or its agents, should not be seen to arbitrarily supercede those of the Petitioner/Plaintiff. Rights of an employer cannot be limitless, whilst limiting those of the employee (Petitioner/Plaintiff).***
- Respondents #2/Defendants #2, and its agents, had a ***legal***, ***moral***, ***professional***, and ***social duty***, as with the Petitioner/Plaintiff too. Onus is to ***train*** (no admissions of any wrong doing, by Petitioner/Plaintiff), ***seek to correct*** (if applicable), not to verbally, or ***try to*** ***physically attack*** (Petitioner/Plaintiff). No individual should be ***bullied to sign documents***, whether by force, coercion, or duress. At all times***, appropriate explanations*** (knowledge) to issues, should be provided; Petitioner/Plaintiff done so, in ***Good Faith***. Importantly, Petitioner/Plaintiff were not told of any meetings, or gatherings prior, and ***advent of bringing his own witnesses***, or independent witnesses, in case. All these, and more, will result in the debacle at hand, especially with a new

employee, and someone new to the City (of New York), and new to the United States of America. Employer-employee Good Relations would have been invariably breached.

Respondents/Defendants (primarily #2, where applicable, respectively) **Caused**:

- *Adverse statements*, contrary to facts.
- Severe *Emotional Distress*, to the Petitioner/Plaintiff.
- *Direct insolence*, at the Petitioner/Plaintiff, without Due or Administrative Process, through some of its agents (Respondents #2/Defendants #2).
- *Rendered judgement, in haste,* without facts, without investigations, and without input of Petitioner/Plaintiff.
- Respondents/Defendants (#2) were *selectively biased*, and supported information that had no veracity, towards the Petitioner/Plaintiff.
- Caused *damaging*, *irreprehensible damages*, to Petitioner/Plaintiff's career, welfare (upward mobility), character, integrity.
- *Fear* was being driven into the Petitioner/Plaintiff, without due or legal reasons.
- Behaviors of (some) agents of Respondents #2/Defendants #2, are *outrageous*, and *reckless*, towards the Petitioner/Plaintiff.
- *Willful violations* by agents of material Respondents/Defendants (#2), *impacting assigned statutory duties*, of the Petitioner/Plaintiff.
- Agents may have become aware that **Petitioner/Plaintiff had applied for, and was about to be accepted into a much better higher paying City job, with New York City, in the form of the coveted <u>NYC Internship/Fellowship Program</u>** – grand opportunity**. This *<u>would have paid $50,000.00 per annum</u>*, and would encompass Petitioner's/Plaintiff's <u>knowledge</u>, <u>skills</u>, <u>qualifications</u>, <u>abilities</u>, inter alia. Email and other correspondence in support of claim, are also attached. Commencement of such a job, would have been in early August 2017. <u>Exhibit #28</u>, and <u>Exhibit #46</u>.**
- Petitioner/Plaintiff was also being *<u>prevented from applying for other posted jobs, on the NYC D.C.A.S.</u>* **(Department of Citywide Administrative Services.)** *<u>website</u>*. Initiating investigations, by Petitioner/Plaintiff, beckoning the City to investigate, and querying what were the reasons for the "blockade", or *<u>black listing</u>* (no suggestion of skin color) are supported by email enclosures. *Exhibit #46, etc.*
- Agents (of Respondents #2/Defendants #2) *<u>had knowledge of the developments</u>*, barely did anything to correct said (if at all), *<u>knew of the "conduct of each other"</u>*, and <u>**knew the illicit conduct would be damaging**</u>, to the Petitioner/Plaintiff.
- *<u>**No effective responses were effectuated**</u>*, by agents of Respondents #2/Defendants #2.
- Said Respondents #2/Defendants #2, thereafter Respondents #1/Defendants #1, **<u>cannot ignore notions of Vicarious Liability</u>, and <u>Vicarious Responsibility.</u>**
- **<u>Should not have continued to insert the two(2) Supervisors being complained about</u>** by the Petitioner/Plaintiff, and also by Mr. Akeem Praddy, former CSA  – not a Class Action Lawsuit. Sgt. Cenko Soyer and Sgt. Muhammed Kamel acted as witnesses, for each other, and against the complaining party, being Petitioner/Plaintiff. *<u>**Same two(2) Supervisors, Sgt. Cenko Soyer and Sgt. Muhammed Muhammed Kame,l also continue**</u>*

*to co-sign "alleged documents" against Petitioner/Plaintiff*. This is construed as Conflicts of Interests Further, the said other employees, being alluded to, by Petitioner/Plaintiff, were also inserted, as "report writers", against Petitioner/Plaintiff. What about the other dozens of staff, inclusive of those working quite closely, with Petitioner/Plaintiff, and Supervisors, being Sgt. Cenko Soyer and Sgt. Muhammed Kamel? Were they terminated? Were they returned as employees? What did their records show? Where are those records? Petitioner/Plaintiff is curious.

- On another important note, former CSA, Mr. Akeem Praddy (black American), whom also commenced working that 2017 summer, was subsequently "terminated" by these two(2) Supervisors. Sgt. Cenko Soyer and Sgt. Muhammed Kamel harassed, threatened, physically imposed themselves, displayed hostilities, executed duress, endeavored to instill fear, where Mr. Akeem Praddy is concerned. According to reports, Mr. Akeem Praddy was told to leave the compound, by Sgt. Cenko Soyer and Sgt. Muhammed Kamel, and forced to sign documents (supposed duress). Subsequent to following these "illicit orders", Mr. Akeem Praddy was then accused of: *Absence Without Leave* (AWOL), or *repudiation of function* (*job abandonment*). Further allegations are that Akeem Praddy was terminated in mid to late July 2017, or so. Continued allegations are that Sgt. Cenko Soyer and Sgt. Muhammed Kamel, then reported that Akeem Praddy "voluntarily signed local level termination papers" (at Astoria Pool, Queens), along with "voluntarily exited the work compound, without notice, nor permission". How so? Petitioner/Plaintiff is certainly interested in hearing more, about this matter.

- Despite being professional, and doing what he is trained for, and taught, as per Respondents #2/Defendants #2 (written via letters, and Memo Books, and oral, via meetings, and in one-on-one) Petitioner/Plaintiff is being *penalized*, *demonized*, *maligned*, *punished*. Retaliation appear to have been the only option, by (some) agents of the Respondents #2/Defendants #2, leading to ultimate termination of the Petitioner/Plaintiff. Why? Immense hostilities were shown/displayed to the Petitioner/Plaintiff, despite Respondents #2/Defendants #2, being in possession of reports, resources, and other information. No actions should have been taken, especially since the initiating party, has constantly, and consistently made reports. Minimal, if any efforts, were made, to protect the Petitioner/Plaintiff, in all respects. Petitioner/Plaintiff simply carried out his fiduciary functions, and in a proficient manner.

- *Threatening*, *intimidating*, and *trying to humiliate* Petitioner/Plaintiff, has led to long term emotional distraught, for the incumbent. *Due Process*, *Administrative Process*, and *Natural Justice*, should have ensued.

- No real concurrent efforts were made, in trying to have the Petitioner/Plaintiff interviewed, except for that by Deputy Inspector Mr. Benny McCants, and may be by Ms. Iyana Titus, Deputy Commissioner, Equal Employment Opportunity – both of Respondents #2/Defendants #2, whilst Petitioner/Plaintiff in the employment of Respondents #2/Defendants #2.

- A systematic, constant, and direct set of maligning, untruths, concoctions, and "attacks" were directed, and aimed at the Petitioner/Plaintiff, for "simply doing what is right, by all standards".

- After filing with NYC Comptroller's Office on 10/01/2019, on 10/08/2019 that Office's Claims Examiner wasn't able to further assert Claim, as 766 days had passed, since 08/26/2017.

**RELIEF SOUGHT**:

Consequently, the Petitioner/Plaintiff is ***seeking to have the decision made by the Equal Employment Opportunity Commission (E.E.O.C.) reviewed (Appeal/Article 78)***, and is asking this honorable Court, to make ***awards***, as follows, and for interests, and damages, and such other relief, that the Court deem just, in light of the contraventions of:

| | | |
|---|---|---|
| **a.BREACH OF CONTRACT** ("Wrongful Termination") **(At-Will Employment Exemptions – full presentation attached)** | - | **$600,000.00** |
| **b.RETALIATIONS** ("Whistleblower") | - | **$800,000.00** |
| **c.EMOTIONAL DISTRESS (willful/intentional, negligent)** | - | **$400,000.00** |
| **d.TITLE 7, C.R.A. Of 1964 (Race, and racial profiling, Nationality)** | - | **$500,000.00** |
| **e.LIBEL (all information at hand of employer, prior to any publications, aspersions, or announcements)** | - | **$300,000.00** |
| **f.NEGLIGENCE (rights of Petitioner/Plaintiff not protected)** | - | **$300,000.00** |
| g.Non-Sexual **HARASSMENT (constant, undue, selective, physicl impositions, on Petitioner/Plaintiff)** | - | **$300,000.00** |
| **h.HOSTILE WORK ENVIRONMENT** | - | **$200,000.00** |
| **i.AGE IN DISCRIMINATION ACT, 1975 (age of Petitioner /Plaintiff)** | - | **$300,000.00** |
| | | **$3,700,000.00** |
| | | **============** |

Sum of ***three million seven hundred thousand dollars ($3,700,000.00)***, with interest, or other relief, seem just, to the Court.

Please see Exhibits attached, all of which were submitted to all Respondents/Defendants, previous, where applicable, but which will again be done, by Petitioner/Plaintiff.

Petitioner/Plaintiff isn't wasting this Court's precious time, neither is he being disingenuous, nor intend to mislead. These are the facts, as they happened. Consequently, Petitioner/Plaintiff is praying quite hard, that the Court will reasonably grant the requisite reliefs, where applicable, and just.

Alroy Richards,
Petitioner/Plaintiff

County where Signed: Kings          Date: 11/16/2019

Sworn before me, on the 16th day of November 2019.

Notary Public

**WHEREFORE**, the Deponent prays that the arbitration process will review the facts presented by the Petitioner's/Plaintiff's, and requests presented, for the matter to be upheld in favor of the Petitioner/Plaintiff, and the requisite awards be made. Once the damages can be attempted, or shown to be improving, then the healing process will commence. Petitioner/Plaintiff does not wish to distort, mislead, or misinterpret any matter, nor to be disingenuous, and that the claims in narratives, are not frivolous, culminating in the award being claimed. Let us all endeavor in adhering to the concepts of **_non-discrimination_**, **_equal opportunity_**, **_diversity_**, and **_inclusiveness_**, inter alia.

Dated: 16th day of November 2019

County of: Kings

ALROY RICHARDS
Petitioner/Plaintiff

Sworn to, before me, this 16th day of November 2019.

Notary Public

HAIMWATTIE SINGH
STATE
OF NEW YORK
NOTARY PUBLIC
Qualified in Nassau County
01S16089783
MY COMMISSION EXPIRES Mar 31

11-16-19

## VERIFICATION

**I, ALROY RICHARDS,** also known as the Petitioner/Plaintiff, being duly sworn, deposes, and says:

That I have read the foregoing facts, and subsequent Claims, in presenting my matter, and that I know of the contents therein. The said are true, to my knowledge, free from folly, or frivolities, except as herein stated, to be alleged, on information, as to the matters, I believe them to be true. Also, to the best of my knowledge, and information, and belief, formed after an inquiry, reasonable under the circumstances, the presentation of these papers, or the contents therein, are not frivolous, as defined under sub-section C, of section 130-1.1, of the Rules of the Chief Administrator (22 NYCRR).

Dated: 16th day of November 2019

County of: Kings

**ALROY RICHARDS**
**Petitioner/Plaintiff**

Sworn to, before me, this 16th day of November 2019.

**Notary Public**

HAIMWATTIE SINGH
STATE OF NEW YORK
NOTARY PUBLIC
Qualified in Nassau County
01S16089783
MY COMMISSION EXPIRES Mar. 31, 2023

14 | P a g e

# UNITED STATES DISTRICT COURT (Federal)

## For The

## Southern District Of New York

**ALROY  RICHARDS**

---

**Petitioner/Plaintiff**

Vs.

**1.CITY OF NEW YORK COMPTROLLER**
**2.NEW YORK CITY PARKS and RECREATION**
**3.NYS EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

---

**Respondents/Defendants**

**EXHIBITS**

Civil  Action No.:  19CV10697

**JURY TRIAL: Yes**
**(If applicable)**

## EXHIBITS

Please note, that the material *Exhibits* in question, in this Federal matter, before this honorable Court, are *numbered*, and such numbers appearing in the top left hand corner (or, as close as is possible), of each such Exhibit. Now:

1.*NYC Comptroller's Response* to Petitioner/Plaintiff, dated 10/03/2019, re 50-H Hearing Request.
2.*Petitioner's/Plaintiff's Appeal* request dated 09/14/2019, on E.E.O.C.'S Decision, and Determination.
3.*Petitioner's/Plaintiff's Appeal* request (4 page) letter dated 08/28/2017, to Respondents #2's Director of *Human Resources*, re Termination.
4.*Union's* (*Local 983's*) 08/28/2017 *Appeal* request to Respondents #2, via email thread (2 pages), re Termination of Petitioner/Plaintiff.
5.*Termination letter* from Respondents #2's *Human Resources* (1 page), dated 09/01/2017, to Petitioner/Plaintiff.
6.*Termination initiating documents* (2 pages) from Respondents #2, dated 08/26/2017, re Petitioner/Plaintiff.
7.Email thread, 08/17/2017 - 08/18/2017, between **Ms Iyana Titus**, being Respondent #2's Deputy Commissioner, *i/c of E.E.O.*, and the Petitioner/Plaintiff, based on *complaints*, by Petitioner/Plaintiff.
8.*Petitioner's/Plaintiff's complaint* letter 08/17/2017 5 page letter to Respondents #2's *Director of Human Resources*.

**9**.*Petitioner's/Plaintiff's* (3 page) 08/14/2017 letter to Respondents #2, to *Director of Human Resources*, re *Performance Evaluation Appeal* request, plus *incumbents complaints*.

**10**.*Petitioner's/Plaintiff's* 08/07/2017 (5 page) letter, to Respondents #2, *re Performance Appraisal Appeal* request, and *incumbent's complaints*.

**11**.*Petitioner's/Plaintiff's* (4 page) letter, dated 08/07/2017, to Respondents #2's *Corporate Management*, re *incumbent's material complaints*.

**12**.*Petitioner's/Plaintiff's* (ten page) 07/25/2017 *letter of complaints*, addressed to Respondents #2's *E.E.O Commissioner*.

**13**. (2 page) biased *Performance Evaluation*, dated 08/01/2017, done by agents of Respondents #2.

**14**.Alleged *Supervisory Conference*, dated 07/17/2017 (1 page), by agents being complained about, by Petitioner/Plaintiff – no conference held in presence of incumbent, neither any/ discussions, and said document was not submitted to Human Resources (apparently not until 08/30/2017). Plaintiff/Petitioner given copy of said, in Post Office mail, by Human Resources, incumbent having received said, on 09/23/2017.

**15**.*Petitioner's/Plaintiff's Second Appeal*, to the *E.E.O.C.*, dated 09/19/2019 (1 page), enclosing <u>At-Will- Employment Exemptions</u> excerpts, indicating *reasons*, and *cases* (2 pages).

**16**.*E.E.O.C.'s Decision and Determination*, dated 08/31/2019 (3 pages), addressed to Petitioner/Plaintiff.

**17**.*E.E.O.C. Charge Sheet initiation*, dated 10/11/2017 (1 page), signed by Petitioner/Plaintiff.

**18**.Petitioner's/Plaintiff's 09/29/2017 (5 page) *letter/memorandum*, *to E.E.O.C.*, re complaints made about entire development.

**19**.*Petitioner's/Plaintiff's* 08/31/2017 *letter to* the *E.E.O.C.*, re follow up, to formal (signed) *complaints, by incumbent*.

**20**.*Petitioner's/Plaintiff's* 08/31/2017 (5 page) *signed complaints*, to the E.E.O.C., *initiating matter*.

**21**.*Petitioner's/Plaintiff's* (2 page) 02/27/2019 letter, re *follow* up to *inquiries*, into the *E.E.O.C.'s* continued *investigations*.

**22**. *Petitioner's/Plaintiff's* (2 page) 05/04/2018 letter, re *follow* up to *inquiries*, into the *E.E.O.C.'s* continued *investigations*.

**23**.Petitioner's/Plaintiff's *Verified Counter Answer*, dated 06/01/2019 (28 pages), *to Respondents #2's case presentations*, from their Counsel's cover Answer, dated 03/30/2018.

**24**.Petitioner's/Plaintiff's *excerpts*, from *Memo Book #1*, pages 11 – 18. It included a 06/30/2017 incident at *Windmuller Pool* (Queens), where a <u>6 – 7 year old girl, nearly drowned</u>.

**25**.Petitioner's/Plaintiff's *excerpts*, from *Memo Book #1*, pages 20 – 25, dated 07/02/2017. This is where an adult male patron, became boisterous, angry, and threatening, towards Petitioner/Plaintiff, after using his alleged 18 month old or so toddler, to block human traffic, heading into, and out of the pool (*Child Endangerment*). Large metal swinging gate exist, separating pool (entry/exit), and child was being placed behind this gate, on outside of pool, unattended to, while supposed adult parents are "feet away" (say 15-20). Petitioner/Plaintiff made reports, immediately, independent of anyone.

**26**. Petitioner's/Plaintiff's account, of a 07/04/2017 matter, *Windmuller Pool*, Memo Book #1, pages 29 – 31. Lifeguards are in charge of pool deck. *An adult female wanted her son, to go swimming, exceeding number of persons allowed in the pool – safety precautions*. She

became ***boisterous, and abusive, towards Petitioner/Plaintiff***, after lifeguard refused her requests.

**27.**Petitioner's/Plaintiff's 07/11/2017 account, in Memo Book #1, ***pages 45 – 48***, about the ***<u>vexed issue, of illicit and dangerous smoking on pool premises, as identified, by the incumbent,</u>*** ***<u>by patrons, and staff alike, inclusive of Supervisors</u>***. As this incident unfolded, Petitioner/Plaintiff acted professionally, respectfully, and fairly, in pointing out that these actions must desist. These are true accounts, as per Petitioner's/Plaintiff's reports, which many of the staff, whom were smoking, at material time, were not happy with, re stance taken by Petitioner/Plaintiff.

**28.** Email thread, between Petitioner/Plaintiff, and NYC DCAS representatives, regarding incumbent's seeming entry, into the ***City of New York, 2017 – 2018 Fellowship*** (employment) ***<u>Program</u>***. Number of pages (in interim) are 14. Incumbent ***would have been paid $50,000.00 per year, in this job***. Emails covered May 2017 – August 2017, and denial to program, and further advancement, thwarted by untrue, uncontested, malicious, concocted reports, prejudicial, intentional, and well planned, towards Petitioner/Plaintiff.

**29.**Petitioner/Plaintiff blocked blocked, by NYCAPS, from applying for other advertised positions, within DCAS***. Incumbent then formally complained. ***Case #-0071241***. 2 page document, with relevant details, but which are not limited to these. Dates are 08/04/2017, and say 08/07/2017. <u>Note dates of happenings, with Respondents #2</u>.

**30.** Petitioner's/Plaintiff's ***excerpts***, from ***Memo Book #2***, pages 9 – 11 , dated 07/16/2017. This is where <u>**an adult male patron, left his alleged daughter, say aged 6 years, or so, to swim**</u> <u>**alone**</u> in ***Astoria Pool*** (Queens), as ***he frolicked for more than 20 minutes, out of sight*** (he was being "sought"), ***with a cellphone, apparently taking photos/videos, of ladies***, in entire area, in, and out of the pool. Clear violations.

**31.** Said ***Memo Book #2***, **pages 13 – 14**, of said 07/16/2017, as documented by Petitioner/Plaintiff. This is matter involving CSA Ms. Shileah McClain, whom told the Petitioner/Plaintiff, ***"Why don't you go back to your country"***. This was in full earshot of Sgt. Cenko Soyer, whom did not say anything, to not allow such biased, and prejudicial tendencies to thrive.

**32.** Petitioner's/Plaintiff's account, ***Memo Book #2, <u>pages 24 - 29</u>***, where he was being harassed by Sgt. Cenko Soyer and Sgt. Muhammed Kamel, after ***Petitioner/Plaintiff exercised his Fifth Amendment rights, in refusing to sign  document, that he was being forced to sign***, as both Sgts. Referred to, tried at ***duress***, and ***forcibly***, and willfully tried intimidating the Petitioner/Plaintiff, to sign said. Both Sgts. Being referred to, even took Petitioner/Plaintiff off the Astoria Pool premises, further ***threatening incumbent***, with ***physical impositions***, and ***verbal abuses***, and ***<u>Sgt. Muhammed Kamel, even grabbing Memo Book, from</u>*** ***<u>Petitioner/Plaintiff</u>***.

**33.**Petitioner's/Plaintiff's first account of the ***<u>lost of his hat</u>***, issued by Respondents #2, circumstances (place, time, how done, etc.). ***Memo Book #2***, page 31. See this.

**34.**Pages 38 – 49, being Petitioner's/Plaintiff's further reports of ***intimidation, bias, <u>racial</u>*** ***<u>profiling</u>***, and other discriminatory actions, physical impositions, and other acts aimed at ***"trying to silence", ridicule***, or ***embarrass***, the Petitioner/Plaintiff, being done moreso, by Sgt. Cenko Soyer, and Sgt. Kamel, in the presence of staff, and patrons. Dates ranged from ***07/23/2017 – 07/29/2017***.

35.**Memo Book #3**. 07/30/2017, page 1. Visit by ***Queens Borough Commander***, Capt. Andrew Greenfield, which intentionally ***met with***, and ***had a brief meeting with the Petitioner/Plaintiff***. See ***Capt. A. Greenfield's note***, and ***signature***, at top of page 1, in Petitioner's/Plaintiff's Memo Book #3.

36.Petitioner's/Plaintiff's pointing out that the Sgts in question (excepting for Sgt. Odelia Lee), are being late for work, for muster, and for meetings. Petitioner /Plaintiff is not late. Sgt in this scenario, is Sgt. Cenko Soyer. Memo Book #3, pages 3 – 4.

37.***Deputy Inspector Benny McCant's visit*** to the ***Astoria Pool***, to meet with the Petitioner/Plaintiff, based on the reports (verbal, written, and in meetings), made by Petitioner/Plaintiff. D.I. Benny McCants met with Petitioner/Plaintiff, along with Captain Andrew Greenfield, and Captain Bayron. Only personnel in meeting, as mentioned. Meeting lasted for more than an hour, as Petitioner/Plaintiff explained the developments, and ***Petitioner/Plaintiff was rest assured, in this meeting, that effective investigations would have ensued, culminating in the appropriate actions***. Said Memo Book #3, ***pages 6 – 8***. A muster was ordered by D.I. McCants, whom made the comparison, as to whom has name tags, and whom doesn't (plus reasons), as well as whom have hat, and whom doesnt, etc. D.I. McCants also made general inspections of the group, in terms of attire (deportment), and posture. He then asked that improvements be made, and that he will be making further checks, some other time. This is mostly based on the fact that the **Petitioner/Plaintiff was being written up daily, especially by Sgt. Cenko Soyer, for not having a name tag, and having lost his (incumbent) hat**.

38.Matter of ***Supervisor Mr. Holly Tyson*** (of Respondents #2). Petitioner/Plaintiff was unduly disrespected, verbally abused, physical impositions, by Mr. Holly Tyson, nearly took place, with respect to the Petitioner/Plaintiff. This was reported to Sgt. Muhammed Kamel, whom told Petitioner/Plaintiff that Mr. Holly Tyson will be reported to Queens Borough Command (Captain Andrew Greenfield). Memo Book #3, ***pages 11 – 14***, on 08/03/2017. Note the coincidence, with happenings. Performance Appraisal for Petitioner/Plaintiff was reportedly due, on that day. Later that day, Sgt. Cenko Soyer, and Sgt. Muhammed Kamel, approached Petitioner/Plaintiff, and told him that the ***Performance Evaluation is ready for signing. No discussions were held with Petitioner/Plaintiff, nor were any processes, or related intricacies explained to the Petitioner/Plaintiff***. Petitioner/Plaintiff did not just arbitrarily sign a document, that he never saw before, nor was in agreement with. This, despite attempts at duress, again, in this situation, by Sgts. Cenko Soyer, and Muhammed Kamel.

39. Note made by Petitioner/Plaintiff, that during muster, at 10:30 am, or so, ***on 08/03/2017, that Petitioner/Plaintiff again asked Sgt. Cenko Soyer, to view C.C.T.V. images, or to suggest it to higher level Management, whether or not there are happenings, or an incident***. He said nothing (page 15, Memo Book #3).

40.Matter of at least ***three(3) adult male suspects, whom threw down knapsack bags, from a balcony area, outside general pool deck, to other adult males, on the Pool deck, breaching security, and a sterile area***. Identified by Petitioner/Plaintiff, whom immediately reportedly situation to Sgt. Cenko Soyer. A team, inclusive of Sgt. Cenko Soyer, approached the suspects, whom were on the pool deck, escorted them to the locker area, and the relevant personnel (including the police, I believe), then beckoned that the men exit the premises. **Memo Book #3, *pages 19 – 21*, on *08/05/2017*.**

**41.** It is interesting to point out, that since the 08/03/2017 visit by D.I. McCants, that *Sgt. Cenko Soyer commenced putting "Inspection Okay", for Petitioner/Plaintiff, in Petitioner/Plaintiff's Memo Book*. This is especially *seen from pages 24 – 33*, and onwards, etc. Pages 24 – 41 (in part), indicative of this, enclosed as Exhibit 41 (said Memo Book #3).

**42.** In this Exhibit, dated *08/19/2017*, (Memo Book #3 – end of this book), *pages 49 – 50*, Petitioner/Plaintiff made a note that only three(3) or so CSA staff were present, at the location: Thomas, Young, Taite, McBean, and the Petitioner/Plaintiff. More than eight(8) or so, CSA staff are not seen. Also, many of the other staff, from the general Supervisory, and Administrative Pool Office), were not present, at the Pool. *Further allegations are that they (possibly 2 dozen missing staff) were "called to Queens Borough Command, to be interviewed*, based on Petitioner's/Plaintiff's reports. **Yet, the person initiating all these developments, were never interviewed, before being terminated.**

**43.** *Pages 4 – 10*, on *08/26/2017*. Day of the termination, which took place at Astoria Pool, in the presence of staff, and patrons. Kindly note how the matter was carried out. *Petitioner/Plaintiff was being asked to leave the premises*, as reportedly, termination papers, are at hand, namely so, from Sgt. Cenko Soyer and Sgt. Muhammed Kamel. *No notice were given*. *Petitioner was not a threat to life, funds, or property, and was dressed in uniform, executing his duties*. Matter was further compounded, when patrons, and staff, began to gather. The *police were even called, for Petitioner/Plaintiff*; but, upon arrival, the police "stood off", as Petitioner/Plaintiff explained that this was *simply an Industrial relations matter*, not even requiring presence of the police. *Captain Bayron was summoned*, upon request by Petitioner/Plaintiff, that a senior management personnel, be present. He arrived in less than an hour. Petitioner/Plaintiff made sure that he stood under the cameras, in the interests of his safety. Uniform paraphernalia were handed over, to agents of Respondents #2, moreso, **Sgt. Odelia Lee, whom signed for them** (equipment, uniform, gears, Memo Book).

**44.** *E.E.O.C.'s 05/04/2019 letter addressed to Petitioner/Plaintiff*, regarding need for response to Counsel for Respondents #2 (their case).

**45.** **Respondents #2 *Counsel's Verified Answer* (5 pages)**, dated *03/30/2018*, enclosing the following: document dated 07/02/2017 or so, composed by an agent of Respondents #2, re an alleged complaint, from a "ghost patron", said to be a Mr. Heny Michael (2 pages), an attached 07/06/2017 email, written by said agent, Ms. Deborah Zingale, of Respondents #2, and addressed apparently to said patron above, *apologizing, to patron, and casting damnation, and aspersions, on Petitioner/Plaintiff, without checking facts*, a 07/23/2017 report by Ms. Michelle Wright, CSA (2 pages), a report 07/22/2017 from CSA Ms. Shileah McClain (1 page), an alleged 08/17/2017 report by PEP Officer, Ms. S. Ross (total 2 pages, 1 page being Memo Book cover), an undated alleged report entry by Mr. Holly Tyson, Supervisor (1 page), a 08/25/2017 report by Mr. Holly Tyson (1 page), an alleged 08/25/2017 report from a Ms. Ashley Bernal, Pool Office staff (2 pages).

**46.** Email thread dated 02/02/2018, and so on, *between Petitioner/Plaintiff and NYCAPS, re problems trying to access DCAS* (Department of Citywide Administrative Services) *online job opportunities* (6 pages).

**47.** **"About the E.E.O."** by the NYC, own words from former Mayor Mr. Michael Bloomberg (3 pages) – excerpt.

48.*Conflict of Interests (NYC)*, issued to the Petitioner/Plaintiff, by Respondents #2, signed by Petitioner/Plaintiff, and dated 06/05/2017.

49.*Standards of Conduct (NYC)* issued to the Petitioner/Plaintiff, by Respondents #2, with Social Security Number of Petitioner/Plaintiff, and dated 06/05/2017.

50.*Name Tag receipt*, dated *08/01/2017*; Name Tag being *purchased by the Petitioner/Plaintiff*.

51.*Training Certificate*, re Petitioner/Plaintiff, *certification*, as a *CSA*, by Respondents #2, training dates noted as 06/14/2017 – 06/19/2017.

Dated:          November 16, 2019
Signed by:

_____
Alroy Richards
**Petitioner/Plaintiff**




**THE CITY OF NEW YORK**
**OFFICE OF THE COMPTROLLER**
**CLAIMS AND ADJUDICATIONS**
**1 CENTRE STREET  ROOM 1200**
**NEW YORK, N.Y.  10007-2341**

WWW.COMPTROLLER.NYC.GOV

015 - 151

Scott M. Stringer
**COMPTROLLER**

Date:                10/03/2019
Claim No:        2019PI026515
RE:                   Acknowledgment of Claim
Your Claim/Policy#:

ALROY RICHARDS

Dear Claimant;

We acknowledge receipt of your claim, which has been assigned the claim number shown above. Please refer to this claim number in any correspondence or inquiry you may have with our office.

We will do our best to investigate and, if possible, settle your claim. However, if we are unable to resolve your claim. **any lawsuit against the City must be started within one year and ninety days from the date of the occurrence.**

If you have any questions regarding your claim, you may contact us at 212-669-2478 for claims involving personal injury.

Sincerely,

Bureau of Law & Adjustment



September 14, 2019

'WITHOUT PREJUDICE'

The Equal Employment Opportunity Commission
New York District
33 Whitehall Street, 5th Floor
New York, N.Y. 10004-2112

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE

SEP 19 2019

DATE RECEIVED

**ATTENTION:   Ms. DOLANADA Y  OUNG – Investigator**

Dear Ms. Young:

RE:   **ALROY RICHARDS vs. NYS PARKS and RECREATION – APPEAL, BY COMPLAINANT**
       **File #846-2017-36034**

Reference is made to my claims, and your subsequent investigations. Consequently, the Complainant is in receipt of your letter dated August 31, 2019, with respect to a DECISION, and DETERMINATION, in the issue. In addition, a RIGHT to SUE LETTER dated August 31, 2019, was also enclosed, in your package. The contents of your package were noted.

However, let it be known, that the ***COMPLAINANT*** is ***APPEALING THIS DECISION***, by the E.E.O.C. (not directing at any specific individual). The Complainant is of the view, that:

- a ***50-H HEARING*** should, or could have been called; Complainant not averse to said.
- Complainant has the ***RIGHT TO*** further peruse documents, and to ***CALL and CROSS EXAMINE WITNESSES*** (question the "accusers", in a formal duly constituted forum).
- **NO SPECIFICITY** were detailed to the Complainant, ***AS TO REASONS FOR, or (more) QUALIFYING ARGUMENTS***, material to the issue at hand, ***FOR ARRIVING AT SUCH DECISIONS***.
- More reasonableness, and willingness, should be embarked on, by the E.E.O.C., as per its mandates, inter alia, to peruse obvious ***PRETEXTS***, being used by the Respondents.
- Complainant is of the view, that ***NATIVISM***, and ***ISOLATIONISMS***, could be in full gear (Respondents).
- Respondents did not materially disprove Complainant's claims, and innuendos dominated, without any voracity.
- ***GLARING*** and ***OVERWHELMING VIOLATIONS*** exists, much to further losses, by the Complainant, being ***INCONSIDERATIONS***, with ***RESPECT TO  COMPLAINANT'S RIGHTS***.
- ***EROSION OF DUE PROCESSES***, and of ***ADMINISTRATIVE PROCESSES.***
- Despite the length of time, in the investigations, that no equality, diversity, inclusiveness, and non-discriminations exist, relative to the Complainant.
- Finally, Complainant is simultaneously ***ASKING FOR AN EXTENSION OF TIME***, as this Appeal is heard, at the level of your entity, and that the ***RIGHT TO SUE BE PLACED ON***

1 | Page

**_HOLD_**. This, as the requested Reliefs being sought from the E.E.O.C., by the Complainant, are perused, by the E.E.O.C.

Thanking you for the sterling efforts in the matter, and looking forward to your urgent reply.

Yours sincerely

**ALROY RICHARDS**
**Complainant**

Copy – Mr. David Lepart (Attorney-at-Law)
         NYC Parks and Recreation, the Arsenal
         Central Park, Legal Office
         830-5th Avenue, Room #313
         New York, N.Y. 10021

3.

*Copy - Retained*

August 28, 2017

The Director of Human Resources
New York City Parks and Recreation
24-61st Street, New York
New York 10023

AUG 2 9 2017

Department of Parks & Recreation
Equal Employment Opportunity

Dear Sir/Madam

RE:   **ALROY D. RICHARDS – Former City Seasonal Aide,** ▓▓▓▓▓▓▓
      **TERMINATION DOCUMENT(S) RECEIVED, AS AT SATURDAY 08/26/2017**

Good day to you. I now refer the subject for your attention, and now enclose this three(3) page response. I must state that, despite my many formal complaints (written documents), I have not received any substantial (if any – apart from two emails from the Assistant Commissioner, EEO) notification, redress, nor reconciliatory responses. These (if, and when done), in my view, would have been shown good faith, and real and vested interests, in addressing the situations, as reported by me. Instead, I was present at my work, at my post (outside mens' locker room – pool deck side), at Astoria Pool, on Saturday August 26, 2017, at approximately 11:20 am, when Sgt M. Kamel motioned to me, that I should go to the canopy area of the facility, to see Sgt O. Lee. I complied with this request. **Please be advised, that it was the day prior (Friday August 25, 2017) that I sent a copy of an August 17, 2017 letter, to Captain A. Greenfield, again, pointing out inconsistencies, in treatment, "write ups", and again, biased behavior.**

When I got by the canopy area, I saw Sgt O. Lee, standing by the old "ticket booth" counter area. In a few moments or so, she was joined by both Sgts C. Soyer, and M. Kamel. Sgt O. Lee then told me that she had a **Termination Document** for me, as she was asked to present it, to me. I then asked her, on what basis am I being handed termination documents, and whom is it originating from. In addition, I told her that I am opting not to sign anything, in this regard, until I seek further guidance, and counsel. On that accord, I asked to be excused, and returned to

.../2

so (being told before hand, what matter is about, and to bring witnesses – i.e. be prepared), **the matter would not have been tried, but would have been carried out, with dignity, instead of this apparent intended embarrassment, for me**. Consequently, it is suspected that Sgt O. Lee then telephoned Capt Bayron, indicating my concerns. I told her that it is best that the "author" be present (which is supposedly, Capt Bayron). She then told me to wait around, as he is reportedly on his way. Unfortunately, <u>**Sgt Kamel then told me to "go and sit on the bench", located northerly, under the clock**</u>, prior to entering the pool deck (but still in canopy). **I told him that this seem rather absurd, and out of place, as I am being treated like a prisoner, like a criminal, and that I am not a threat to life, funds, nor property, and that my rights, as a resident, and employee, are being infringed on**. He (Sgt Kamel) showed disdain in his reaction (This was later communicated to Capt Bayron, on his arrival).

I went to do the Memo Book entries. The meeting ended at 11:58 am. Capt Bayron arrived at 12:40 pm, and asked that I meet with him, at the same area, by the canopy. By now, I gave him a brief synopsis, and asked that he sign the document, to which he said, "no problem" (paraphrasing), he will initial it. **Sgts C. Soyer and Sgt K. Kamel also initialed the Termination Document, after Capt Bayron did so**. Consequently, I handed over the following items, which Sgt O. Lee signed for: **one(1) green polo ganzie**, with logo, **one(1) pair black short pants**, **one(1) pen holder, one(1) Memo Book #571**, and **one(1) black leather Memo Book holder**. I told Capt Bayron that I had another polo ganzie, at home, along with NYC Parks and Recreation photo identification, which will be brought in, on Monday August 28, 2017. Capt Bayron then signed out the Memo Book #571, whilst Sgt Lee gave me a receipt, for the items received, in the form of "ruled", a plain sheet of paper. I was told by Capt Bayron, that all monetary payments due to me, will be made, in due course, as soon as the paper work is sent in, and the other signatures have been affixed.

Subsequently, I indicated to him, my displeasure of how the matter was handled, as if to insult me, on the job, when it could been done otherwise. I suggested that I could have simply hand over my items, otherwise, and still enjoy the public pool, which I am entitled to use, as a patron, and resident. However, Capt Bayron suggested that I not do so, as "I will influence" i.e. instigate the other employees,

.../4

**From:** KC.Reilly@parks.nyc.gov
**To:** ttestalocal983@aol.com
**Cc:** Theron.Harris@parks.nyc.gov, Aiyana.Harris@parks.nyc.gov
**Sent:** 9/5/2017 1:21:42 PM Eastern Standard Time
**Subject:** RE: CSA/PEP Alroy Richards ERN███████( Request for a Review)

Tommy,

The Seasonal Agreement states that "when a City Seasonal Aide employed by the Department of Parks and Recreation who has completed one season and who has worked at least ninety (90) cumulative days with the Department of Parks and Recreation in a seasonal capacity, is terminated, the employee or union representative may request a review from the Commissioner or his designee within ten (10) calendar days of such notification." Mr. Richards began his first season at Parks on June 13, 2017. Therefore, he is not entitled to a Seasonal Review.

K.C. Reilly
Deputy Director of Labor Relations

T 212.830.7996
F 917.849.6425
E kc.reilly@parks.nyc.gov

NYC Parks
Arsenal West
24 West 61st Street, 4th Floor
New York, NY 10023
nyc.gov/parks

Follow Parks on: Facebook | Twitter | foursquare | Instagram | YouTube

**From:** TTESTALOCAL983@aol.com [mailto:ttestalocal983@aol.com]
**Sent:** Monday, August 28, 2017 8:26 PM
**To:** Reilly, KC (Parks)
**Cc:** Harris, Theron (Parks); Harris, Aiyana (Parks)
**Subject:** CSA/PEP Alroy Richards ███████ ( Request for a Review)

Hello K.C.,

I am requesting a CSA Review for the above Member who was terminted on Saturday August 26, 2017.

CSA/PEP

Alroy Richards

███████

( Request for a Review)

*Received 5th Sept 2017*

 

David Terhune
Chief of Personnel

T 212.830.7851
F 212.830.7860

E david.terhune@parks.nyc.gov

City of New York
Parks & Recreation

Arsenal West
24 West 61st St.
2nd Floor
New York, NY 10023
www.nyc.gov/parks

September 1, 2017

Alroy Richards

Dear Alroy Richards,

This letter is to inform you that your position as a City Seasonal Aide with Parks & Recreation has been terminated effective close of business 8/26/2017.

Sincerely,

Aretha Singh

Received 09/23/2017



# EMPLOYEE TERMINATION FORM

Print Form

SUPERVISOR: Complete Section 1 and submit to your Borough/Bureau Chief.
BOROUGH/BUREAU CHIEF: Complete Section 2 and submit original signed form to Payroll & Timekeeping Division.

*Form Revised 7/2009*

---

## SECTION 1: To be Completed by Supervisor:

Please Check a box:  ☐ Full-Time Employee    ☒ Seasonal or JTP Employee

| Employee Last Name: Richards | MI: | Employe First Name: Alroy |
|---|---|---|

| ERN: ███████ | Civil Service Title: City Seasonal Aide | Borough/Bureau: Queens |
|---|---|---|

| District/Division: Queens | Supervisor's Name: Odelia Lee | Supv. Title: AUPR |
|---|---|---|

Check Reason for Termination:

☐ Due to illness or physically unable to perform duties (attach medical documentation)
☒ Unsatisfactory work performance (attach Supervisory Conference and/or evaluation)
☒ Insubordination: Failure to carry out orders (attach Supervisory Conference and/or evaluation)
☐ Absent Without Leave (AWOL) - specify dates and attach copies of timecard(s)
☐ Excessive Absence & Lateness (attach Supervisory Conference and copies of timecards)
☐ City of New York Department of Personnel Order (attach D.O.P. Letter)
☐ Other (specify and attach documentation): [_____]

Effective Date of Termination: Aug 26, 2017

Supervisor's Signature _____   Print Name O. LEE   Date 8/26/17

---

## SECTION 2: Borough/Bureau Approvals:

| PRM/Director's Signature | Print Name | Date |
|---|---|---|

| Borough/Bureau Chief Signature | Print Name | Date |
|---|---|---|

---

## SECTION 3: Payroll & Timekeeping Use Only:

Civil Service Status: (check one)   ☐ Permanent   ☐ Provisional   ☐ Labor Class   ☐ Non Competitive   ☐ Probationary   ☐ Seasonal

Is employee on Leave from a Permanent Title?:   ☐ Yes   ☐ No

Is employee on Leave of Absence Without Pay?:   ☐ Yes   ☐ No

| Payroll Dist. Code: | Date Sent to Personnel: | **Leave Hours** | Pre 6/30 | Post 7/1 | Total |
|---|---|---|---|---|---|
| Last Date on Payroll: | | Annual Leave | | | |
| Ceased Date in PMS: | | Sick Leave | | | |
| | TK Supervisor Signature        Date | Comp. Time | | | |



Date: August 26, 2017
To: Alroy Richards
Fr: Odelia Lee
Re: Termination, items received

Items received from Alroy Richards:

1) CSA shirt      1 shirt
2) Black shorts      1 blk shorts
3) memobook      1 book
4) memobook holder      1 holder
5) pen holder      1 holder

On Aug 26, 2017 at 13:19

Sgt Odelia Lee

Sgt. Odelia Lee

26th August 2017
CSA Alroy Richards



## Gmail



<u>Click here to enable</u> desktop notifications fo

**COMPOSE**

Inbox (49)

Starred

Sent Mail

Drafts

Unwanted

More

Alroy    +

No Hangouts contacts
_Find someone_

**Your complaints**   Inbox   x

**Titus, Iyana (Parks)**

Dear Mr. Richards, Please be advised that I have read your letters which you

**alroyrichards**

Good day to you, Ms Titus. I do appreciate your response, in the matter, the ..

**Titus, Iyana (Parks)**

Dear Mr. Richards, Attached is the Citywide EEO Policy which discusses prot

**alroyrichards7** <alroyrichards

to Iyana

Good evening. Thanking you for the update, and further information.

Sent from my MetroPCS 4G LTE Android Device

-------- Original message --------
From: "Titus, Iyana (Parks)" <Iyana.Titus@parks.nyc.gov>
Date: 8/18/17 16:16 (GMT-05:00)
To: alroyrichards <alroyrichards
Subject: RE: Your complaints

Dear Mr. Richards,

Attached is the Citywide EEO Policy which discusses protected characteris
the issues that you discussed in your letter are employee relations or disci
Labor Relations or Parks Advocates Office. Should you have any further qu

Sincerely,

Iyana Titus

**From:** alroyrichards [mailto:alroyrichards
**Sent:** Thursday, August 17, 2017 5:19 PM
**To:** Titus, Iyana (Parks)
**Subject:** RE: Your complaints

Good day to you, Ms Titus. I do appreciate your response, in the matter, the v

1234 5th Avenue 2nd Floor Rm. 208A
New York, NY 10029
nyc.gov/parks

**Follow Parks on:** Facebook | Twitter | foursquare | Instagram | YouTube



Copy - Retained

August 17, 2017

The Director of Human Resources
New York City Parks and Recreation
24-West 61st Street, New York
New York 10023

**'WITHOUT PREJUDICE'**



Dear Sir/Madam

RE:   **ALROY D. RICHARDS –** ▓▓▓▓▓▓
       **CITY SEASONAL AIDE 2017**

As a follow up to my letter dated August 14, 2017, with respect to my Seasonal
Evaluation, I must make mention of a few (additional) matters. These matters
show grave disparities, and indifferences. Firstly, Sgt C. Soyer's written comments,
that "I fail to adhere to standards expected of a NYC employee". This is blatant
inequity, and is indeed serious. **The attire of Sgt C. Soyer, in my view, is most
disgraceful. He is never in a black shoes** (let the visits show, as well as CCTV
images), **but has one with several colors, and also, which is totally unsuited, for
the purpose of work.**

This individual **does not wear any socks, to work, and he is seldom shaven, giving
his face a rather "scruffy" look.** Please do the inspection; check the records,
which can assist in such. It is well known, by those present everyday. Also, he
wears his hat backwards, whenever he do have on one (which is seldom, to never
– never in his possession). Yet, he is writing up for a hat, and if he has on one, he
more appear to be a thug, by the way he wears the hat. Is this allowable? On
what basis is he writing up, for attire, attitude, or on presentation. Is this a City
employee, and a City supervisor. Could not be. I, for sure, could not have
operated this way (not at all), infront of fellow staff, and the patrons. Distasteful,
indeed.

I am never absent, excepting for two(2) days, which I still have not received pay
for, despite communicating, and making call, to the in box. Are other personnel

                                                                              .../2

**public affairs** (dealing with the public). Without these training, the objectives of the City may not be met, given the vast responsibilities being afforded. This could have implications, especially on staff motivation (speaking for myself), to name a few. On these preambles, **I hereby suggest, that I am not being dealt with on merit, or meritorious performance, but on disdain**. The many approaches by this individual (and at least one other, at times), is indicative of how he feels he should treat every situation. Intelligence is key, and should be pursued. Is there rage? **Is there a thought that simply does not fit in with the concept of co-existence?** "Bullying" wont help, for sure, because one may have the power (rather relative), or the authority. Is it correcting individuals in a positive way? **Are the approaches correct? Are they legitimate? Do they exist in frameworks? I am surprised that I have not been physically attacked, as yet, based on the many aggressive, and violent advances, towards me, by the individual, in particular**.

Now, has other staff been treated in the same negative, derogatory, and boisterous ways, for not wearing a hat or name tag (check the records for their "possession")? No. Have the said Sgt(s) sought to have them sent home? No. Were there attempts to force any of them to sign any documents? No (well, I only heard of another – allegation). Have any supervisor sought to have such person forcibly removed from the facility, supervisor, by anyone else, or to include the Pool Managers, as witnesses, to such? No. Was there any constant, and serious documentation, with respect to other related staff, on alleged breaches? Let us see. Has anyone else been frequently confronted, on the pool deck, in canopy, or otherwise, infront staff, and patrons, because of no name tag, or hat? I think not. Has anyone else been subjected to humiliating, demeaning, confrontational, or aggressiveness, as a result of any inspections? Not to my knowledge. Were anyone else subjected to threats of any punitive measures, if they do not sign any document? Guess not (except may be for one other allegation, with another individual, reports went). Has anyone else been shown discriminatory treatment, or being constantly harassed (for breaches)? I strongly do not think so.

I rest my presentations, possibly for now, and is quite confident, that I will be vindicated, in these unfounded allegations, based on malice, and that I will finally be able to not only work better, but to also feel that my dignity has been restored, without question.

.../4

MY COPY - Retained

August 14, 2017

**'WITHOUT PREJUDICE'**

The Director of Human Resources
New York City Parks and Recreation
24-West 61st Street, New York
New York 10023



Dear Sir/Madam,

RE:   **ALROY D. RICHARDS –** ███████
      **CITY SEASONAL AIDE 2017 – APPEALING SEASONAL EVALUATION**

---

Pursuant to my August 7, 2017 letter, with respect to Seasonal Evaluation, this is
to inform that such letter submitted, is indicative of such (**an Appeal – to the
process**). Hence, I wish to reiterate. In doing so, I also seek to find out, for **what
period in time, is my performance being appraised**? No dates were specified, on
the Seasonal Evaluation. My estimation, is that I would have probably been
appraised, as at 14th July 2017, the latest, for the first Evaluation. Is this so?
Further, it is important that I Appeal this process, as these fabrications may affect
my life, in the following ways:

  a) Generally derail my life.
  b) Leading to job loss.
  c) Consequentially, missed opportunities, to contribute meaningfully to the
     organization, the City in general, state.
  d) May disrupt my family, as this is my job, and the comments made, by the
     supervisor, are serious.
  e) Can also prevent me from receiving other positions, in this organization, or
     otherwise.

Despite the bellicose words, constantly being used to me, not responding, in kind,
seem to be angering the individual(s) concerned, as their hostile nature were
likewise, not inflamed, but tamed. These words, are all I have. There is no
effective supervision, emerging, from personnel concerned (two referred to). Sgt
C. Soyer is too procrastinating, and is not proactive, in critical issues, to do with

                                                                    .../2

written, for such occurences? Policy now relaxed, especially for name tags (may be because I now have mine)? Were notations made in respective Memo Books? **On these pretext, I feel more compelled, to register the vast disparities, in treatment, and records.** Sgt Soyer is simply upset about the fact that I called (Central) Sgt Command number, as directed, when I wasn't able to reach him, on a critical issue. This was categorically stated by him, at muster.

My other concern – **What is/are the characteristics of (looking like) a City employee?** I am baffled. Best practices dictate that at least the following tenets, would have been applicable, in "making a good (NYC) employee: **Natural Justice** (not been afforded), **appropriate leadership** (lacking, where indicated), attire (excellent), **Customer Services** (incomparable), **punctuality** (without question), and **attendance** (incomparable), **loyalty** (indisputable), **employee's leadership skills and abilities** (excellent), **initiative** (great), **team work** (excellent), and others like **knowledge** (simply majestic). These are just some. By what standards am I being measured? Seem some personnel only wish to portray themselves as "demi-god", rather than do the work of the city, develop employees, and see to it that patrons are spoken to, in the appropriate fashion- no innuendos.

Thanking you for prompt attention, and response. Please return a copy of this (latest) three page letter to me, as is customary.

Yours sincerely

**ALROY D. RICHARDS**
**CSA** 2017

Copy -    • Mr Benne McCants, Deputy Inspector
            NYC Parks & Recreation, 1234 – 104 – 5th Avenue, New York 10029
          • Ms Iyana Titus, Deputy Commissioner
            NYC Parks and Recreation, 1234 – 104, 5th Avenue, N.Y. 10029
          • Captain A. Greenfield, Officer Commanding
            NYC Parks and Recreation, FMCP – Queens (Borough)



(My) COPY — Retained

**10.**

August 7, 2017

`WITHOUT PREJUDICE'

The Director of Human Resources
New York City Parks and Recreation
24 West – 61st Street, New York
New York 10023

RECEIVED
AUG 0 9 17
Department of Parks & Recreation
Equal Employment Opportunity

Dear Sir/Madam

RE:  **ALROY D. RICHARDS (           ) – City Seasonal Aide 2017**
     **SEASONAL  EVALUATION (PERFORMANCE APPRAISAL)**
     **Reportedly Dated August 3, 2017**

In referring to the above, I must also make reference to the attachment (now) of
a ten(10) page document, dated July 25, 2017, which was written by me, and
submitted, as per indications (on said instrument). Further to this, I am also
attaching copy of a four(4) page document, dated August 7, 2017, again written
by yours truly, and which was submitted to the relevant channels. These letters,
in addition to my Memo Books, will speak volumes of the matter at hand. I had
predicted that there would have been "backlash" for the information that I would
have been submitting. The information I will, or have forwarded is not farcical. My
performance was not evaluated fairly, and is being done to undermine my
integrity, credibility, and career, by an individual, or individuals (two supervisors),
whom continue to blatantly flout the Statutes, and the goodwill of the City (in the
policies laid down, of any illegal and discriminatory practices).

I now make reference to my **Memo Book #535, pages 1-2**. My summary is that on
the day in question, Sgt C. Soyer, during a morning muster, at the Astoria pool
(Queens), indicated that he would have been doing the Performance Appraisals
(Seasonal Evaluations) on that evening. His supporting comments were that "he
will see if anyone should stay, or to return next year" (paraphrasing). Sgt Soyer
also stated that it was a **tri-partite process**. I agreed with him, but informed him
that it would have been best to divide the process, in equal parts (**three equal
intervals**). Apart from that suggestion I made to Sgt Soyer, I also asked him to give
adequate notification (which was lacking), in the process, **in order that I may**

..|2

10.

COPY

**Job Knowledge** – A two(2) was given. This is highly inaccurate. I have been trained by the Academy, and executes well. At times, I am being told by the Sgts (mentioned), that "I am working too hard", "I should take it easy, and do less" – and other comments like those (see also **page 20** of **Memo Book #535**). Again, I am requesting documented explanations in this regard, as I am entitled to know.

**Attitude** – A two(2) was given. I am being told that I do not socialize much. This is rather absurd. Work is their to be done, executing my functions, to achieve the goals that have been set out. No frolicking for me. I am not used to that (frolicking, and wasting time), and always seek to carry out work, even when others "are resting". The important thing is performance. What attitudes? I am requesting detailed written reports, in this area. Now, the Sgts (mentioned), are the ones with the "attitudes", to the point where a scuffle reportedly occurred, with a female patron. Let the records show. Sgt Soyer in particular, is an angry individual. He may be he require a little rest, or, the task at hand may be overwhelming him.

**Uniform inspections** – I am simply wearing a shorts, hat, black belt, black shoes, black sorts, and have my self neatly put together. Make the comparisons. These were done, in a muster, when Deputy Inspector B. McCants made some rather grave observations, with respect to "uniformity", or the lack thereof. Unfortunately, Sgt Soyer "blamed me" for the arrival of D.I. McCants, and Captains Greenfield, and Bayron – whom attended together, on that day. I am being written up for a **name tag, plus lack of a hat (I have asked for a replacement, as that hat is "parched", and was torn)**. Now, look at the persons whom are without name tag, even from the start, and also a hat. This is not to attack my other colleagues, but just to show the disparity, and "how theirs have been treated differently". What was documented, in those respects? I am wondering. Since I received my name tag, no other such questions about others (without name tags), have been made. The Sgts metioned (Kamel and Soyer) do not even wear hats – check it.

**Supervisor's Comments** – How have I failed to have adhered to the standards set, by the NYC Parks and Recreation, when it is the Sgt, whom is failing. I tried assisting, in guiding the process (records will show),in a professional, and responsible way, and as a leader too, but these were not well received, for strange, unknown reasons; I left those matters alone. Sgt's information that I am in need of constant correction, and reformation, is malicious, and not true. **These comments have arisen, based on his biased attitude, violent and aggressive**

°°/4

**11.**

August 7, 2017

Mr Benne McCants
Deputy Inspector
New York City Parks and Recreation
24 West-61st Street, New York
New York

WITHOUT PREJUDICE



Dear Deputy Inspector McCants

RE:   **ALROY D. RICHARDS** — ████████ **(Seasonal City Aide)**
**New York City Parks and Recreation**
**REPORTED "THREATS"**

Reference is made to a meeting held with you, on Wednesday August 2, 2017, at the Astoria Pool, Offices (queens), and which also included Captains Greenfield and Bayron. In that discussion, certain matters were outlined to you, by yours truly, which was already stated in my July 25, 2017 letter, to the NYC Parks and Recreation Commissioner, in charge of Equal Employment Opportunity. Sir, I must reiterate, **I DID NOT threaten anyone.** Ironically, **Sgt C. Soyer is the person acting threateningly towards me** (words, actions, expressions), that these situations have been noted in my Memo Books, and also in my letter (07/25/2017). If an employee is new, and is amicably, and respectfully making suggestions, when solicited, it does not warrant responses, of a violent nature, from supervisory personnel. An engaging discussion should ensue, giving appropriate directives, citing policies, and procedures, and arriving at reasonable solutions.

Deputy Inspector McCants, I am not being judged fairly, by this Sgt (as well as another) for reasons that have now become quite obvious. I arrived as an excellent employee, wishing to do the job of the City, and to do it, as per mandates, and statutes, whilst still seeking guidance, and being reasonable, after appropriate consultations. There have been challenges posed by patrons, and as time progresses, and with the necessary support, compliance is at a high. The

../2

11.

creating immense dynamism, and ensuring even greater success, for all. In my prior community and professional jobs, I have ensured that improvements be for the betterment of individuals, and society (Utilitarian concept) made where guns, shootings, murders, robberies, abductions, rape, human trafficking, extortion, narcotics, nepotisms, cronyism, and clientelism, are concerned. This Sir, was a lifetime commitment for me. Some persons were not in favor of these, as they seek to gain illicitly, some even quite influential, and whom has legal and illegal power, and authority. I made up my mind, and stood many grounds, much to the chagrin, of sometimes whom should know better. However, I was not daunted. Now, why would I come to the great United States of America, to live, and work (and it is a great being here too), being employed (or even unemployed), and be threatening anyone? My antecedents will show that if I know of anyone trying to threaten another, I would ask them to desist, and follow up with action (to correct), where applicable.

Hence, Deputy Inspector McCants, despite the many verbal abuses that I suffered since being here (a few persons even shoved passed me, whilst doing the job, but I even profoundly apologized to them, for doing my job), I kept my composure. I have knowledge, and wisdom not to threaten them, but to let them go their way, and I continue on mine. On another note though, **more Closed Circuit Television (CCTV) cameras may be required at the Astoria pool** (Queens). I would suggest that the coverage for the pool deck, be like a 360 degrees coverage. Presently, one is at the east of the pool, looking west, into the pool. Another is at the entrance to the canopy (pool deck side), looking northerly, into the pool. There isn't any at the northerly, neither westerly ends.

A camera may also be needed to cover easterly areas, under the canopy (generally in front main entrance of the female locker area – two are on the westerly side, in front general male locker room, and viewing entry/exit, to buildings/canopy, from front yard). Further, the front yard area has none. Possibility may exist to put one camera (1) each, on either side, a top building, both of which will cover line (formed normally on westerly side) formed by patrons, parallel to the building, as well as steps, leading to road way – use of wide view lens cameras, instead of lateral view. Pattern of the proposed outside



12.

July 25, 2017



'WITHOUT PREJUDICE'

Ms Iyana Titus
Assistant Commissioner – Equal Employment Opportunity
NYC Parks and Recreation
1234 - 5th Avenue, 104 Street (2nd Floor, Room #208)
New York, New York 10029

Dear Ms Titus

**RE:    COMPLAINT – ALROY D. RICHARDS** ███████
**Seasonal City Aide (C.S.A.), NYC Parks and Recreation – Queens, New York**
-------------------------------------------------------------------------------------------------------------

Good day to you. I am first of all quite thankful for the opportunity, to be living in this great country (and great City), and the privilege of also working for the **City of New York (Parks and Recreation)**. My experience working with the public, has been tremendous, and this span more than thirty (30) years. It is the first time visiting and living in the United States of America (lived here since October 2016). The American Dream allows everyone the privilage to live here, be law abiding citizens, work hard raise families**, irrespective of religion, race, nationality, color, social class, political view points, language** (as in native), **gender, sexual orientation**, inter alia. This diversity, and respect for all, is what has made America, the great country it is, with its many institutions, to include its Executive, Legislative (Statutes, Laws, Acts), and Judiciary (Labor Tribunals, inclusive, as it can also be regarded, as a precursor, to higher authorities).

At this juncture, I must mention that **I am not even allowed ease of access, on the institution's Employee Self Service (ESS) system, to allow for jobs,** as I note that the narrations being, **"Employee Facing Registry Contents"**, are present, causing either inaccessibility, inordinate delays, and subsequently, delaying me for hours, in applying for jobs, noted on the Department of Citywide Administrative Services (DCAS). I have fifteen(15) years' experience, in the civil service (Jamaica – 14 ½ of which was at the supervisory, and senior supervisory levels), have been supervisor for another seven and a half (7 ½) years, and has Management experiences. Hence, I am very determined to contribute to production, efficiency, abilities and skills, as well as observe the requisite protocols. Interestingly, there are instilled values (ones that you keep, even whilst adjusting, and conforming) that are important to one's being. Formal studies in Public Administration, would have also reminded me, as to how to deal with the public.

Prior to arriving here, I have read and understood (for years), the importance of tolerance, and diversification, even if, and when I see others (inclusive of employees), not observing and

.../2



matter, than having a jolly time, while the City (use of personification) may incur potential accusations. **An incident took place on Monday July 17, 2017**, involving one of the same Sergeants. Immediately, support, investigations, witness request statement (I had not stated collusion, nor cajoling – as, the patron, in any event, was reportedly in the wrong, it was said) and CCTV viewing of events, are all in train. Yet, the Sgt went all out to present "his case" (self preservation?), as being true, and correct, by all accounts. **What about any unsubstantiated allegations against me (if any, I say), which may simply be borne out of potential dislike, ego, or other rather "unforeseen factors"? Were there any overtones? Were they true? What was done about investigating, especially seeing that I am an agent of the City of New York (an agent of the institution)? Were potential witnesses found? Were any documentation shown to me, or any allegations outlined, or was I instructed to write any reports (as I have suggested), based on the seemingly serious (but malicious) nature of the allegations? I have my Memo Book though, contents of which were NEVER read, especially given the fact personnel make complaint. Were there language or cultural barriers? Were complaints (or complainants) simply being mischievous? Was the employee following all protocols, training, mandates (written), and guidance? Is he (or the City of New York) in the wrong?**

The concerns mainly surround two(2) Sergeants: **SGT C. SOYER** and **SGT M. KAMEL**, whom are both affiliated with the Flushing Meadows Corona Park (FMCP) facility, Queens. In my early duties at WindMuller, Jackson Heights (Queens) pool, I had indicated to Sgt Kamel, the high double standards (by employees), as well as from some patrons, which existed there. I was a new employee (still is). One person would have said "this is okay, follow me, and what I tell you, don't follow the other (Lifeguard or Filter Pool Operator or FPO), and another tells you the same thing, of the other (employee). Hence, I used my initiative, and do what the institution have told me (training), whilst still trying to be quite reasonable. Employees became rather egotistical, and began to harbor serious malice. I didn't worry much, as I wanted to serve the patrons well, my institution, as well as my fellow employees, irrespective. My requests for Form 61 (for purpose) were invariably denied. Now, it would have seemed to some (non-complying) patrons, that the City Seasonal Aide (CSA), was doing wrong, or does not wish for them to enjoy themselves.

There was one particular man (could have been **Sunday July 9, 2017, or so?** – gave in Memo Book), whom was not "swim ready". He used his (approximately) 1 ½ year old child, to block the entry/exit, to the pool, after being told the rules. This he did on four(4) to five(5) occasions, within the material time. Now, mostly children were there, in the pool, and some will run (out of pool, or try to get out in a hurry, to join swim line, outside, even when told not to run). Any

.../4





and complied. We walked passed Capt Greenfield, whom was standing, further north (and this is when he asked them the question). They took me across the pool deck, and to the external areas of the general pool, at the car park, due north. I saw Sgt Soyer went inside a black sedan motorcar, and took out some papers, with Sgt Kamel standing there, and suggesting that " I (me) must sign" (the document being offered to me). The <u>related notations by Sgt Soyer, are in my Memo Book (page 24, of #534)</u>, of "Refusing to Sign", etc. He suggested, that "it is lawful, and that it is for my own good". I disagreed, and asked why was I brought here, off the job. Further, they began to behave in an intimidatory fashion, trying to "force" me, to sign.

Based on the protocols, that I am aware of, I refused to arbitrarily affix my signature, and told them that their actions seem hurried, and worrying to me. Sgt Kamel said, <u>"send him home"</u>, to which I responded, and asked, for what - for doing my job? They then both told me that Sgt Kamel is a witness to my refusal to sign. I asked them whether they had detailed reason for meeting with me, effectively taking me off duty (impeding my job, and creating disruptions, for something that could have been done at another place, and time), and whether they had advised me, to take along a witness. This had me worrying, and I became fearful. I felt relieved, when both a male and female Police Officer, in uniforms, arrived through rear gate, to that (car park) area within seconds, of each other, to apparently take phone calls (I guess, as they were both on their cellphones). Both police personnel, exited area, and back unto pool deck, in less than 45 seconds, or so, subsequently.

I felt like I was being targeted. As I went in (returned inside facility), both staff, and patrons, were asking what could I have done, as it was obvious, that something was taking place (escort, plus "rush" outside, by both police personnel). While there, I, in no way, had spoken unkindly, neither disrespected anyone. On the other hand, I cited malice, inequity, and disdain, to both Sgts, <u>as I departed that area, and suggested they do some consulting, before they embark on being "employer", complainant, witness, investigator, "trial Chairmen", "verdict pronouncers", and dispenser of results</u>. I went back to my duties. <u>See pages 24-29, of my Memo Book, #534, for this incident, as I was "held" there (location, outside facility), for twenty two(22) minutes</u>. Isnt this counter productive? Am I being profiled, for some unknown reasons? By whom? On what basis? Is there fear factor (of the individual, being yours truly)?

The allegations, they said, related to a Sunday July 16, 2017 muster event, at same Astoria pool, at 7:15 pm (evening), during muster. Sgt Soyer was most upset with me, due to an event, which I will give a synopsis of, in the next paragraph. I had to call (Central) Sgt's area, at FMCP, to call Sgt Soyer, by cellphone, as I could not locate/see Sgt Soyer (not new, to anyone), for assistance with a matter. He began shouting to me, at the evening muster (7:15 pm), saying I should not have called the FMCP Sgt number, to report, as "this makes him look bad". Subsequently, I told

.../6



---

the pool area; I was facing the pool area. His behavior and stance, began to attract attention from the patrons, which, in my view, is rather embarrassing – and embarrassing to me. Are these actions correct? Is this the route, if there arises a difficult situation? Sgt Soyer said that "I should take up the Memo Book, and give it to him". Professionalism on his part, is again lacking here. What was really his intentions? I began to step back a few feet from him, with my hands folded. His shouting and violent nature continued. Surprisingly, he demanded that "I get back close to him". Why? I refused, and said that he should control himself. He then shouted that "he does not want to continue to talk loudly", and that "if he talks, I would not be able to hear him", in distancing myself. All that seemed quite illogical, rude, condescending, and it was as if he had no regard. PEP Officer Ross was still present. I reminded him of the "attacks" on me, and that my memo Book was snatched from me, few days ago. He mentioned/suggested that " it (snatching of my Memo book) was not done by him, but by another Sgt (referring to Sgt Kamel). In ending, Sgt Soyer told me (shouting) "Go home. Now. You are fired". I didn't answer. He continued in the loud, aggressive tone. I paid him no particular attention, and told him to get independent unbiased, qualified (experience, fiduciary function) personnel involved.

Realizing these developments, I kept a very low profile (as usual), as I deciphered that I was the target of profiling, and disdain. At 2:13 pm, that same day (Sunday July 23, 2017), I was at the front of the building, at the undercroft (but facing the pool deck). PEP Officer Ross, then approached me, from southerly, and said "Richards, accompany me"; nothing new. So, I went along. This was when I saw Sgt Soyer approaching from the gate (say 20 feet away). I then requested to stay under the two(2) cameras looking southerly, under the canopy area. Sgt Soyer agreed, and so, I went and leaned on the concrete counter, of the "old ticket booth". Again, Sgt Soyer demanded my Memo Book. I am trying to avoid any form of physical contact (based on his behavior, which is now worrying), so I rest the book about two feet away from Sgt Soyer, on the counter area. CCTV images will reveal. **Sgt Soyer refused to take the Memo Book. He then cited me for "insubordination". I asked him how come, as he is the person trying to not only embarrass me, and causing damage to my credibility, and career (publicly), but is being boisterous towards me, threatening to fire me, telling me (shouting at all times) that I should leave the premises.** To ease his attitude, I explained to him that this is called <u>repudiation of my job</u> (leaving post, or giving up job/duties, without appropriate thing, being done). This supervisor, still didn't care, as he carried on.

Sgt Soyer then went for the two(2) Pool Managers, at the location, whom were both in the main Office, nearby. Upon their arrival, I asked them if they were aware or apprised of the circumstances, to which they are being asked to be witnesses, by Sgt Soyer. It was a no, from both gentlemen (Pool Managers). I advised them that this is a labor matter, requiring other

.../10



13.



# City of New York / Parks & Recreation
## SEASONAL EVALUATION
## 2017

| EMPLOYEE INFORMATION | | | |
|---|---|---|---|
| (Please Print) | | | |
| EMPLOYEE'S NAME<br>**Richards, Alroy D.** | SOCIAL SECURITY/ERN №<br>▓▓▓▓▓ | EVALUATION PERIOD<br>**July 2017** | RATING SCORE<br>**10** |
| SEASONAL TITLE<br>**CSA/PEP** | BOROUGH/DISTRIBUTION №<br>**Queens Pools** | SUPERVISOR/SUPERVISOR'S TITLE<br>**Soyer, Cenk/ Sergeant** | |

## EMPLOYEE PERFORMANCE RATINGS

Performance is rated at the end of the evaluation period. The supervisor rates each standard and assigns an overall rating score (above). This rating is the total of the scores from section→. A total rating of less than 12 will be considered unsatisfactory. **Employees who score less than 12 cannot be considered for rehire without attaching written support from a Borough Commissioner or Chief of Operations.**

Once the rating score is assigned, the supervisor must meet with the employee to discuss the completed evaluation (section±).

PLEASE CIRCLE THE NUMBER THAT BEST DESCRIBES THE EMPLOYEE'S JOB PERFORMANCE.

| A. QUALITY OF WORK | | | | |
|---|---|---|---|---|
| 1 | (2) | 3 | 4 | 5 |
| Poor quality of work, continually makes errors, requires excessive checking and rework. | Careless inclined to make mistakes, work barely acceptable. | Meets minimum requirements of accuracy and neatness, average quality of work, needs normal supervision. | Exceeds minimum requirement of accuracy and neatness, very few errors, carries out instructions well, needs little supervision. | Consistent high degree of accuracy and neatness, work can be relied upon, very little rework, seldom needs supervision. |

| B. ATTENDANCE | | | | |
|---|---|---|---|---|
| 1 | 2 | 3 | (4) | 5 |
| Often absent or tardy. Does not report absences or tardiness in advance. Very undependable. | Erratic in attendance and punctuality. Seldom reports absence in advance. Not dependable. | Occasionally absent or tardy. Reports absences or tardiness in advance. | Seldom absent or tardy. Always reports absences or tardiness in advance. | Excellent attendance record. Always at work and on time. Very dependable. |

| C. JOB KNOWLEDGE | | | | |
|---|---|---|---|---|
| 1 | (2) | 3 | 4 | 5 |
| Definite lack of knowledge. Very little understanding of job duties. Needs considerable instructions. | Inadequate knowledge of duties. Understanding of job duties not sufficient. | Has adequate knowledge of duties. Occasionally needs instruction. | Good knowledge of duties. Well informed. Needs little direction. | Excellent understanding of job assignments. Requires very little direction. Extremely capable. |

| D. ATTITUDE | | | | |
|---|---|---|---|---|
| 1 | (2) | 3 | 4 | 5 |
| Difficult to work with. Chip-on shoulder attitude. Uncooperative and rude. | Occasionally unwilling to follow orders without argument. Inclined to be stubborn. | Tries to cooperate. Usually agreeable and obliging. | Cooperative most of the time. Interested in work. Quick to offer assistance. | Always cooperative. Shows a high interest in work. Goes out of way to help. Pleasant. |

## SUPERVISORY CONFERENCES

**SUPERVISOR:** Consider the following information in addition to the time information when considering the recommendation to rehire.

1. Has a supervisory conference been held with this employee? **X** yes ☐ no  If yes, how many?  ___1___

2. Has the employee been subjected to other disciplinary actions? ☐ yes **X** no  (If yes, explain in section °, below).

3. Has the employee passed all uniform inspections? ☐ yes    **X**  no   ☐ not applicable.

 Number of inspections held: ___6___   Number passed: ___0___

## SUPERVISOR'S COMMENTS
*(Continue on a separate sheet if necessary)*

Alroy Richards fails to adhere to the standards expected of a NYC employee. He is in constant need of correction and reformation while performing his duties. He is rarely absent and but often tardy. He lacks the basic job knowledge to perform his duties effectively and is unwilling to learn. Richards has problems getting along with his supervisors, peers and the public. He has had numerous complaints from pool patrons in regards to his attitude and rude behavior.

## SUPERVISOR/EMPLOYEE RATINGS CERTIFICATION

Employee Statement:    I have seen this evaluation and its contents have been discussed with me.  My signature does not mean agreement, but that I have reviewed my evaluation.  If I wish to comment, I may attach a separate statement to this evaluation.


**Alroy D. Richards**                                                                             **08/03/17**
EMPLOYEE'S NAME (PRINT)                                  EMPLOYEE'S SIGNATURE                         DATE

**Cenk Soyer**                                                                                   **08/03/17**
SUPERVISOR'S NAME (PRINT)                               SUPERVISOR'S SIGNATURE                        DATE


**Captain Juan Bayron**                                                                          **08/01/17**
MANAGER'S NAME (PRINT)                                   MANAGER'S SIGNATURE                          DATE

☐  *RECOMMEND FOR REHIRE NEXT YEAR:*                          YES   ( NO )

Refused to Sign


WITNESS'S NAME (PRINT)                                    WITNESS'S SIGNATURE                          DATE
(Note:  If the employee refuses to sign, a witness must sign the form, affirming that the employee viewed this evaluation.)
If you have any questions, call your Borough Chief of Administrative Services or the Central Personnel Seasonal Unit at 212-830-7877.

# SUPERVISOR'S CONFERENCE WITH EMPLOYEE

14.

Print Form

Form Revised 2/20

**To be Completed by Supervisor:**

| | |
|---|---|
| Employee Last Name: Richards | Employee First Name: Alroy | ERN: 582164 |

| | | |
|---|---|---|
| Civil Service Title: City Seasonal Aid (CSA) | Civil Service Status: (check one) | ☐ Permanent ☐ Provisional ☒ Seasonal |

| | |
|---|---|
| Borough/Bureau: Queens | District/Division: Urban Park Service (UPS) |

| | | |
|---|---|---|
| Supervisor's Last Name: Soyer | Supervisor's First Name: Cenk | Supv. Title: Sergeant (AUPR) |

This memorandum will confirm our conversation, held on  Jul 16, 2017  in my office, during which you were cautioned concerning your failure to comply with departmental rules and regulations, and/or your failure to follow the orders of your supervisor.

Specifically, the following was brought to your attention:

> Rule III - Conduct Unbecoming a City Employee
> The following acts constitute conduct unbecoming a City employee:
>     Conduct Prejudicial to Good Order and Discipline
>         B) Threatening, intimidating or harassing a superior, fellow employee, other City employee, Peace/Police Officer, or private citizen;
>         C) Using obscene or abusive language towards a superior, fellow employee, other City employee, Peace/Police Officer, or private citizen;
>
> After receiving a complaint about Mr. Richards from a pool patron, I decided to have end of tour muster to address the concerns raised by the the complainant. As I was having the muster, Mr. Richards became very irate and made several comments in regards to "these fucking Americans" and continued to curse. During this time one of the CSA's said "If you don't like it, you can go back home". This statement made him even more irate and he became threatening towards a couple of the CSA's almost causing a physical altercation. He continued with the abusive language and became even more disorderly to the point that one of the CSA's had to escort him away.

You are hereby advised that this or further misconduct on your part may necessitate formal disciplinary action against you. A copy of this memorandum will be placed in your personnel folder.

RECEIVED
PARKS PERS.
2017 AUG 31

*Received 09/23/2017*

| | |
|---|---|
| Supervisor's Signature: | |
| Supervisor's ERN: 1559958 | Date: Jul 17, 2017 |

**Employee Refused to Sign:**

| | |
|---|---|
| Witness Name: Mohamed Kamel | |
| Witness ERN: 1559979 | Date: 8/7/2017 |
| Witness Signature: | |

**Receipt by Employee:**  I have been given a copy of this statement which is being placed on record and understand that I have the right to submit a reply in writing for the record if I so chose.

| |
|---|
| Employee's Signature: |
| Employee ERN: | Date: |

*A copy of this form must be submitted to the following Offices: Parks Advocate, Central Personnel, and Borough Chief of Admin. Services*

15.

September 19, 2019

**'WITHOUT PREJUDICE'**

Ms. Dolanda Young
Investigator
Equal Employment Opportunity Commission
New York District
33 Whitehall Street, 5th Floor
New York, N.Y. 10004-2112

Dear Ms. Young:

RE:     **ALROY RICHARDS vs. NEW YORK CITY PARKS and RECREATION**
        **File No.:     846-2017-36034**
        **FURTHER APPEAL**

Reference is made to Complainant's 09/14/2019 letter, regarding the subject (of APPEALING the E.E.O.C.'s 08/31/2019 Determination, and Decision). In continuing this matter (of APPEALING), Complainant now make reference to **EXCEPTIONS** to New York State's **AT-WILL-EMPLOYMENT**.

Please find attached, Complainant's Research, and tenets. Even if this (further) presentation will be an exercise in futility, or mere academics, the Complainant wishes to introduce this crucial issue. All other points, as presented by Complainant in 09/14/2019 correspondence, remain as they are (unchanged).

As per usual, anticipating your urgent reply.

Yours sincerely

**ALROY RICHARDS**
**Complainant**

**Att.**



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE

SEP 1 9 2019

DATE RECEIVED

Copy – Mr David Lepart (Attorney-at-Law)
      NYC Parks and Recreation, the Arsenal
      Central Park, Legal Office
      830-5th Avenue, Room #313
      New York, N.Y. 10021



**15.**

## AT-WILL EMPLOYMENT and the EXEMPTIONS To Such

The State of New York, is a signatory to the **AT-WILL EMPLOYMENT**, whereby, an Employer can reportedly terminate an Employee, without notice, or without reasons. However, the rights of the Employer cannot indefinitely supersede that of the Employee, as the Employee, as an individual, also has rights, or redress. Reasons given by the Employer, must be *without prejudice, fair, unbiased, Constitutional*, and governed by *Labor Laws*, and other Statutes, as per *State and Federal Laws*. Such Termination, must be *free from Discriminations*, and *Retaliations*, from the Employer. Consequently, there are **EXCEPTIONS**, to **AT-WILL EMPLOYMENT**, New York State again being a signatory. Essentially, the reasons given by the Employer must be **verifiable**, and have **merit**. Now, kindly see the following exceptions:

(a) **PUBLIC POLICY** — refusal by the Employee to break any Laws, or refusal to discriminate, whilst on the job, even overall (race, age, gender, creed, color, religion). In addition, Termination for *"whistle blowing"*, **health**, and *safety concerns, such as heinous behavior, from the Employer, or agents of the Employer*, regarding the Employee. 43 States have this, including New York State. **Applicable** to the matter at hand, of Complainant, versus NYC Parks and Recreation.

Case in question **Adams vs. George W. Cochran, and Company**. Delivery truck driver, Mr. Robert Adams, was employed by George W. Cochran, and Co., Washington D.C. Mr. Adams refused to carry out illegal instructions, given to him, by this Employer. Employer failed in bid to justify the Termination, plus failed at claim against Employee so mentioned, for Emotional Distress. Case upheld, by the Jury. *597 A. 2d 28 (D.C. App. 1991)*. Synonymous with Complainant versus NYC Parks and Recreation.

(b) **IMPLIED CONTRACT** — being an *unwritten contract*. Example, if your Employer commended you (Employee) on "doing a good job". Employers have a duty, and responsibility, to tell, and *inform Employees of their rights, and* **duties of their employment**. Legal duty, of the Employer. Never the case, in the matter before the E.E.O.C., of Complainant versus NYC Parks and Recreation. **Employee (Complainant) had indeed complied with all his lawful, and assigned duties**.

Case in likeness, of Mr. **Anthony Nicosia** (New Jersey, Employee) **vs. Wakefern Foods Corp.** (Employer). Wakefern refused to follow Progressive Disciplinary Steps (Disciplinary Procedures). Matter tried in the Supreme Court (Civil), N.J. Court found that the Implied Contract, was breached by the Employer, Wakefern, and awarded the Employee, Mr. Anthony Nicosia. *643 A. 2d 554(N.J. 1994)*. Isn't this the said matter which occurred with Complainant vs. NYC Parks and Recreation? It is.



EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
NEW YORK DISTRICT OFFICE
SEP 1 9 2019
DATE RECEIVED



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**New York District Office**

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
For General Information: (800) 669-4000
TTY: (800)-669-6820
District Office: (212) 336-3620
General FAX: (212) 336-3625

Mr  Alroy Richards

Re:    Alroy Richards v. NYC Parks and Recreation
         EEOC Charge No. 846-2017-36034

Dear Mr. Richards:

The Equal Employment Opportunity Commission (hereinafter referred to as the "Commission")
has reviewed the above-referenced charge according to our charge prioritization procedures.
These procedures, which are based on a reallocation of the Commission's staff resources,
apply to all open charges in our inventory and call for us to focus our limited resources on those
cases that are most likely to result in findings of violations of the laws we enforce.

We have evaluated your charge based upon the information submitted and have determined
that further investigation is unlikely to result in a determination that Respondent violated one of
the Federal laws enforced by the Commission.  Therefore, your charge will be dismissed.

Attached is your Dismissal and Notice of Rights.  If you want to pursue this matter further in
Federal court, your lawsuit must be filed within 90 days of your receipt of the Notice included
with this letter, otherwise your right to sue will be lost. This does not certify that Respondent is in
compliance with the statutes.  The Commission's processing of this charge has been concluded.

Should you have questions, you may contact Investigator D. Young at (212) 336-3758.

Sincerely,

Kevin J. Berry
District Director

August 31, 2019
Date

Enc.

**16.**

## DISMISSAL AND NOTICE OF RIGHTS

To: **Mr. Alroy Richards**

From: **New York District Office**
**33 Whitehall Street**
**5th Floor**
**New York, NY 10004**

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **846-2017-36034** | **D. Young,** **Investigator** | **(212) 336-3758** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐ The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐ Other *(briefly state)*

## - NOTICE OF SUIT RIGHTS -

*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Kevin J. Berry*
Dey

**Kevin J. Berry,**
**District Director**

August 31, 2019

*(Date Mailed)*

Enclosures(s)

cc: **Attn.: Mr. David Lepart**
**NYC PARKS AND RECREATION**
**The Arsenal, Central Park – Legal Office**
**830 Fifth Avenue, Room 313**
**New York, NY 10021**

16.

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
New York District Office
33 Whitehall Street, 5th Fl
New York, N.Y. 10004

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE $300

Mr. Alroy Richards

17.

Form 5 (11/0)

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act
Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 846-2017-36034 |

## New York State Division Of Human Rights

*State or local Agency, if any*                                        and EEOC

| Name (indicate Mr., Ms, Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Alroy Richards** | | ▮▮▮▮▮ |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **NYC PARKS AND RECREATION** | **500 or More** | **(212) 360-1393** |

| Street Address | City, State and ZIP Code |
|---|---|
| **The Arsenal, Central Park - Gen. Counsel's Off.,  830 Fifth Avenue, Room 312,  New York, NY 10021** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE   ☐ COLOR   ☐ SEX   ☐ RELIGION   ☒ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ GENETIC INFORMATION
☐ OTHER *(Specify)*

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **08-26-2017** | **08-26-2017** |

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I worked for the above-named Respondent from June 14, 2017, until I was wrongfully terminated on August 26, 2017, because of my Jamaican national origin in violation of Title VII of the Civil Rights Act of 1964, as amended. My former supervisors were Sgt. C. Soyer (Caucasian/White American), Sgt. O. Lee and Sgt. M. Kamel (African-American).

On 7/16/2017, a female African - American coworker said to me "go back to your country." Because Sgt. Soyer was present when the remark was made, I asked him if he heard it. Sgt. Soyer said "Yes, I heard. So what!" Thereafter, I was harassed and excessively written-up for infractions (not wearing my city issued hat or a name tag) for which other employees did not get written-up. I wrote a letter on July 25, 2017, to the Assist. Comm. of EEO, I Titus complaining about the biased and disparate treatment.  On August 3, 2017, in retaliation for complaining about national origin bias, I was given a very poor performance review. Later, on August 26, 2017, I was terminated.  I believe the biased remark, excessive write-ups, poor review and disparate treatment support my contention that I was terminated because of my Jamaican national origin.

| | |
|---|---|
| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
| | X ⎰⎰⎰ |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| | ⎰⎰⎰ |

| 10/11/2017 | ⎰⎰⎰⎰ | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE 10/11/2017 |
|---|---|---|
| Date | Charging Party Signature | *(month, day, year)* |

HAJMWATTIE SINGH
Notary Public, State of New York
Reg. No. 01S16089783
Qualified in Nassau County
My Commission Expires Mar. 31, 2019

clolanda. young @ eeoc. gov

18.

September 29, 2017

<u>**APPENDIX To CHARGE SHEET (Later Reference)**</u>
**'WITHOUT PREJUDICE'**

The Equal Employment and Opportunity Commission
New York District office
33 Whitehall Street, 5th Floor
New York, N.Y. 10004

Dear Sir/Madam

RE:    **ALROY D. RICHARDS – Former Employee, NYC Parks and Recreation
COMPLAINT/CASE #846-2017-36034**

Reference is made to the subject. I am in receipt of your email, and attached Charge Form, as well as a copy received in the hard copy mail (at Valley Stream, New York). My main claims are on the tenets of:

a) **Discrimination due to National Origin.**
b) **Harassment.**
c) **Hostile Work Environment discrimination.**
d) **Retaliation.**

Please be advised, that I am now in receipt of the following documents, as additional evidences, and which will be presented to your material Office:

a) **Termination letter dated 09/01/2017**, received by certified mail, on 09/23/2017. The Parks Advocate, <u>neither</u> the Union, <u>nor</u> the Borough Chief Administrative Services offices, were copied.
b) **Reported "Write Up" dated 07/20/2017**. Kindly be advised, that the Central Personnel (Human Resource) Department, stamped the document, as being received on 08/30/2017 (a date way off from whence my verbal and formal/written complaint letters have been made). Further, the Human Resources Office confirmed with me, that they were not sent the document, until 08/30/2017. As required, and noted on the form (southerly section, as note), the NYC Parks and Recreation's Advocate office, in addition to the Borough Chief of Administrative Services office, MUST be copied (sent a copy). My checks with the office of the Parks Advocate indicate that this was never done.
c) Copy of **receipt** for my **NAME TAG** that I personally went and purchase, at College Point

.../2



terminated, due to opinions she echoed, and which were in the form of a questionnaire. The state officials intimated that she was dismissed from her job, due to alleged insubordination. Myers then filed a suit under U.S.C. sub-section 1983 (1976), contending that her employment was wrongfully terminated, because she had exercised her constitutionally protected right, of free speech. The District Court agreed, and ordered that Myers be reinstated, and awarded back pay, and damages, as well as attorneys costs. P.461 U.S. 42, 507. F. supp 752 (EdLa. 1981) Footnote 3. District Court found out that the real reason that Myers was terminated, had to do with her written complaint (questionnaire document).

"The Constitution protects the public, including public employees, from deprivation of life, liberty, or property, without due process." "No state shall deprive any person of life, liberty, or property, without the due process of law." Also, "the **pre-determination hearing**, is to give an **employee the opportunity to be heard, prior to making a final decision, to terminate the employee. By meeting with the employee, the supervisors are giving the employee a chance to provide any new information, that may cause to reconsider the decision to terminate."** However, the supervisors cannot be parties to a matter, and be witnesses.

**"Work place due process includes the various avenues of redress, that employees may pursue, when they believe that an agency management has treated them unfairly. Example, the EEO complaint process is available to employees, whom believe that an action (against them) is discriminatory."** This is how I felt based on the disdain treatment, and subsequent developments, whilst I was employed by the NYC Parks and Recreation. The concept of a "loudermill hearing," is also part of the concept of due process. It must be provided to an (U.S. government) employee, prior to removing, or impacting the employment property rights (of that employee), for example, imposing severe discipline." "Due process in employment is when property interests are usually created by state law, such as a **civil service system, or contract**".

Constitutional definition of Liberty – **"Immunity from arbitrary exercise of authority: political independence, freedom of choice; to think or feel, or do as one pleases; personal freedom from servitude or confinement, or oppression."**
"Garrity rights" **"apply to the right of a public employee, not to be compelled to discriminate against themselves, by their employer. These rights are based on the 1967 United States Supreme Court decision of Garrity v. New Jersey".**

### Other Notes

1) City/state must prove incompetency, or misconduct, on the part of the (terminated) employee, after a hearing, on the charges, and specifications.
2) The employee has a protected property interest, in that employee's employment.
3) Employee must be served with specifications, and charges, which are specific enough.
4) The employee is entitled to representation, and to a fair hearing, where all evidences, will be effectively presented, and the employee's rights, under the Civil Service Laws, be

.../4

**18.**

general. It did; I tried applying for several positions within the City, but was being restricted, or denied, with the notations being **"Employee Facing Registry Contents."** (Refer to my contact with NYCAPS, by email, on 08/04/2017).

6) May prevent future employment, due to biased, unfounded allegations, which were never brought to fruition, and the massive prejudice, that I faced, disdain, and perceived discrimination. Hence, the possibility of negative recommendations (that is, reasons for my separation) and will have a permanent impact on me (social, economic, professional and academic survival).

7)

Simply put, I had questioned the processes, as I am cognizant that the Human Resources Department (and I purported this position), are responsible for:

- **Employment.**
- **Terms and conditions of employment.**
- **Benefits and compensation.**
- **(Guiding and initiating) Disciplinary matters, and hearings, into such matters.**

Dates of my many letters (07/25/2017, 2 on 08/07/2017, 08/14/2017, 08/17/2017 and 08/28/2017), emails, and analogies, are tantamount to the efforts I made, in seeking an amicable resolution, and for guidance to be made in these matters, which were never, forthcoming. Kindly see my <u>Memo Books</u>. A copy of the first one, is to be procured from NYC Parks and Recreation. My **character, integrity,** and **credibility** are important aspects of my being a resident, human being, and as an employee, in this great country. The City, State, the United States and the Constitution do <u>promote Diversity, Inclusiveness, and Non-Discrimination, and equal rights,</u> and <u>equal employment</u> - <u>For ALL.</u>

Yours sincerely

**ALROY D. RICHARDS**
**Complainant**



**APPENDIX**

**'WITHOUT PREJUDICE'**

TO:       Equal Employment Opportunity Commission

FROM:    Mr Alroy D. Richards – Former Employee # ███████
             New York City Parks, and Recreation (City Seasonal Aide)

DATE:     August 31, 2017

RE:       **TERMINATION, Effective Saturday August 26, 2017
Reporting DISCRIMINATION, HARASSMENT, RETALIATION, and
HOSTILE WORK ENVIRONMENT**

In furtherance of my documentation completed at your Offices, at 33 Whitehall Street, New York, N.Y. 10004, I now submit additional information, in the interim, with respect to certain chronological developments, to show bias, prejudice, and disdain, culminating into actions, at caption.

**Sunday July 16, 2017** – Whilst I was working at the Astoria Pool, Queens. An incident took place earlier in the day, involving an adult male patron. Time of that incident was 1:05 pm, documented in my **Memo Book #534, pages 9-11**, and also in my letter dated July 25, 2017, to the Assistant Commissioner of EEO, NYC Parks and Recreation, pages 6 (2nd paragraph), to 7 (first paragraph). One main Supervisor, Sgt C. Soyer, is of the view that "I made him look bad", by calling Central Command, when I could not locate him, on the compound, due to the matter at hand. He shouted at me, in the evening muster, near 7:20 pm, became aggressive towards me, and had targeted me, during the meeting. This is when female CSA employee, McClain, said **"You (referring to me) should go back to your country"**, as I said "I didn't know America, and New York didn't allow for free expression, when solicited, from the Supervisor.

**Thursday July 20, 2017** – Again, working at Astoria Pool, Queens. Time is near 5:20 pm, while I was on duty, at the facility. I was taken outside work area, and to northerly car park, without any explanations, nor reasons, and was being forced

°·/2



**38**, of Memo Book **#534**. At all times, investigations should be embarked on, in the interests of patrons, employees, as well as the City, as an institution, and this was constantly being stated by the writer, much to the chagrin, of Sgts C. Soyer, and M. Kamel.

As at 11:58 am, later that day (July 23, 2017), I was working on the pool deck, at the north easterly corner. Sgt C. Soyer walked up to me, as well as PEP Officer Ross. Ms Ross, according to Sgt Soyer, was being used as his witness: I wasn't asked to take along a witness. Notations made on **pages 40-42**, of my **Memo Book #534**. Sgt C. Soyer then requested my Memo Book. In an effort to avoid any contact with him, I laid it down, on the ledge of the perimeter wall, between us, distance between us being about 2 feet. I recalled the tussle and fight between himself, and the adult female patron, and was being quite cautious, especially based on his aggressive, violent and threatening demeanor. He said **"Take it up, and give it to me", shouting**. I said to him, that the Memo Book is there for presentation, and that <u>it was grabbed from my hand, on Thursday July 20, 2017.</u> <u>He commented that Sgt Kamel whom had grabbed the Memo Book from me,</u> <u>and not him.</u> This as confirmed, as second hand information, by PEP Officer Ross.

I then stepped back a few feet. <u>**Sgt C. Soyer, in this same incident, began to**</u> <u>**further advance at me.**</u> <u>**He then asked why was I retreating, and I told him, "to**</u> <u>**avoid any possible contact".**</u> He then said **"you are fired"**. On hearing this, I went to do my duties. At this point, he said I was being insubordinate, to him. **I was so embarrassed, as patrons and staffs' attention were drawn, some even converging.** Realizing this, I suggested to Sgt Soyer, that these discussions warrant another place, and time, with unbiased, independent parties. At 2:13 pm, that day (**pages 42-44**, my **Memo Book #534**), I was summoned to the canopy area, located north, first by PEP Officer Ross, but when I reached there, I saw Sgt C. Soyer. <u>He again demanded my Memo Book.</u> I went under the cameras, for clarity, and records. Again, I placed Memo Book down, on concrete counter (between waist and chest high), about 1 ½ feet away, from Sgt Soyer, and myself.

He refused to take up the Memo Book. Instead, **he went for two(2) Pool Managers, Tom**, and **Mr Broffy**, whom were both in the Pool Office nearby (CCTV



he doesn't wear his hat, or if worn, worn backways, by him, he does not wear socks (always in short pants), and has multicolored sneakers, instead of plain black shoes, and black socks – see especially first page, to second page, of this four(4) page letter. **Thereafter, I obtained my name tag, on Tuesday August 1, 2017**, all the way at College Point, Queens. Virtually all checks for name tags seemed to have ceased, now that I have obtained mine. Please **see** my paragraph of comparative analysis questions, on **page 3, letter dated August 17, 2017**. **Personnel have even been told afterwards, by Sgt Soyer, "Oh they (authorities) are aware that you just do not have a name tag, as you were not issued, with one"**. Can you believe this inequity? I wrote about that though, to the Management.

**Wednesday August 2, 2017** – Now, **Deputy Inspector Benne McCants**, **Captain Bayron**, and **Captain A. Greenfield**, paid an unexpected visited to the Astoria Pool. They asked to meet with me, to explain matters, ad referred to receiving my July 25, 2017 letter. Meeting commenced at 11:27 am, and ended 12:18 pm. At 12:20 pm, Deputy Inspector McCants ordered that we (the group) muster. When this was done, it was appalling to him, that there were serious flaws in attire (not from me), as persons were not appropriately dressed, were in wrong colored socks, had on sandal looking shoes, no hat, no name tags. He then asked that all persons must be on par. I will say no more. So, at least he came and saw the discrepancies. Whom were the persons written up prior? Sgt O. Lee was present, on this day, as Sgt C. Soyer was on day's off. Kindly see notations in **Memo Book #535**, which was commenced on Wednesday August 2,2 017.

**Thursday August 3, 2017** – A Performance Evaluation was brought to me, by Sgts M. Kamel and Sgt C. Soyer. Again, I was being told to "just sign" (as the next one will be better), and move on. I had to say to them, that this is duress, and that the comments made are untrue, malicious, vindictive, has no basis, has no supporting evidence, nor documents, and that it is an attempt at retaliation. Nothing was forthcoming from them. Please see said Performance Evaluation attached. They knew the comments were unsubstantiated, and arise out of prejudice. Presently, no more engagements in the matter are forthcoming, despite **three(3) appeal letters, to the Performance Evaluation** (asking for review, proof, and for sabotage

**16



**19.**

At this point, I will also point out the seeming collusive nature, by the supervisor, as he tries to convince other employees, to write on his behalf. Some of the staff are being threatened, with termination, due to the unequal treatment, being meted out. **On Thursday August 17, 2017**, I was practically the only CSA that worked at the facility. Assistance had to be sought from PEP Officer Ross, whom worked at the female locker room. All other CSAs, surprisingly, were missing. Information told, is that they were all "summoned". Summoned by whom? I have never been summoned, despite my many reports, neither interviewed, otherwise (except on August 2, 2017). Formal process is required, for the records. In addition, unfinished Memo Books were also inexplicably "seized"; mine was not requested. New Memo Books were allegedly issued to the CSAs, despite their old ones being far from completed. Is this a legal process? Is it on record, as being legitimate ("above board"), and can stand up to scrutiny? I do hope that the answers can be found, and verifications voluntarily presented, if there is nothing to hide, as this worries me. The Principle of Accountability would dictate that the answers be provided, by the authorities, in question. Let us see where those investigations will lead, and why is it that no formal investigations were declared. There should be no veil of secrecy, given the magnitude of the matter.

**Saturday August 26, 2017** – I was working at the Astoria Pool, Queens. My post was between the mens' locker room, and the pool deck. Sgt M. Kamel came up to me, close top 11:20 am, or so, a mere twenty(20) minutes after I had commenced my duties. He told me that Sgt O. Lee needed to see me, and that she was under the canopy area. When I arrived there, I saw Sgts O. Lee, C. Soyer, and M. Kamel. Sgt Lee told me that she had a Termination Document, for me, and handed me a document. I asked her whether the Management was made aware of this, and whom. She said yes, and that Captain Bayron is the initiator. Please see notes in **Memo Book #571** (commenced on August 24, 2017), **pages 5-10**. The details are available. My concerns were that Captain A. Greenfield was handed a copy of my August 17, 2017 letter, the day before (Friday August 25, 2017), by Sgt O. Lee.

**Further to this, Sgt Kamel was almost suggesting that I immediately leave the compound, whilst I was in my uniform, and even before I acknowledged the Termination Letter, and hand over all equipment, and paraphernalia.** He was

•• 18

3) Potential loss of job (well, I have now been terminated).

4) Restricted job access, outside of City employment.

5) Tarnishing of my character, credibility, and reputation, and also integrity.

6) Disrupting my life, due to harassments, hostile work environment, retaliation, along with discrimination.

I feel humiliated, and is now without a job, and without any (current) prospects, to provide for my family, due to this negative economic impact.

Regards.

Yours sincerely

**ALROY D. RICHARDS**

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## INTAKE QUESTIONNAIRE

Please immediately complete this entire form and return it to the U.S. Equal Employment Opportunity Commission ("EEOC"). REMEMBER, a charge of employment discrimination must be filed within the time limits imposed by law, within 180 days or in some places within 300 days of the alleged discrimination. When we receive this form, we will review it to determine EEOC coverage. Answer all questions completely, and attach additional pages if needed to complete your responses. If you do not know the answer to a question, answer by stating "not known." If a question is not applicable, write "N/A." (PLEASE PRINT)

**1. Personal Information**

Last Name: RICHARDS    First Name: ALROY    MI: D.

Street or Mailing Address: [redacted]    Apt or Unit #:

City: [redacted]    County:    State:    Zip:

Phone Numbers: Home: ( )    Work: ( )

Cell: [redacted]    Email Address: [redacted]

Date of Birth: [redacted]    Sex: ☒ Male ☐ Female    Do You Have a Disability? ☐ Yes ☒ No

Please answer each of the next three questions.    i. Are you Hispanic or Latino? ☐ Yes ☒ No

ii. What is your Race? Please choose all that apply. ☐ American Indian or Alaskan Native ☐ Asian ☐ White
☐ Black [redacted] American ☐ Native Hawaiian or Other Pacific Islander

iii. What is your National [redacted]    Jamaica-West Indies

Please Provide The Name Of A Person We Can Contact If We Are Unable To Reach You:

Name: [redacted]    Relationship: Mother

Address: [redacted]    City: [redacted]    State:    Zip Code: [redacted]

Home Phone: ( )    Other Phone: [redacted]

**2. I believe that I was discriminated against by the following organization(s):** (Check those that apply)

☒ Employer ☐ Union ☐ Employment Agency ☐ Other (Please Specify)

Organization Contact Information (If the organization is an employer, provide the address where you actually worked. If you work from home, check here ☐ and provide the address of the office to which you reported.) If more than one employer is involved, attach additional sheets.

Organization Name: New York City Parks and Recreation

Address: 24 West 61st Street    WORKED County: at Astoria Pool Queens (mostly)

City: New York    State: N.Y.    Zip: 10023    Phone: (212) 830-7700

Type of Business: Park and Recreation    Job Location if different from Org. Address: Flushing Meadows-Queens

Human Resources Director or Owner Name: McDavid Terhune    Phone: (212) 830-7851

Number of Employees in the Organization at All Locations: Please Check (✓) One    Approximately

☐ Fewer Than 15    ☐ 15 - 100    ☒ 101 - 200    ☐ 201 - 500    ☐ More than 500

**3. Your Employment Data** (Complete as many items as you are able.) Are you a federal employee? ☐ Yes ☐ No

Date Hired: 06/14/2017    Job Title At Hire: City Seasonal Aide (CSA)

Pay Rate When Hired: $12.27 an hour    Last or Current Pay Rate: $12.27 an hour

Job Title at Time of Alleged Discrimination: CSA    Date Quit/Discharged: Sat. 08/26/2017

Name and Title of Immediate Supervisor: Sgt C. Soyer; two (2) others - Sgt O. Lee, Sgt M. Kame

If Job Applicant, Date You Applied for Job N/A    Job Title Applied For N/A

1

**4. What is the reason (basis) for your claim of employment discrimination?**

*FOR EXAMPLE, if you feel that you were treated worse than someone else because of race, you should check the box next to Race. If you feel you were treated worse for several reasons, such as your sex, religion and national origin, you should check all that apply. If you complained about discrimination, participated in someone else's complaint, or filed a charge of discrimination, and a negative action was threatened or taken, you should check the box next to Retaliation.*

☐ Race  ☒ Sex  ☐ Age  ☐ Disability  ☒ National Origin  ☐ Religion  ☒ Retaliation  ☐ Pregnancy  ☐ Color (typically a difference in skin shade within the same race)  ☐ Genetic Information; circle which type(s) of genetic information is involved: i. genetic testing   ii. family medical history   iii. genetic services (genetic services means counseling, education or testing)

If you checked color, religion or national origin, please specify: *Jamaica. Told by a female employee meeting, in presence of Supervisor, to "go back to my country". The ~~If you checked genetic information, how did the employer obtain the genetic information?~~ N/A Supervisor heard and did nothing. I made formal (written) complaints to hierarchy, etc. Later shown aggressive, boisterous, vindictive and retaliatory actions.*

Other reason (basis) for discrimination (Explain): *Unfounded allegations, "write ups". I counter wrote, requesting proof and disclosures. Nothing substantial*

**5. What happened to you that you believe was discriminatory?** Include the date(s) of harm, the action(s), and the name(s) and title(s) of the person(s) who you believe discriminated against you. Please attach additional pages if needed.
*(Example: 10/02/06 – Discharged by Mr. John Soto, Production Supervisor)*

A. Date: *Sunday* 07/16/2017 Action: *✱ See above. This is one such example. More will be provided.*

Name and Title of Person(s) Responsible: *CSA McClain and Supervisor G. Soyer*

B. Date: *Thursday* 07/21/2017 Action: *Took me outside sight, to a car park, threatening w/ termination and "be sent home", if I do not sign "a document" I don't*

Name and Title of Person(s) Responsible *Sgt G. Soyer and Sgt M. Kamel*

**6.** Why do you believe these actions were discriminatory? Please attach additional pages if needed.✱ *Wrote to NYC Parks and Recreation EEO, dated 07/25/2017, pages 4-5 and noted in my Memo Book #534 pages 24-29. Disdain, malice, prejudice, subsequent especially to 07/16/2017 and informal meeting 07/18/?? check*

**7.** What reason(s) were given to you for the acts you consider discriminatory? By whom? His or Her Job Title? *None. Even whilst, I was at 07/16/2017 meeting. I then wrote other letters dated 08/07/2017 (4+5 pages), 08/14/2017 (3 pages), 08/17/2017 (4 pages), 08/28/17 (4 pages)*

**8.** Describe who was in the same or similar situation as you and how they were treated. For example, who else applied for the same job you did, who else had the same attendance record, or who else had the same performance? Provide the race, sex, age, national origin, religion, or disability of these individuals, if known, and if it relates to your claim of discrimination. For example, if your complaint alleges race discrimination, provide the race of each person; if it alleges sex discrimination, provide the sex of each person; and so on. Use additional sheets if needed.

Of the persons in the same or similar situation as you, who was treated *better* than you?

| Full Name | Race, Sex, Age, National Origin, Religion or Disability | Job Title | Description of Treatment |
|---|---|---|---|
| A. PRADDY, Akeem | Black, male, 22, American |  | A/ Almost said negative treatment. He has been reportedly terminated over a month or so ago. ● Reportedly shown said |
| B. ~~arrested hat~~ Thomas | Black, male, 24, American | CSA | B/ Reportedly NO HAT, NO NAME TAG, uniform |
| ~~arme~~ McClain | Black, female, 23, American | CSA | Lost hat; no name tags issued |

✱ 07/25/2017 letter to NYC Parks & Recreation Asst. Commissioner for EEO were ten (10) pages long.

● aggressive, vindictive, threatening & discriminatory behavior, by two(2)

2

13. Are there any witnesses to the alleged discriminatory incidents? If yes, please identify them below and tell us what they will say. (Please attach additional pages if needed to complete your response)

| Full Name | Job Title | Address & Phone Number | What do you believe this person will tell us? |
|---|---|---|---|
| A. | CSAs | Astoria Pool, Queens | Some may speak the truth |
| B. Sgt. M. Kamel | c/o FMCP Flushing Meadows. Queens | | One of the persons showing discrimination, prejudice, malice |
| | PEP Officer | as above | |

14. Have you filed a charge previously on this matter with the EEOC or another agency? ☐ Yes ☑(No)

15. If you filed a complaint with another agency, provide the name of agency and the date of filing: N/A, as yet.

16. Have you sought help about this situation from a union, an attorney, or any other source? ☑ Yes ☐ No
Provide name of organization, name of person you spoke with and date of contact. Results, if any?

1) Union- District Council 37, Mr Thomas Testa, several dates to include 08/26/2017, 08/28/2017
2) NYC Human Rights Commission, Silvie, several dates, last was 08/18/2017

Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire. If you would like to file a charge of job discrimination, you must do so either within 180 days from the day you knew about the discrimination, or within 300 days from the day you knew about the discrimination if the employer is located in a place where a state or local government agency enforces laws similar to the EEOC's laws. If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about EEOC's notifying the employer, union, or employment agency about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2.

BOX 1 ☐ I want to talk to an EEOC employee before deciding whether to file a charge. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

BOX 2 ☑ I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer, union, or employment agency that I accuse of discrimination information about the charge, including my name. I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, disability, age, genetic information, or retaliation for opposing discrimination.

_____
Signature

08/31/2017
Today's Date

PRIVACY ACT STATEMENT: This form is covered by the Privacy Act of 1974: Public Law 93-579. Authority for requesting personal data and the uses thereof are:
1) FORM NUMBER/TITLE/DATE. EEOC Intake Questionnaire (9/20/08). 2) AUTHORITY. 42 U.S.C. § 2000e-5(b), 29 U.S.C. § 211, 29 U.S.C. § 626, 42 U.S.C. 12117(a)
3) PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge. 4) ROUTINE USES. EEOC may disclose information from this form to other state, local and federal agencies as appropriate or necessary to carry out the Commission's functions, or if EEOC becomes aware of a civil or criminal law violation. EEOC may also disclose information to respondents in litigation, to congressional offices in response to inquiries from parties to the charge, to disciplinary committees investigating complaints against attorneys representing the parties to the charge, or to federal agencies inquiring about hiring or security clearance matters. 5) WHETHER DISCLOSURE IS MANDATORY OR VOLUNTARY AND EFFECT ON INDIVIDUAL FOR NOT PROVIDING INFORMATION. Providing this information is voluntary but the failure to do so may hamper the Commission's investigation of a charge. It is not mandatory that this form be used to provide the requested information.

November 2009

4



February 27, 2019

'WITHOUT PREJUDICE'

Ms. Dolanda Young
Investigator
Equal Employment Opportunity Commission
33 Whitehall Street, 5th Floor
New York, N.Y.



EQUAL EMPLOYMENT ... ... ... ... ... ON
NEW YORK DISTRICT OFFICE

MAR 05 2019

DATE RECEIVED

Dear Ms. Young:

**RE:** **ALROY D. RICHARDS vs. NEW YORK CITY PARKS and RECREATION Case #2018-846-36034 - Discrimination, Breach of Contract (Wrongful Termination), Hostile Work Environment, Retaliation, inter alia**

Good day Ms. Young. Merely checking with you, regarding outstanding matter. Just to remind you that the first incident took place sometime around July 9, 2017, or so, even though case not limited to that matter. Hence, in any event, I will need to file a (concurrent) Civil Suit, in the Federal Courts, and that the matter of Statute of Limitations, would need to be considered, in terms of date of alleged first breach.

Consequently, I am still awaiting your (institution's) Order and Determination, in the matter. In addition, I would need time, to prepare for any Article 78 eventuality, as an option. Further, in the event that there are any adverse determinations towards Complainant, I am requesting one hundred and twenty (120) days from the date of issuing of any Order and Determination, to respond to such. I suspect that in the event of Civil Court actions, that it would have been in the Federal Courts (500 Pearl Street, New York, NY), and not the Supreme Civil Court, based on Protected Class breach(es), as reported by me.

Statute of Limitations for my potential Civil Actions, against NYC Parks and Recreation (Respondent/Defendant), is on, or near June 30, 2019, or so, based on my own research. I would need time to prepare my PETITION, and NOTICE of PETITION, long before, based on the outcome, plus ORDER To SHOW CAUSE, SUBPOENA (DUCES TECUM), inter alia.

Attached is an extra copy of this material letter, for stamp, and signature, as an acknowledgement, that you are in receipt of this crucial letter, from me, simply inquiring about potential time constraints. Contrastingly, I am aware that the said file (complaint) is very well active. However, I would need to get in touch with my own Counsel, and to provide a timely update, in order for matter to be taken over, at the appropriate time.

Thanks for your usual prompt response.

1



May 4, 2018



Ms. Dolanda Young
Investigator
Equal Employment Opportunity Commission
New York District
33 Whitehall Street
New York, N Y 10004

Dear Ms. Young:

**RE:    ALROY D. RICHARDS – CLAIM/FILE #846-2017-36034**

Reference is made to the subject. Please see my constant requests to the New York City Parks and Recreation, for request for a copy of my **First Memo Book**, which covers **June 14, 2017 – July 13, 2017**. <u>The latter has not been received to date</u>, despite my many letters, requesting the document (copies attached, as well as their responses). In addition, I have enclosed documentation, with respect to my prospective employment, under the **NYC Fellowship Program**, of **2017** ($4,400.00 per month, for one year, commencing August 2017). However, I was never hired. My efforts were seemingly thwarted, based on the notations made on my **Department of Citywide Administrative Services profile,** of **"Employee Facing Registry Contents"**. I wrote about the notations on the department of Citywide Administrative Services website, but received no answers. Copy documents were also submitted to you (email they sent me, giving a file number, into my claims)<u>, and notations, and "blockage", became apparent, as at July 10, 2017</u>, or so, and thereafter.

Further, I make comparison in making other requests to them, for my accessing the D.C.A.S. NYCAPS (centralized computerized network, known as **Employee Self Serve** or ESS), in early 2018 (this year), relative to my W2 Forms, and filing of tax returns . Several responses were received, and my access for purpose of printing my W2 Forms, were a reality, subsequent to their investigations. Copies of emails are attached. My question – **Why wasn't the same priority given, with respect to my investigations, and formal complaints as to notations made on D.C.A.S. central computer systems, and their "restricting my access, in applying for other** (permanent, better paying) positions) In essence, there were no equal opportunity for me, as I was being unfairly discriminated against. My belief is that I was "permanently barred" from applying to any New York City civil service positions, and advancement for any promotions were also being seriously halted, by NYC Parks and Recreation, via their actions, or lack thereof.

Submitted for your attention are Human Resources documents, which I constantly requested, and finally received, but no copy of the First Memo Book. Questions loom (for the NYC Parks and Recreation). **Why cant that First Memo Book be found, despite clear indications, that it was signed for, by Supervision/Management?** Now, the source of my problems began during



U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
STATE OF NEW YORK
NEW YORK DISTRICT
                                       **File #846-2017-36034**

**ALROY RICHARDS**
                                       **VERIFIED COUNTER ANSWER**
                                  Complainant

        -Against-

**NEW YORK CITY PARKS and RECREATION**
                                        Respondents
-------------------------------------------------------------------X

**PLEASE TAKE NOTICE**, that I, **ALROY RICHARDS**, herein called the **"Complainant"**, is in receipt of a five(5) page Verified Answer, dated March 30, 2019, along with Attachments labelled A - J, from Mr. ZACAHARY W. CARTER, Attorney-at-Law (Corporation Counsel – City of New York), Corporation Counsel herein representing the **"Respondents"**, which is the **NEW YORK CITY PARKS and RECREATION**. Kindly be advised, that the responses, and reports submitted, by alleged employees, and any patron, on behalf of the Respondents, are full of folly, were done in vexation, were concocted, are untrue, remain unverified, quite malicious, rather mischievous, and are filled with frivolities, and innuendos. Further, the Respondents are using **pre-texts**, and **acted with premeditation, hear say**, acted out of **disdain**, breached **Administrative Process**, and **Due Process, Natural Justice**, inter alia. They failed to have acted on unsolicited Daily Log Book Reports (see **Memo Books** – when called for in whole parts), as documented by the Complainant, did **no follow up, nor did independent investigations**, did not seek further interviews, from Complainant, **neither** made **recommendations, never sought remedies**, based on **merit**, mutual respect, and **fairness, nor brought any alleged adverse matters before a Hearing Officer.**

It was only subsequent to the Complainant's termination on August 26, 2017 (further evidences available) that any investigations were "attempted", despite Complainant's early Memo Book documentations, meetings, and numerous letters, initiated by the Complainant, under signature, and "oath". Additionally, the Complainant now state, but which are not limited to the following, based on documentation already submitted, by the Complainant, Respondents' allegation lacking in voracity, and potentially further information to be uncovered during the **Discovery Process**, whether through **Mediation, and Reconciliation**, or even via **further (Federal) Processes**:

- That the Complainant was employed by the NYC Parks and Recreation, on June 14, 2017, where training had commenced in Bronx, New York, Training Academy. These training, were provided under/with "oath", loyalty, commitment, discipline, integrity, etc.
- That the Complainant was employed in the capacity of **City Seasonal Aide (CSA)**, in the Urban Park Rangers Department.
- That the Complainant kept a high standard, in attire, conduct, and professionalism, at all times, in comparison to, and in contravention of some of the authors of (fictitious)



documented, by the Complainant. <u>**Sgt. Mohammed Kamel, arrived and checked Memo Book, at 1645 hrs, page 30, and stated "no violations" (quote), after seeing the said main report, and doing investigations**</u>, on that day (07/02/2017).

## <u>Other Windmuller Matters (Of Note)</u>

<u>Friday June 30, 2017</u>, at <u>1840 hrs</u>, noted in Memo Book, as <u>pages 12–18</u> (copy attached). Known as <u>EXHIBIT B</u>. **CRITICAL**. A case of an <u>***alleged child whom was reportedly swimming, got into difficulties, and whom allegedly almost drowned***</u>. A woman was heard yelling in Spanish, as her (female) child, whom is about 6 years old, or so, was in the water, swimming with other patrons (children). She (child) had to be saved, I believed, by a Lifeguard. This woman was frantic, and almost everyone panicked, including the child. Apparently, the child was "on her own". It is a lengthy matter. In short, the child, whom seemingly suffered no injuries, had to be removed from the swimming pool. Swimming was ceased, by the Lifeguards, and check offs, and checks (not payment though) made. The FDNY arrived, so were the police, etc. The entire evening had to be postponed; usually ends at 7:00 pm. ***<u>Complainant told Lifeguards, and others in charge, that the swimming pool MUST be padlocked, when not in use, and closer monitoring done. This was done, thereafter, before, and after every swim session. Important</u>***. Lifeguards' numbers, and presence, also subsequently increased, afterwards, at every swim session, and even when swimming was not in process. Point to note also, is that <u>at intervals, Complainant ALWAYS detail number of patrons at swim, and the time, and other developments, in Memo Book provided</u>.

On Tuesday <u>July 4, 2017</u>, just to show that documentation of incidences, and observances, are constant, as well as consistent, with facts, and inviting further investigations, complain introduce another scenario. One such, took place at <u>1000 hrs</u>, <u>page 28</u>, known as <u>EXHIBIT C(i)</u>, where teenage skateboarders were seen frolicking, on their skate boards, at high speeds, on the tracks (see area), without exercising caution. There were toddlers in the said vicinity, ages 18 months, or so, to 3 or 5 years old, even on said tracks. Most of these toddlers were unattended to, and without appropriate supervision. Hence, Complainant respectfully went over to the skateboarders, and pointed out the potential dangers, posed by them, and their activities, to these toddlers, They complied, and went elsewhere, far away, where the toddlers were no longer in danger. At that point, a few guardians saw what was happening, and took charge of the toddlers, for safety.

Another matter, is on <u>pages 29 - 30 (copy attached)</u>, on said <u>Tuesday 07/04/2017</u>, at <u>1300 hrs</u>. Known as <u>EXHIBIT C(ii)</u>. Based on posted signs, and explanations, at all times to patrons, along with verbal instructions from the ever present Lifeguards, the <u>swimming pool here has a capacity of thirty two (32) swimmers, at any one time</u>. An adult female wished for her daughter to swim, and so she told her daughter to "cut into" the line, in order to make the 32 (capacity). Patrons did not agree with the lady's and the child's actions, so Complainant brought it to the attention of the Lifeguards on duty. The Lifeguards then told the lady not to cause a scene. Swim session of 32 continued, and the next new set of swimmers entered swimming pool, at



complained, to the Complainant (me), that at present, NYC Parks and Recreation staff, were also smoking, in the said vicinity, around a column, and staff smokers also seated on concrete benches, nearby. Complainant went and looked for himself. **Supervisors were seen smoking too**. Inconsistencies were respectfully pointed out, to these staff, by the Complainant. **Included in these staff, was a male Supervisor**, by the name of **Tyson Holley, and another female Supervisor**. A few staff seemed upset, but Complainant couldn't be telling patrons to desist from smoking, and not also indicate to staff - to expound later on habitual smoking by some of said authors of reports, against Complainant, including Mr. Tyson Holley, **PEP Officer** Ms. **Ross**.

Complainant also wish to bring to the fore, **prejudicial actions**, by the **Department of Citywide Administrative Services** (DCAS), as Complainant applied for higher level positions, on the City's website. Initially, the Complainant had applied for the position of **NYC Intern**(ship), **NYC Service Fellowship Program, 2017**. This was done by the Complainant in May 2017, or so. All information were already sent in by the Complainant, inclusive of completed Reference information, submitted by my References, as per requests. Complainant was awaiting final confirmation, and admittance into that one(1) year full time job, at full pay, being **$50,000.00 per annum**. This can be verified otherwise. It is the belief of the Complainant, that commencing with this July 2, 2017 matter, the Complainant was not hired for the NYC Fellowship Program (has requisite qualification, training, skills, and experiences). In addition, the Complainant had applied for may be close to fifty(50) or so positions, with the City, before, during employment with the City, and just after being terminated, via both Competitive, as well as Non-Competitive positions - that were open, and pending. No positive answers arose. "Suspicions" loomed.

Kindly see a series of emails, in this regard, which will be referred to as **EXHIBIT G (i)-(vii)** which are **email threads**, dated: 07/19/2017 (denying me entry i.e. employment for NYC Fellowship Program), 08/04/2017 (as a result of being "blocked", by NYCAPS), 07/17/2017, 05/12/2017 (NYC Fellowship acknowledgement of my application, etc), 06/30/2017 (acknowledgement follow up, by that entity) 06/19/2017 (NYC Fellowship's confirmation of receipt of completed forms, from References), 05/25/2017 (previous follow up, between Complainant, and officials of NYC Fellowship). ***Nexus exist between this prospective employment with NYC Fellowship Program (which was later denied), and this July 2, 2017 matter***, as per the unfounded, biased, and prejudicial reports, which were all without my knowledge, consent, and which Complainant was not allowed to challenge, despite facts, which were reported by the Complainant.

## MEMO BOOK #2

This Book covered *July 14, 2017, to July 27, 2017*. Now, unto <u>July 16, 2017</u> situation, at <u>1305 hrs</u>, which, was again documented, by Complainant, as per **pages 9 - 11**, copy now attached, as **EXHIBIT H(i)**. An adult male patron was identified by the Complainant, on the pool deck, using a cellphone. <u>Cellphones are not allowed in the pool area</u>, neither on the pool deck. Hence, Complainant approached the patron and explained to him. He said that he needed to retrieve his daughter, as she was swimming; he was nearer to the pool stands. See Astoria Pool — extremely large. The man left the area, and went looking for his daughter. Continued observation of him was made, as he traversed around the pool deck, and even where

**23.**



responsibility is given to Sgt. Soyer, both as a Peace Officer, and Agent of the City of New York, to make every effort to curb, and immediately correct such actions, and comments, even to offer an apology, or to ask CSA S. McClain to apologize. This never came, further indignifying the Complainant, subjecting Complainant to ridicule, and scorn, as the actions of a few, to follow, inclusive of Supervisors, and or Flushing Command level (Queens), are obvious, and did nothing to restore order, human dignity, equality of employment, and of opportunities. Complainant will later mention **case of Mr. AKEEM PRADDY, (former?) CSA**, whom was targeted, almost attacked, harassed, and verbally abused, on a regular basis, by said two(2) NYC Parks and Recreation Supervisors, reportedly moreso Sgt. C. Soyer. Was he terminated? What is his race?

**NOTE**: Interestingly, it is shown that <u>at all times, prior to, and on July 16, 2017, all of Sgt C. Soyer's "inspection" of Complainant, at muster, have always been OKAY, as noted by his signature, in Complainant's assigned MEMO BOOK, at the end of each muster</u>.

Now, it is important that the Memo Books be procured, for this important development (material situation). *Why only two reports were written, the other supposedly from CSA Ms. Michelle Wright* (Respondents' EXHIBIT D)? Complainant wish to point out that these are the two CSAs are said to be "friends" of Sgt. C. Soyer, and that he would regularly buy food for (from his pocket), and give them ride in his car, and that he is seen 90.0% of the times, talking to these two individuals. Those in the group (of CSAs) are aware. *In none of the situations were the Complainant ever "acting angry, or boisterous". It is a way of "punishing" Complainant, for complaints made*. Where are the reports (apart from those from personnel with "conflicting interests" -- with untruths)? It is a way of trying to discredit the Complainant, despite the glaring facts, and circumstances. *Complainant will go on further to show that it was the two(2) Supervisors, Sgts C. Soyer, and Mohammed Kamel, whom directed intended violence at the Complainant*. Complainant will unreservedly say, that *these are discriminatory and racist approaches, to the Complainant. Further evidences shall be reserved, for now*.

<u>July 21, 2017</u>, at <u>1545 hrs</u>, <u>page 31</u> – <u>copy attached</u>. Complainant's report of *lost/stolen NYC Parks and Recreation hat* (assigned to him), shown as **EXHIBIT I (ii)**. Took place during muster, by the canopy area, at the semi-circular concrete counter area. Consequent to the muster, the hat was not located. Staff usually remove hat after muster, due to the heat conditions. Hence, Complainant asked that the related CCTV images be viewed, after making entry in Memo Book, and informing Supervisors, and staff. Supervisors (moreso Mr. Tyson Holley) in charge of the location Office reported that the CCTV images allegedly could not have identified whom removed the NYC Parks and Recreation hat. Complainant did not believe, but said nothing more, as the hat disappeared within minutes, of being placed on the counter area. Interestingly, <u>most CSAs are without hats, almost for the most of the first month or so, until a few received theirs; but, some were still without</u>. Sgts., and others, also do not wear uniform hats – FACT.



**Item #13**, of **Counsel's Verified Answer**

**July 23, 2017**, at **1100 hrs (still part of Exhibit I)**, during muster – Inspection, actions of which were purely **"calculated"**, **"hateful"**, and **malicious**, **which Complainant primarily had predicted, as per his July 25, 2017 ten(10) page latter to NYC Parks and Recreation's EEOC (Assistant Commissioner)**. Discovery will reveal, as well as Deputy Inspector Benny McCant's visit, to inspect team, and Captain Andrew Greenfield's (Commanding Officer) visits too. Kindly see records (Complainant's letters, previous to, and during, plus Memo Book, on visit, etc). More will be told. Sgt C. Soyer reportedly failed the Complainant, out of malice. Major problems commenced here. Complainant was being "written up" for **lack of hat** (reported, and had to be replaced), **No name tag** (none issued to Complainant, neither were any information provided, as to where this could have been procured). "No pen holder" was also cited. **Seasoned personnel present, were without these items, then, and for most of the other inspections, including for hat, name tag, etc.** *Wonder what the individual Memo Books, and records will show?* The connections between Complainant's formal complaints, and documentation (then "coincidental" disappearance of his City assigned hat) are "all too obvious" i.e. contrary to Title Vii of Civil Rights Act, 1964. Complainant was now being targeted - **RETALIATIONS.** Defense /Respondents' Counsel's denoted as EXHIBIT F.

**Pages 38 - 46** follow, dates ranging from **July 23, 2017 - July 29, 2017 (Sunday to Saturday)**, known as **EXHIBIT J**, and denotes several infractions, *violent and threatening behavior towards the Complainant*, by Sgt. C. Soyer, amongst other atrocities, against Complainant, deemed serious, and uncorrected.  Several subject areas (nature of matter), will be briefly outlined, Complainant providing date of these incidences:

**Sunday July 23, 2017**, at **1100 hrs**, **pages 38 - 40 (part EXHIBIT J)**. Please note the sequence of matters (already) leading up to today's date, commencing, and increasing subsequent negative actions, towards the Complainant. One such today, is *alleged failure of Complainant, at inspection, during muster: no name tag, no hat, no pen holder.* Again, the Complainant already commented n inequitable treatment, and unequal proceedings, where attire at muster is concerned, amongst other things, that are equally important. CSAs at this location, that have worked with NYC Parks and Recreation for years, are without these items; yet, no harassment, or penalties are meted out. Complainant is new, and reported his hat stolen, just a few days prior. On **page 39** (Memo Book #2), Complainant again asked Sgt. C. Soyer to conduct effective investigations into all matters, and *to employ the use of C.C.T.V. images, to assist, where applicable, at all times*. (Complainant) Reserving further evidences.

*On **page 40**, Complainant stated in his Memo Book, that Sgt. C. Soyer stated that the "**Complainant is using too many Memo Books**", and that "**what I (Complainant) is writing about, is a bag of crap, and that no one cares to read what you (I, Complainant) are writing**".* **Sgt. C. Soyer is on the records.** This was documented in subsequent letters to: NYC Parks and Recreation's E.E.O.C., Human Resources, and to Mr. Benny McCants, Deputy Inspector.

23.

Sgt. In order to avoid being possibly attacked by Sgt. C. Soyer (appear to be in his nature, especially based on "certain grounds", which Complainant believe, would be tantamount to breaches of Title VII, of Civil Rights Act, 1964), the Complainant told all present, that he (Complainant) will be placing the Memo Book, a few feet away. This is between the Sgt., and himself, on the concrete counter, one(1) foot from Sgt. C. Soyer, and two(2) feet away from Complainant, in full view of others. Safety reasons.

Instead of perusing the Memo Book (and execute City's job without, discrimination), Sgt. C. **Soyer began shouting at the Complainant, and began to set precedence for an attack mode.** Complainant is wondering if it is because he is from another country (Third World jurisdiction), or because he may be from a minority grouping, and is (obviously) new to the United States! The Supervisor in question, **again boisterously demanded that the Complainant exit the compound** (Complainant reserving certain evidences), apparently without any legal, accountable or nondiscriminatory reasons. The Complainant explained himself to Sgt. C. Soyer that he needed to be told what the protocol is, in such a circumstance, but never got an answer. _**Complainant also referred to case of CSA Akeem Praddy, whom was reportedly told by Sgts. C. Soyer, and M. Kamel, to leave the compound, that CSA A. Praddy complied, but now whom is allegedly being "charged" for AWOL, and dereliction of duty. Sgt. C. Soyer did not answer - dismissible offenses. Was CSA A. Praddy dismissed? Why?**_

Sgt C. Soyer then sent for the two(2) Pool Managers, Tom, and Mr. Broffy, whom arrived at the area. Both Complainant, and Sgt. C. Soyer explained themselves to the two Pool Managers, now present. **The 2 Pool Managers listened objectively, and attentively, and asked - "where were they summoned"? They intimated that this had to take a certain route, and asking an employee to exit facility, without appropriate reasons, would be grounds for severe breaches, or even lawsuit(s).** This transpiration was documented in said Memo Book (see pages). At _**1621 hrs**_ (said 07/23/2017), Sgt. C. Soyer then asked for Complainant's Memo Book, which was amicably handed to him, and where Sgt. C. Soyer now wrote - that Complainant needed to have a hat, and name tag (same matters, which the "system" need to assist with, as Complainant cant just embark on his own (directives needed). All Supervisors, Command level (Flushing Meadows, Queens), and other staff, are quite cognizant of this.

At <u>1625 hrs</u> (still 07/23/2017), <u>pages 45 - 46</u> (still **part of Exhibit J**), another meeting was called with the Complainant. **_Now, despite no name tags, absent employees, employees being late, and absent from muster, no Memo Book entries, to name a few, no other employee was "being harassed", except the Complainant. No other employee is being verbally abused, threatened with termination, being cursed out, in front of staff, and patrons, is being bullied, and whom is being shown violent, and boisterous behavior - except may be for Mr. Akeem Praddy, CSA._** The meeting involved <u>**Sgts. Odelia Lee**</u>, C. Soyer, and M. Kamel. Complainant attended this meeting, between himself, and the 3 Sgts. HE (Complainant) then further explained himself and told of the problems, the attack, the malice, the prejudice, being shown to him. Complainant was adamant in pointing out the physically imposing, threatening, and violent tendencies, being shown to him, for no (obvious) reasons. As a result, <u>**Complainant told the Sgts. that he will again be filing formal (written) complaints, on the issues.**</u>



**MEMO BOOK #3**

This covered July 30, 2017, through to August 24, 2017, and comprises fifty (50) pages.

<u>**Sunday July 30, 2017**</u>, at <u>1030 hrs</u>, still at Astoria Pool, during muster. This is from <u>**pages 1 - 3,**</u> **and shall be part of <u>EXHIBIT L</u>** . Let us call this <u>**Exhibit L(i)**</u>**.** A copy already supplied to E.E.O.C., by both Complainant, and Respondent. Sgt. C. Soyer mentioned to the group, that a <u>**Performance Appraisal**</u> exercise will be embarked on, later in the day, for the CSAs. He also (unfortunately) commented that, **"the Performance Appraisal is to see whom stays at NYC Parks and Recreation, whom leaves, and whom will return next phase, and whom doesnt return"**. On hearing this, Complainant intimated to the Sgt. that this may not be the right approach (his comments), and that the process should be used as a positive tool, and so as not to encumber, or prejudice any said process, or any individual. The Complainant then mentioned to Sgt. C. Soyer that he (Complainant) is new, and that documentation (to employees) should be provided, as to how to proceed, inclusive of a sample of the form to be used. In so doing, the Complainant told Sgt. C. Soyer that all persons would have been properly apprised, and prepared. Noted in Memo Book A sample of form provided to Complainant, by Sgt. O. Lee, a day or so later, as per request from the Complainant; so decent, and so noted.

<u>**Page 3 - 4**</u> (still on Memo Book #3), on July 30, 2017, at <u>**1600 hr**</u>s, during **evening muster**. **<u>EXHIBIT L(ii)</u>.Complainant indicated that he (Complainant) is always early for work, always on time for  muster, doesnt take rest periods, among other disciplines, and that all persons need to be on time, unless excused, as no actions are being taken. Sgt C. Soyer is always usually late, something he also admitted to here, and lack of actions, where other CSAs are concerned**. However, why not? Sgt. C. Soyer became quite upset, and boisterous, and commented, that **"I (meaning he) is a Sgt. and can do anything, and that I you (Complainant) cant tell a Sgt. what to do"**. On these accords, the Complainant requested a meeting involving Sgts. O. Lee, and C. Soyer, to ensure clarity, fairness, equity, and transparency. Meeting was granted, and held at approximately 1607 hrs, or so, where discussions were embarked on. Complainant continued his duties.

<u>**August 2, 2017**</u>, <u>**pages 6 - 8**</u>, known as <u>**EXHIBIT M**</u>. near **1110 hrs**, **Captain Andrew Greenfield, arrived** at the Astoria Pool facility, and asked that Complainant meet with him. Complainant complied. Capt. A. Greenfield asked the Complainant for his Memo Book (#2), and Complainant handed the instrument to Capt. A. Greenfield. Later, Captain Greenfield made a notation that he had inspected this Memo Book (#2). At <u>1127 hrs</u>, Sgt. O. Lee approached me, and told Complainant that some NYC Parks and Recreation officials are present, at the facility, to see Complainant, and she asked that she be followed. Complainant was brought to the Pool Managers' Office, where he saw Capt. Greenfield, whom introduced him to a **Mr. <u>Benny McCants</u>**, **Deputy Inspector**, NYC Parks and Recreation, along with Capt. Bayron. Only the D.I., the two Captains, and the Complainant, were left in the room. A discussion ensued, which lasted well over 45 minutes, or so. The Complainant explained himself, and was asked questions by D.I. McCants, regarding the developments, to which the Complainant provided truthful answers, and gave suggestions. Thereafter, the meeting ended, with possibility of



Mr. Tyson Holley left, and Complainant continued his duties. Minutes later, both Sgts. C. Soyer, and M. Kamel, met with the Complainant in the mens' locker room, where Complainant explained what took place, and referred to witnesses, and CCTV images. Complainant also siad he felt embarrassed, and indignified, in front of patrons, and staff, by Mr. Tyson Holley's outburst, and violent tendencies, as noted in Memo Book. *Both Sgts. then told me to not pay attention to Mr. Tyson Holley, as they are my direct Supervisors, that I did nothing wrong, and should continue the duties, as they will make such pronouncements to Mr. Tyson Holley, whom was "allegedly out of place, and not following protocol"*. Sgt. M. Kamel said he will speak to Capt. A. Greenfield, about Mr. Tyson Holley's behavior, and suggested that Complainant do the same. Please note, that despite all incidences reported (even to same Mr. Tyson Holley, by higher staff), as per training, Statutes, and rules, no investigations were seemingly executed, neither were any C.C.T.V. images viewed, and documentation, reporting, or recommendations made. Serious matters have taken place at the facility, as reported by Complainant, but no actions.

## Item #15, as per Counsel's Verified Answer

Reference is made to Respondents' enclosure, of an alleged report from a reported NYC Parks and Recreation employee, by the name of **Ashely Bernal**. Isnt this one of he persons that regularly smoke on the premises, and to which Complainant spoke to prior, about such habits, which is against City's policy? Just a question. As with the other ("authored") reports, it is the first time that Complainant is hearing about this allegations against hi. Fictitious of course. Indeed. How convenient (after all facts which were presented by the Complainant - without any solicitation)? These are the same Supervisors that get into unnecessary arguments with patrons, curse patrons, make disparaging remarks to patrons, dislike staff that stand up for Guiding Principles, and give respect to all, and whom exercises professionalism - at all times.  Untruth about Complainant always using his cellphone, is a cruel way of "trying to get back at the Complainant". Definitely not true. Complainant is person always cautioning staff about use of cellphones, on pool deck, and even to some staff, whom wantonly uses their cellphone, as they please.

Now, the Complainant is the person whom, at all times, ensured safety of children, with or without adults being present, and report every situation observed, plus record in Memo Book provided, suggesting immediate follow ups, or emergency actions. safety is paramount, and must always be observed, to avert tragedy. All will know, that the Complainant is the first to arrive at work, does not take break (or hangs around, ensuring all is well, looking out for breaches, and the safety of ALL persons. It is what I do, or did, throughtout my life. Complainant is always the last person to get dressed, and HAVE NEVER exited the facility, unless all patrons are out the (male)locker room, off the pool deck (last to leave there too), and to exit the common areas. This is widely known, where the Complainant is concerned. Check the C.C.T.V. systems, check with the Lifeguards, check with the other staff, and the unbiased Supervisors (those whom have " no motives") - even Sgts. C. Soyer and M. Kamel, can confirm these matters, not even to mention Sgt. O. Lee. Outright attempts to try and discredit the

usually conducted, and say for a new employee? Complainant now attach an email thread, from Local 983 (Union), namely Mr. **Thomas Testa**, addressed to NYC Parks and Recreation Human Resource's **K.C. Reilly**, dated Monday **August 28, 2017**, and response to Mr. Testa, dated **September 5, 2017**. What a time line? Shall be known as **EXHIBIT O(i)**. Attached also, is an email thread, between Complainant, and Ms. **Iyana Titus**, Assistant Commissioner, NYC Parks and Recreation's E.E.O.  Latter dated **August 17 - August 18, 2017**, and shall be called **EXHIBIT O(ii)**.

Important in these developments, is the reported **name tag**. Subsequent to receipt of information, Complainant went and bought a name tag in College Point, Queens, on **August 1, 2017**. A copy of the receipt is attached, as **EXHIBIT P**. Actual instrument is available, for inspection (Complainant retained said name tag), and the Complainant began to wear his name tag, on August 2, 2017. Finally. Referencing the actual Performance Appraisal. The appraiser had not furnished any alleged verifiable (with respect to the truth - not concocted) documentation, ton substantiate any claims. Innuendos and frivolities were in order, in a bid to make the complaining party (Complainant) look bad, which, it seems, was the only viable solution to the debacle, created by in particular, the two(2) Supervisors referenced. Isnt this much limitation? *On the Performance Appraisal, Sgt. C. Soyer (rightfully) has not signed. May be he refused to do so, based on the scenario that facts were not being represented, by NYC Parks and Recreation; his conscience? Also, Sgt. M. Kamel (being constantly complained about, by the Complainant), whom signed as witness, on the instrument, should not have been permitted to do so, given the situation.* It amounts to Conflicts of Interests. Interestingly...what "attitudes" and "rude behavior" were being alluded to? It is rather damaging, and injurious, to Complainant's character, integrity, career, and future, and should not have been allowed to permeate.

### Item #17, of Counsel's Verified Answer

The Complainant's **EXHIBIT Q**, is an email sent to the Complainant, dated October 5, 2017, from the NYC Parks and Recreation's **Ardijana Ivezie**, Investigator. Kindly note the timing. Wasnt this a bit too late, given all the scenarios? Were "damages" already done?

The City MUST prove incompetency, or misconduct, on the part of the employee, after hearing the charges, investigating, and allowing a hearing to be held, with evidences, and cross-examinations being permitted. This is part of the principle of Administrative Processes, as stipulated in the Constitution of the United States. **An employee is also entitled to Representation, and the provision, or summoning of witnesses, cross-examination, in a duly constituted forum, on his/her accord, in virtually all circumstances**. These are just some of the principles, along with **right to see evidences**, and for **charges to be detailed, in writing**. It would have been against *Civil Service Laws*, for the rights of the City (or Employer), to outweigh that of the Complainant (Employee). At-will Employment does not hold, given the circumstances, and the City must remain objective, and practical, in this development. A multitude of wrongs were done to the Complainant, via some agents of the City (employer),

On **page 20**, note the comments that were made to Complainant, that despite the incident earlier, that *Complainant "must not take the job that seriously, and to take it easy"*. This was in presence of Sgt. C. Soyer, and a another (unidentified) senior PEP Officer, visiting location, whom was apprised of the situation. Sgt. C. Soyer later told Complainant (minutes after) to **look out for all the suspects** (report on their activities, and positioning), as they all fled the area (facility). Surprisingly, the bag that said group of men put away in the locker, was not amicably, and appropriately searched – with due process, witnesses, and by personnel, inclusive of the ever present police teams, at the facility. It was later said that ***an illegal gun was reportedly recovered***, from the male locker area, in a locked locker, based on a reported observation from fellow male CSA (withholding name for this witness, for security purposes). Massive police teams arrived, and the pool was shut down, to patrons, and employees, as the search was executed, leading to the alleged discovery of the reported illegal gun.

3.**EXHIBITS S(i) – S(iv)**, having to do with **uniform inspections**, that were **said to be Okay (still no hat)**. Dates are **August 7, 2017** (page 24), **August 10, 2017** (page 25), and **August 13, 2017** (page 33), and **August 19, 2017** (page 41) respectively, all by same Sgt. C Soyer, excepting in one instant. These are just samples, in order to show the "controversy" and inconsistencies, and which were highlighted, by Complainant, on the said Exhibit, even though complainant was dressed, or groomed, practically the same way, excepting without hat, in same circumstances. Note what the Complainant did, as a comparison, at **1051 hrs muster** (page 33), on Sunday August 13, 2017. Important, as it shows hypocrisy, inconsistency, inequality, etc. How contrary?

4.Complainant will also now present, for assessment, and for verification, the reason why, on Thursday August 24, 2017, a vast majority of CSA employees, whom were present at work earlier, were later seen to be simultaneously, or conspicuously missing for hours. Date in question is Thursday **August 24, 2017**. **Pages are 49 – 50**, attached by Complainant, as **EXHIBIT T.** (plus an extra sheet), of Memo Book #3. **PRESENT ONLY**, throughout the entire facility (patrons present, and using facility), were ONLY the following personnel: Sgt C. Soyer, CSA Contreras, CSAs S. McClain and M. Wright. WHY? **WHERE WERE THE OTHER STAFF (apart from Lifeguards, and a few other pool staff) Was there a meeting? If so, where are the minutes, or transcripts? Was it about Complainant's complaints? Were personnel being interviewed? Were they being interviewed together? Was it part of the "official" investigations? Where did they go? Were they together? Are they witnesses? Whom did they went to see?  Is the process without taint? Were there breaches? Were proper protocols followed, so as to protect the rights of all individuals? Were Persons "threatened" to give false or misleading reports, to suit a purpose?**

- **The Complainant wish to know about …4, as per above.** Apparently missing were CSAs A. Thomas, Young, Taite and McBean, and others. Where were they? Why shrouded in secrecy? Complainant heard that CSAs Thomas and Young, in particular, were reportedly threatened with termination, if they did not distort, mislead, made to tell untruths, or "changed" reports. Allegedly. Were there others? Show the Complainant.

termination was "being done by him".Capt. Bayron told Complainant that he will sign, or initial the termination document, which he did. A copy of the material document was given to the Complainant, later in the meeting - **standing in the canopy area, in presence of all, and sundry (patrons, staff), seeing, and listening. <u>NO PRIVACY, nor RIGHT</u>S**, for Complainant. The Complainant then handed over all equipment, uniforms, and paraphernalia, belonging to the NYC Parks and Recreation, to Sgt. O. Lee, whom documented on paper, with date, and signature, the items being turned over, by the Complainant. Copies of these documents were retained by Complainant, copies of which were already submitted to the E.E.O.C., by the Complainant. Termination papers were officially given to Complainant, by Sgt. O. Lee, at **1319** hrs. Capt. Bayron then signed last page of Memo Book #571 (final, and present Memo Book). Complainant then left the premises.

## General <u>SUMMATION</u>, and <u>RELIEF SOUGHT</u>

a.<u>Respondents have failed to show that no Probable Cause exist</u>, for Complainant's claims, and that Complainant's claims  do have merit. Matters at hand are further evidenced by Complainant's EXHIBITS A - U, herein attached, and that matters are not limited to only these.

b.<u>Complainant is asking this honorable oversight body, the E.E.O.C., to dismiss Respondents'</u> (and some of its agents') **unfounded, vicious, malicious, unverifiable,** and rather **vindictive allegations**.  Also, reports, as presented by "authors" (employees, and a few patrons), were filled with motives, bruised egos, where Complainant is concerned, due to Complainant's adherence to established procedures, where applicable.

c.Actions of Respondents' (and some of its agents) were <u>**egregious**</u>, <u>**capricious**</u>, and <u>**arbitrary**</u>. No privacy, nor rights were established for the Complainant, throughout, which amounted to so many violations, and negatives, for the Complainant.

d. Complainant is adhering to notions of violations of <u>**Title Vii, of Civil Rights Act**</u>, of <u>**1964**</u>, plus the <u>**Age in Discrimination Act**</u>, of <u>**1975**</u>. He (Complainant) is also claiming <u>***Breach of Contract***</u> ("**Wrongful Termination**"), (Non-Sexual) <u>**Harassment**</u>, <u>**Emotional Distress**</u>, <u>**Negligence**</u>, <u>**Hostile Work Environment**</u>, and <u>**Retaliation**</u>. On Negligence, Respondents accepted reports, and so-called "complaints" against Complainant, as being true and correct, without verification, Complainant's knowledge, or input. Neither did they afforded the Complainant the opportunity to challenge, or dispute matters, in appropriate setting, or via communication responses, before "damages" were done, towards the Complainant.

e.No reports were actually checked, or follow up done, despite Complainant's extensive communications, and records, by multiple means, excepting for attempts by internal E.E.O.'s Ms **Iyana Titus**, Assistant Commissioner, and Deputy Inspector, Mr. **Benny McCants**. Only those reports that were reported "submitted against" the Complainant (falsely), under <u>**pretexts**</u>, <u>**prejudice**</u>, or predisposed,  were given credence, over those submitted by the Complainant.



by the Respondents, or some of its agents, despite Complainants' consistencies, in various forms of complaints.

p. Prior to any terminations, agents, or the Respondents, must consider all circumstances, **execute responsible actions**, and intentions. These actions **must not wantonly supercede Complainant's character**, **credibility**, **integrity**, **career**, **future**. Tarnishing Complainant seemed to have been the sole priority; nothing else mattered. **Restorative Justice** should have been engaged.

## RESPONDENTS CAUSED:

* **adverse statements**, contrary to facts.
* through (some of) its agents, referred and **directed insolence** at the Complainant without Due Process, or **Administrative Process.**
* **rendered Judgement**, in haste, without any considerations.
* Respondents (and some of its agents) were **Selective**, **biased**, supported untruths, towards the Complainant.
* damaging and **reprehensible damages**, to Complainant's reputation, and upward mobility.
* **fear** was being **driven** into the Complainant.
* behavior of Respondents (and some of its agents) are **outrageous**, and **reckless**.
* **willful violations** by Respondents (and some of its agents), **impacting statutory duties**, of the Complainant.
* Complainant handed **"damnation"**, causing Complainant to face **chagrin**.

## RESPONDENTS ALSO:

- **had knowledge** of the developments.
- **knew the illicit conducts** could be, or **would be damaging**, to the Complainant.
- **did not take adequate steps**, to remedy any potential for negative actions, towards the Complainant.
- in a way (except where not applicable), **no effective responses effectuated**, given extent of Complainant's reporting (credit will be given, by Complainant, for some Officials, that sought to
  do due diligence, such as E.E.O. and Deputy Inspection).
- **cannot ignore Vicarious Liability** or **Vicarious Responsibility**.
- **should not have inserted the same two(2) Sgts. being complained about, as witnesses**, continuously, without regard for prevailing situation, **inclusive of meetings**, **signing** as witnesses, in the then, ongoing process. Critical point, in the scenario.
- **should desist from any "black listing"** (no pun intended) of **the Complainant**, permitting him to apply for positions with the City of New York, via **Department of Citywide Administrative Services** or **DCAS**. This involve removing of unfairly negative items, impacting Complainant.

**23.**

**WHEREFORE**, your deponent prays that the Equal Employment Opportunity Commission (E.E.O.C.) will review the Complainant's requests, for the matter to be upheld, in the Complainant's favor, being predicated on matters of facts, inferences, verifiable proof, matter being reported long before, and is not as a result of any subsequent (adverse actions), with any intend to distort, or willfully mislead, neither to be dishonest, nor disingenuous.

In support of Complainant's request for reliefs, that the Complainant has submitted extensive documentation, and nexus, in the development, long before any alleged statements from any witnesses, which were not present prior, and that other records may have either been intentionally left out, may be erased, or "simply cannot be found", by the Respondents. As such, the Complainant is asking this honorable institution, being the E.E.O.C., to award the Complainant for punitive damages, and matters under Title (vii) of the Civil Rights Act of 1964 (to include potential Racial Discrimination, and that due to National Origin), the Age in Discrimination in Employment Act of 1975, to include Breach of Contract ("Wrongful Termination"), Non-Sexual Harassment, Hostile Work Environment, Retaliation, Breeches of the 5th Amendment, Preventing Complainant from advancing socially, educationally, and economically, Loss of Future Earnings (skills, qualifications, work experience). Complainant suffered much embarrassment, loss of human dignity, humiliation, loss of pride, is still hurting, and was not able to advance, due to massive inequity, and lack of considerations, by Respondents, and/or its agents, materially, at the Flushing Meadows Command level, to begin with. The Respondents have option of Mediation, and Reconciliation, that they can so choose to pursue. Non-disclosure being primarily principle, by the Complainant.

*Complainant is asking the E.E.O.C. to make an award, inclusive of interests, and other (further) relief, deemed necessary, or find just, <u>to the tune of three million, two hundred thousand dollars ($3,200,000.00).</u>*

Dated: 1st day of June, 2019
County of Kings

_____
**Complainant**
**Alroy Richards**

Sworn to, before me, on this the 1st day of June, 2019.

_____
**Notary Public**



## Verification

I, **ALROY RICHARDS**, also known a the **COMPLAINANT**, being duly sworn, deposes, and say:

That I have read the foregoing Response, in answering Respondents' Verified Answer, via their Counsel, and that I know the contents therein. The said are true, to my knowledge, free from folly, or frivolities, except as matters herein stated, to be alleged, on information, and belief, as to the matters, I believe them to be true. Also, to the best of my knowledge, and information, and belief, formed after an inquiry, reasonable under the circumstances, the presentation of these papers, or the contentions therein, are not frivolous, as defined under sub-section C, of section 130-1.1 of the Rules of the Chief Administrator (22 NYCRR).

_____
**Complainant
Alroy Richards**

Sworn to, before me, this 1st day of June, 2019.

_____
**Notary Public**

24.

EXHIBIT - B

Memo Book # 1

1450 hours: Pool closed off (with padlock) for lunch break. All swimmers along with NYC Parks staff left swimming pool areas
1550 hours Resumption of work. Pool officially reopened for swimming
1651: Memo book checked, uniform inspected. No violations.
1650 hrs Thirty two (32) swimmers are actively in the pool.
1750 hours. Thirty (30) swimmers are actively in the pool at this time.
1850 hours Lifeguards officially requested all swimmers to exit the pool. They complied. End of day's swimming and pool activities.
NYC Parks staff vacated area, and so did I. Pool gate padlocked
1900 hours End of my shift.

Friday   06/30/2017   Tour: 1000 - 1900hours
Partner: None          Meal: 1500 - 1530 hour
Vehicle: None          Radio: Yes- one (#0621
Weather: Dry, sunny, windy, 82°F.
Assignment: Windmuller Park Woodside
Queens, New York.
1000 hours Arrived for work. CRW and two (2) lifeguards plus one Filter Plant Operator; now seen on duty.

11

**24.**

EXHIBIT - B

... on duty ... the pool deck area, was Mr. P. W. PHI. At this time, I saw an adult female run past the gate by pool from a westerly to an easterly direction. She was shouting in Spanish, apparently yelling, and was now positioned a few feet easterly from gate area and was seen looking through chain linked fence, and into general pool area. Immediately, I saw a young girl, weighing about forty or so pounds, of Indian extraction, slim built, approximately 6-7 years old, standing on the pool deck closer to the south westerly end of the pool. The lady in question was still at position she came to hold, was shouting in Spanish, and pointing.

The lifeguard mentioned then walked over to the incumbent young girl. She had been part of the final set of swimmers, whom were given entry for final swim, at 1826 hours. Her mother then

13

24.

EXHIBIT - B

During my time standing there and listening I was told that the little girl in question, is the daughter of the woman whom was shouting. The lady, then reported that her daughter (a few minutes ago) was in the process of drowning a short while ago, and that the lifeguard on duty, reportedly did nothing. She was pointing to, and referring to Mr P.W. Phil. This lady further alleges that she was supposedly calling out to Mr P.W. Phil, whom she reported was not paying attention. I looked up an saw a NYPD vehicle (covered commerced van) which was parked more south easterly, by the outside of the park, but on the embankment (side walk). Activities in the pool had continued. However at is 1845 hours I suggested to lifeguard P. W. Phil, to end the day's activities in the pool. He then blew the whistle multiple times and told patrons to exit the pool as the day's activities

15

24.

EXHIBIT - B

had ended. All complied. At this
point, I realised that the NYP
team, immediately drove off, had
it in my intention to report this
matter to them. A few minutes
later I asked that the pool be
padlocked, as all users had exited.
1850 hours FDNY arrived parked
on the roadway, facing easterly.
The group of persons were still
present, and was apparently
discussing the situation.
1855 hours I proceeded to the
Park Office on the compound.
This is when I realised that
another FDNY vehicle (#218)
this time being the ambulance,
had arrived. It parked further
east near the south easterly entrance.
* Lifeguard's P.W. Phil was later
officially identified as Philip Wang.
In addition, I also met reported
Senior Lifeguard, Mr Dustin Simms,
whom was present on location,
making efforts to handle matter.
1858 hours First FDNY vehicle arrived
first (fire truck) departed vicinity.
1901 hours I telephoned the FMCP

16

24.

EXHIBIT - B

Queens Sgt Office phone at 646-457-1376 and informed Sgt Kamel of the material developments in brief. Based on the movement of personnel, complaint/complainants lifeguards were difficult to reach (they were engaged plus making telephone calls etc.) 1917 hours The second FDNY (this being the ambulance) vehicle departed the vicinity. → I then tried to obtain some information but very little were forthcoming.

REPORT from Mr Philip Wang (Chief Guard)

At T.P.O. Mr Wang told me that he was handling matters relating to one (1) child, whom was seen with goggles on nose. This was reportedly by the north-easterly side of the pool (in general direction of Office building). The little girl in question, he said was at an area between the north-easterly pool ladder and northern sign (posted). Apparently, she then

17

25.

EXHIBIT - A(ii)

MEMO BOOK #1

1500 hours Break for Lunch. Pool now padlocked, no one in.
1600 hours Pool re-opened. Twenty four (24) active swimmers in pool.
1700 hours Maximum of thirty two (32) swimmers are in the pool now.
1744 hours Thirty two (32) swimmers actively in the swimming pool.
1815 hours At present there are now thirty two (32) active swimmers in pool.
1830 hours Twenty eight (28) active swimmers are presently in the pool.
1900 hours Pool closed for the day. Everyone (inclusive of staff) exited the pool. Pool now padlocked.
Sunday (07/02/2017) Tour: 0900-1900 hours
Partner: None          Meal: 1500-1530 hrs
Vehicle: None          Radio: Yes; one (1)
Weather: clear, dry, sunny 79°F.
Assignment: Wind Muller Woodside-Queen
0904 hours Arrived for work. Commence patrol of park areas: pool, courts, seating area, around park, basketball court etc.
1000 hours Park Office now opened. I am still conducting my checks and patrols.
1100 hours Pool not yet opened, due to the need for cleaning (category "#1" situation). Faecal matter reported (i.e.

20

25.

Exhibit - A (ii)

an adult female tried entering the pool facility, with a male toddler, whom is roughly 18 months old. The apparel that the toddler would have been reportedly swimming in would have required the approval of the life Guard. Hence without denying him the space (in line), and other had about seven (7) minutes to end present session, I asked him to wait, as I sought approval. The man in question (said to be present with his wife) became quite impatient. He then began to use his 18 month old child to block the exit/entrance, to the pool. I respectfully asked him not to do so. Children in the pool wanted to exit constantly, and he was effectively preventing them from doing so. The man in question moved away, then leaving child to stand a mere six (6) inches or so away from grille (metal) gate. Subsequently, I requested of his wife to remove the infant away from the gate due to potential danger. She

22 (ii)

25.

Exhibit-A (ii)

At this point the gate was still closed. A lifeguard was now approaching from the easterly end (other on post) deck was busy on the northern end), in direction of the office. The man in question approached him, made a query about supposed swim wear his son (toddler) had on. At this point the lifeguard said I could allow the toddler to enter as it was indeed a swim wear. All good. However, the man then walked over, walking his child and again placed the child at the pool gate near opening side by post, blocking the entry, exit. I told him that filter plant operators, patrons, lifeguards and myself need to exit and enter but he refused to move the toddler, or himself away from the gate. Therefore, I said to the man in question that he is impending traffic practically in a three dimensional way. He began to state he will not

24 (iv)

**26.**

EXHIBIT - C (1)

1130 hours Nineteen (19) active persons now swimming in the pool.

1145 hours Twenty one (21) persons are now actively swimming in the pool.

1200 hrs Twenty one (21) active swimmers are now in the pool.

1230 hours Twenty eight (28) active swimmers are now in the pool. A further three (3) arrived making number now at thirty one (31).

1300 hours Thirty two (32) active swimmers are now in the pool. After letting in all 32 patrons into the swim pool area, an adult female came up to me, at 1302 hours and said to me that her daughter was in the pool prior, and had exited to retrieve a towel. I asked her at what point, and when did her daughter enter the pool area. She refused to answer and instead was trying to get her child pass the check point, and into the pool. Consequently I told her that we had reached the maximum capacity of 32 after doing a second check to confirm the number. She stated that she

29

26.

Wed (07/05/2017) Tour: 1000-1900 hrs
Partner: None           Meal: 1530-1600hr
Vehicle: None           Radio: Yes, #062
Weather: Dry, sunny, clear, 84°F.
Assignment: WindMullerWoodside-Queen
1000 hours Arrived for duties. Patrolled
childrens' Park, area around the pool,
"Tennis" Courts, basketball courts and
the "adults" parks.
1100 hours Pool opened operations.
There are now eight (8) swimmers
actively in the pool swimming.
1130 hrs Seventeen (17) active swimmers
as at this time swimming in the pool.
1200 hours Twenty three (23) swimmers
are actively in the pool.
1230 hours Eleven (11) swimmers are now
actively swimming in the pool.
1300 hours Twenty five (25) swimmer
now actively in the pool.
1330 hours Twenty seven (27) active
swimmers in the pool, as at this time
1412. At this time GA Richards
book was taken in order to
Make copies and find out
what occured on 07/05/17
Richards book was returned
at 1627, unicorn card

31

EXHIBIT - D

Memo Book #1

27.

EXHIBIT - FC"3

July 4, 2017 @ 1745 hrs

Memo Book # 1

south easterly decks, of the pool.
No 90cidence, up to this point in time.
1400 hours More than 200-300 active
swimmers are in the pool- Patrol of
the internal areas of the facility
continues. No matters of interest B:
1445 hours Lifeguards blew their
Whistles signalling end of the
first session of swimming. Patrons
and staff vacate general pool area.
1500 hours Break for lunch hour.
1600 hours Resumption of Duties.
I am now positioned at men's locker
areas. Patrons now streaming in.
1700 hours Still working from the
confines of the locker room (men).
No incident to report as at this time.
1715 hours Episode of thunder and
possibly bolt of lightning. So
swimming postponed for at least
another Forty five (45) minutes.
1745 hours) I was seated at the
southerly section of the main
building, but on the outsides
(facing building - to the right).
Four (4) adults saw me seated
on the steps. There were three (3)
females and one (1) male in the

45

**27**

EXHIBIT - EC11

then complied, after taking a
few puffs as I was in the
process of explaining matters
to her. I asked her which
department does she work
with and how long has she
worked with the company
(City) and with pout.
Whilst I was seated there, the
adult male walked in corridor
(between rail and building)
and in my direction. He said
he knew I was doing the
right thing but that the female
employee should also not smoke
on the premises if he or his
friends are not able to do so.
Simultaneously, the younger
of the females I referred to,
said it is because maybe
she is Hispanic, and that my
black friend is allowed to
break the rule (referring to the
female employee). Then she said
"well, see, I sent my black
friend (adult male referred
to) to come and talk to you
about the matter." I did

47

back in order

1445 hours Twenty five (25) active
swimmers are now in the pool.
1500 hours Break for lunch. All
patrons and staff exited the pool
as well as the pool deck areas.
1600 hours Resumption of pool
activities. Thirty two (32) active
swimmers are now in the pool.
1700 hours Thirty two (32) patrons
are now actively in the pool.
1730 hours There are thirty two (32)
active swimmers now swimming
in the swimming pool.
1732 hours 32 swimmers were in
the pool swimming. An adult
female approached from outside
the pool area, near pool gate an
demanded that her son be let
in. She was denied. So she
went to the lifeguard (Compton)
and said her son was in the line
for this swim set. I told her, in
the presence of her son (about
12 years old) and Mr Compton
that I had made inspections in
the line for set now swimming
in the swimming pool. Also, he had

32

EXHIBIT - EII

Memo Book #1

Verbal abuse of Petitioner / Plaintiff
by an adult female

will be making complaints. Also
that I was looking inside her
son's boxers. This is absurd,
and is untrue and is said
at the point where the patrons
were in the pool, and her son
was not able to join the thirty
two (32) patrons (maximum
capacity) now in the pool. She
then left, with her incumbent
son, whom can speak clearly
and loudly.
1800 hours  Thirty two (32) active
swimmers are now in the pool.
1830 hours  FINAL SWIM → twenty
six (26) active swimmers are now
in the pool, swimming.

<u>Friday</u>)  07/06/2017  Tour → 0700 - 1530 hours
Vehicles: None.        Meals:
Partner: None.         Radio: None.
Weather: Overcast, drizzle, 73°F
Assignment: Fisher Pool, Jackson Heights
- Queens. Pool activities.
0700 hours Arrived for duty at
Fisher Pool - Queens. Met with
Pool Supervisor - Dwayne.
Carried out patrols and familiarization
of pool, bathroom and locker areas.

34

EXHIBIT - E

THURSDAY

Verbal abuse of Petitioner/Plaintiff
by an adult female

July 8, 2017 © 1715hrs

EXHIBIT - F

Memo Book # 1

stall areas. My attention was now turned to an adult male about 5 feet 8 inches tall whom was seen standing near shower stalls closer to face basin side. He was talking to a male (adult) NYC Parks worker whom was in a blue logo shirt but whom was seated. It would have appeared he had two (2) young girls with him; one (1) about 4 years old and the other, about two (2) years old. Simultaneously, about twenty (20) or so males (which included grown men) were bathing, and traversing area in all manner of nakedness. On seeing this, I cordially went over to the man (referred to) and asked him not to practice allowing the girls to be exposed to strangers in this manner. This was after I had asked him if they were "with him" to which he answered in the affirmative. Hence, I suggested to him to instead I let the two (2) young

39



28.

HERE

EXHIBIT - G①





**NYC Service Fellowship** <NYCServiceFellows@cityhall.nyc.gov>                    7/19/17

  
NYC

Dear NYC Service Fellowship Applicant,

Thank you again for applying for the 2017-2018 NYC Service Fellowship Program. We appreciate your great passion for service and st████████st in our Fellowship Program.

Our office received a very high volume of applications for four open positions and the review process has been a very competitive one. Unfortunately, we are unable to offer you a position with the Service Fellowship Program at this time.

Ag██████atly appreciate your interest in the NYC Service Fellowship and wish you the absolute best of luck.

Best,
NYC Service

**NYC Service | Office of the Mayor**
NYCServiceFellows@cityhall.nyc.gov
www.nyc.gov/service

See page 7 of City of NY - RELEASE OF INFORMATION dated 06/05/2017, signed by me

See EQUAL EMPLOYMENT OPPORTUNITY Self Identification Form, dated 06/05/2017, and signed by me



28.

EXHIBIT - G (iii)



**Roberts, Antwone** <ARoberts@cityhall.nyc.gov>                                    7/17/17

me

I will be out of the office returning on 7/21. If you require immediate assistance, please call 212-788-7550.

Best,
Antwone



EXHIBIT- G(v)



**NYC Service Fellowship**

Greetings – You are being contacted because you submitted a complete applicat... | 6/30/17

Greetings – You are being contacted because you submitted a complete applicat...

①

**alroyrichards7** <alroyrichards███████████

6/30/17


NYC

Good day. Noted. Looking forward to that. Thanks.

Sent from my MetroPCS 4G LTE Android Device

------- Original message -------
From: NYC Service Fellowship <NYCServiceFellows@cityhall.nyc.gov>
Date: 6/30/17 17:51 (GMT-05:00)
To: NYC Service Fellowship <NYCServiceFellows@cityhall.nyc.gov>
Subject: 2017-2018 NYC Service Fellowship: Update

**Greetings –**

You are being contacted because you submitted a complete application to the 2017-2018 NYC Service Fellowship Program.  Due to some technical difficulties, applications are still being reviewed and considered. Applicants will be contacted over the next two weeks for potential interviewing and another update will be sent to applicants on Friday, July 14th.

28.

Good day to you. Please be informed that Reference Mrs Olethia McGibbon has indicated to me, that she has submitted the information required, by your institution, by completing the online form, and attached the relevant Recommendation. She further daid that this was done on Friday June 9, 2017. Subsequently, I telephoned your Broadway Offices, on Monday June 13, 2017, and had received confirmation, that the completed sections, and attachment, from Mrs McGibbon, were received.

However, on Friday June 16, 2017 (deadline date), I discovered that an email was sent, by your organization, at 4:11 pm, indicating that one reference was missing. I will forward a copy of this Friday June 16, 2017 email, sent to me, bu your Offices. In addition, a second email eas sent, by your institution, at the same time of 4:11 pm. However, Ibam unable to access it, as on doing so, the mail disappeared. What were the contents of that second Friday June 16, 2017 email? Could you please resend a copy to me? Plus send to: alroyrichards███████

My telephone numbers are████████

Awaiting your response.


Sent from my MetroPCS 4G LTE Android Device

-------- Original message --------
From: NYC Service Fellowship <NYCServiceFellows@cityhall.nyc.gov>
Date: 6/8/17 11:43 (GMT-05:00)
To: 'alroyrichards7' <alroyrichards███████
Subject: RE: NYC Service Fellowship Reference From MOLLY RUSSELL Has Been Received

Greetings -- We've removed Mark Lindsay as your reference 2 and added Olethia McGibbon. An email was sent to her email address you shared below with instructions on how to submit the reference letter for you online. Please check with them and confirm they received. Please note, it is the applicant's responsibility to ensure their references submit by the application deadline, 5:00 PM on Friday, June 16th.

Thank you,
NYC Service

From: alroyrichards7 [mailto:alroyrichards███████
Sent: Sunday, June 04, 2017 5:44 PM
To: NYC Service Fellowship
Subject: RE: NYC Service Fellowship Reference From MOLLY RUSSELL Has Been Received

3)

28.

EXHIBIT - G(vi)

**alroyrichards7**

Good day to you. Please be informed that Reference Mrs Olethia McGibbon has i...   6/19/17

Good day to you. Please be informed that Reference Mrs Olethia McGibbon has i...

**NYC Service Fellowship**

Received – thank you. Best ,NYC Service From: alroyrichards [mailto:alroyric...   6/21/17

Received – thank you. Best ,NYC Service From: alroyrichards [mailto:alroyric...

**alroyrichards** <alroyrichards   6/21/17

NYC

Good day. Thanking you for your response/u

Regards.

1



EXHIBIT - G(vii)

**Jenia Valentine (DCAS)** <JVALENTI@dcas.nyc.gov>                                        5/25/17

 me
nycservicefell.
Cherrie

Hello Mr. Richards,

I contacted the NYC Service Fellowship and was instructed to forward your email to them.  Should you have need additional assistance they are located at 253 Broadway, contact # 212-788-7550.

Sincerely.

JValentine

Jenia E. Valentine | Coordinator, Special Programs
P: (212) 386-1697 | F: (212) 313-3222 | jvalenti@dcas.nyc.gov

Follow us on:

TODAY IS A GOOD DAY TO LEARN SOMETHING NEW!!

From: alroyrichards7 [mailto:alroyrichards
Sent: Thursday, May 25, 2017 11:02 AM
To: Cherrie Johnson (DCAS) <CJOHNSON@dcas.nyc.gov>; Jenia Valentine (DCAS) <JVALENTI@dcas.nyc.gov>
Subject: RE: FW: ALROY D. RICHARDS - Applicant For NYC SERVICE FELLOWSHIP PROGRAM 2017-2018 (INTERNSHIP)

Thanks for the response.

Regards.

and c/o Sagicor Jamaica, Corner of Holborn and Trafalgar Roads, Kingston 10 -
Jamaica, West Indies.

New Reference is Mrs Olethia McGibbon:

Telephone number ████████████████(Office) and ██████████(Cell)
c/o ███████ Avenue, Brooklyn, N.Y.
Email - ██████████yahoo.com

As outlined to you prior, there were no specifications, as to the Program. However, the
connotations were:

NYC Internship/Fellowship Programs 2017/2018
Department of Citywide Administrative Services (DCAS)
Human Capital
1 Centre Street, 24th Floor
New York, N.Y. 10007  Referencing email being - NYCservicefellows@cityhall.nyc.gov

This premise under this program were primarily that an individual would have been
able to gain important work experience, as a precursor for possibly entering the civil
service, that it would have been for one(1) year, commencing August 2017, or so, it
would have been constituted by a taxable remuneration/stipend, and that the
incumbent (if accepted) would not have been able (permitted) to hold another job,
neither to engage in completion of a Masters degree program, during that tenure, or
apprenticeship.

Thanking you in advance, for the exemplary service, and follow up. My telephone
numbers are ████████████ I have also attached a copy of Resume, for reference. An
ambitious person with a passion for public service  (long term, and into retirement),
enhancing growth, increasing abilities and skills, ensuring optimum use of Social
Capital and Human Capital, having had extensive community service involvement (30
years), along with degree in Public Administration. Authorized to work in the U.S.
(Green Card holder, since October 2016).

Regards.

Att.

Reply  Reply  Forward   ████████████████████████████
        to all

**Alroy Richards** <alroyrichards7@gmail.com>                          6/7/17

29.



Alroy Richards <alroyrichards⬛⬛⬛⬛⬛

---

## NYCAPS Central Case: CASE-0071241 [Fwd: ALROY RICHARDS - City Seasonal Aide #ERN ⬛⬛⬛⬛
1 message

**NYCAPS Central (DCAS)** <nycaps.central@dcas.nyc.gov>                                    Fri, Aug 4, 2017 at 3:41 PM
Reply-To: "NYCAPS Central (DCAS)" <nycapscentral@dcas.nyc.gov>
To: alroyrichards7@gmail.com

Thank you for contacting NYCAPS Central. We have received your email, and a Case has been generated.

Your Case number is: CASE-0071241

We will review your message and respond shortly. Please include the full Case number (CASE-0071241) in the subject line of any future correspondence. If you need to provide additional information, please **REPLY** to this email, leaving the subject intact. Do not send a new email, or a duplicate case will be created.

Thank you,

NYCAPS Central
P: (212) 487-0500 | F: (212) 313-3411