UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/28/2021
```

ALROY RICHARDS,

                    Plaintiff,

          -against-

CITY OF NEW YORK,

                    Defendant.

1:19-cv-10697-MKV

MEMORANDUM
OPINION AND ORDER

MARY KAY VYSKOCIL, United States District Judge:

    *Pro se* Plaintiff Alroy Richards brings this employment discrimination case against Defendant the City of New York after he was terminated from his job with the New York City Department of Parks and Recreation ("NYC Parks").  (*See generally* Am. Compl. [ECF No. 53].)  Defendant has moved to dismiss the Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Mot. Dismiss [ECF No. 53].)  For the reasons discussed below, Defendant's motion is GRANTED and the Amended Complaint is DISMISSED.

## BACKGROUND[1]

### I.  Factual Background

    Plaintiff is a Jamaican man who was hired in July 2017 as a City Seasonal Aide ("CSA") in the role of Parks Enforcement Patrol ("PEP") Officer for the Urban Park Services ("Park Services"), a division of NYC Parks.  (Am. Compl. Ex. 4; Am. Compl. Ex. 45 ¶¶ 1–2).  PEP Officers "provide security at Parks facilities and enforce the rules and regulations" of NYC Parks.

---

[1] The following facts are taken from the Amended Complaint and exhibits annexed thereto. (Am. Compl. [ECF No. 45].) On the pending motion to dismiss, the Court is "constrained to accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006)); *accord Oakley v. Dolan*, 980 F.3d 279, 283 (2d Cir. 2020).

(Am. Compl. Ex. 45 ¶ 3.)  Designated as peace officers under New York State law, PEP officers are required to uphold high standards in behavior and dress.  (Am. Compl. Ex. 45 ¶ 3.)

Plaintiff worked as a CSA for less than three months before he was fired.  In that short time, there were several documented incidents involving Plaintiff and patrons, co-workers, or supervisors.  The Court discusses those most relevant to Plaintiff's claims and Defendant's motion.

On July 2, 2017, while on duty at Windmuller Pool in Queens, New York, Plaintiff observed a man not wearing proper swimwear.  (Am. Compl. Ex. 43 at 2.)  In addition, the man's eighteen-month-old son was standing near a large fence, which swimmers used to enter and exit the pool.  (Am. Compl. Ex. 43 at 2.)  Plaintiff feared that the child was in danger because he was obstructing access to and from the pool.  (*Id.*; Am. Compl. Ex. 25 at 22.)  Plaintiff advised the patron of the pool rules regarding proper attire and "asked th[e] patron to protect the child from imminent danger," but the patron "refused" and "began to behave threateningly, advancing toward [Plaintiff]."  (Am. Compl. Ex. 43 at 2.)  Plaintiff declined to provide his name when asked by the patron.  (Am. Compl. Ex. 25 at 25; Am. Compl. Ex. 45 ¶ 5.)  The patron sought intervention of a police officer, who told Plaintiff that the patron and his child could swim despite not wearing proper attire.  (Am. Compl. Ex. 23 at 2; Am. Compl. Ex. 25 at 25.)

The patron filed a complaint against Plaintiff, claiming that his family was not allowed to access the pool.  (*See* Am. Compl. Ex. 45, Sub-Ex. A(i).)  NYC Parks and Parks Services investigated the matter and concluded that Plaintiff acted improperly when he refused to allow the patron's son access to the pool and to provide identification upon request.  (Am. Compl. Ex. 45, Sub-Ex. B.)  As a result of the incident, Plaintiff was reassigned from Windmuller Pool to Astoria Pool in Queens, New York.  (Am. Compl. Ex. 45 ¶¶ 6–7; Am. Compl. Ex. 45, Sub-Ex. B.)

On July 16, 2017, while on duty at Astoria Pool, Plaintiff witnessed a man who appeared to be using his cell phone to take photos or video of people in the pool.  (Am. Compl. Ex. 23 at 5; Am. Compl. Ex. 30 at 9.)  Plaintiff confronted and advised the patron that the pool rules prohibited cell phone use.  (Am. Compl. Ex. 23 at 5; Am. Compl. Ex. 30 at 9.)  The patron responded that he did not care and needed to retrieve his daughter, who was swimming.  (Am. Compl. Ex. 23 at 5; Am. Compl. Ex. 30 at 9.)  Minutes later, after retrieving his daughter, the patron became confrontational with Plaintiff, threatening Plaintiff and calling Plaintiff names.  (Am. Compl. Ex. 23 at 5–6; Am. Compl. Ex. 30 at 9–10.)  The patron demanded to see Plaintiff's supervisor.  (Am. Compl. Ex. 30 at 10.)  Plaintiff attempted to contact the police and his supervisor, Sergeant Soyer, but was not successful.  (Am. Compl. Ex. 23 at 6.)  Plaintiff then called the "CFMCP Office" and spoke with Sergeant O. Lee.  (Am. Compl. Ex. 30 at 11.)  Shortly thereafter, Plaintiff located Sergeant Soyer and "gave him a synopsis" of the incident.  (*Id.*)

That evening, Sergeant Soyer held a "muster," or staff meeting, with Plaintiff and nearly a dozen other CSAs.  (Am. Compl. Ex. 23 at 6.)  At the meeting, Sergeant Soyer "was upset" that Plaintiff had "contacted Central Command" over the situation when he was unable to reach Sergeant Soyer.  (*Id.*)  Sergeant Soyer stated that Plaintiff should have asked co-workers for his cell phone number before calling Central Command.  (Am. Compl. Ex. 30 at 13.)  Sergeant Soyer asked Plaintiff for suggestions on how to improve communication and prevent similar situations from occurring again.  (Am. Compl. Ex. 23 at 6.)  CSA Shilea McClain reported that Plaintiff "became very aggressive and disrespectful" and "began saying discriminating comments about America."  (Am. Compl. Ex. 45, Sub-Ex. E.)  Plaintiff alleges that CSA McClain intimated that "she did not wish to hear from" Plaintiff and that other CSAs echoed similar sentiments.  (Am. Compl. Ex. 23 at 6.)  Plaintiff stated that "he thought diversity, equal opportunity and equal

employment exist in America, and didn't know some persons didn't see it this way." (*Id.*) Knowing Plaintiff was from Jamaica, CSA McClain responded, "Well, why don't you go back to your country." (*Id.*) When asked by Plaintiff, Sergeant Soyer confirmed that he had heard CSA McClain's remark and commented, "Yes, so what." (*Id.*) Segreant Soyer did not reprimand CSA McClain or ask her to apologize to Plaintiff. (*Id.* at 7.)

According to a supervisor report completed by Sergeant Soyer, Sergeant Soyer held a supervisor conference with Plaintiff after the muster. (Am. Compl. Ex. 14.) Sergeant Soyer reported that during the muster Plaintiff used "abusive language"—referring to "these fucking Americans"—and became "threatening" towards his co-workers, almost causing a physical altercation, to the point where a fellow CSA had to escort him away. (*Id.*) In the report, Sergeant Soyer informed Plaintiff that this alleged conduct had violated Park rules and any further misconduct could result in disciplinary action. (*Id.*) Plaintiff claims that the allegations in this report were fabricated, that he "made no disparaging comments about Americans," and that no supervisor conference occurred. (Am. Compl. Ex. List ¶ 14; Am. Compl. Ex. 23 at 6.)

Plaintiff alleges that on July 21, 2017, Sergeant Soyer and Sergeant Kamel approached him while he was working and threatened that he would be fired if he did not sign the supervisor report memorializing the alleged conference. (Am. Compl. Ex. 12 at 5–6; Am. Compl. Ex. 20 at 3.) Plaintiff refused and his supervisors subsequently tried to "force" him to sign, thereby putting him under "duress." (Am. Compl. Ex. 12 at 6.) After Plaintiff refused again, Sergeant Soyer put "Refused to Sign" on the supervisor report, listing Sergeant Kamel as a witness to Plaintiff's refusal. (*Id.*; *see* Am. Compl. Ex. 14.)

On July 25, 2017, Plaintiff wrote a letter to Iyana Titus, Assistant Commissioner of Equal Employment Opportunity for NYC Parks. (Am. Compl. Ex. 12.) Plaintiff made several

complaints in the letter, including, *inter alia*, his inability to access the Employee Self Service System, how his supervisors had handled certain situations with unruly patrons, that Sergeants Soyer and Kamel had attempted to "abduct[]" him and to force him to sign a "write up" under threat of termination.  (*See generally id.*)  In response, Titus advised Plaintiff that his concerns did "not articulate any adverse treatment based upon a protected characteristics [sic] which would be in the purview of [her] office."  (Am. Compl. Ex. 7 at 2.)  Titus, however, noted that she would look into CSA McClain's comment that Plaintiff should return to his home country.  (*Id.*)

On August 3, 2017, Sergeant Soyer completed a performance evaluation of Plaintiff for the month of July.  (Am. Compl. Ex. 13.)  Plaintiff received low marks for his work quality, job knowledge, and attitude.  (*See id.*)  The evaluation provides that Plaintiff failed all six uniform inspections.  (*Id.*)  Further, Sergeant Soyer reported that Plaintiff had "fail[ed] to adhere to the standards expected of a NYC employee," was "in constant need of correction and reformation while performing his duties," was "unwilling to learn," and had "problems getting along with his peers."  (*Id.*)

Plaintiff attempted to appeal his evaluation, sending three letters to an unnamed Director of Human Resources.  (*See* Am. Compl. Exs. 8–10.)  In the letters, Plaintiff expressed disdain for his supervisors.  (*See generally* Am. Compl. Exs. 8–10.)  Plaintiff claimed that he was always professional and responsible in performing his duties.  (Am. Compl. Ex. 10 at 3–4.)  Plaintiff claimed that he was once told by his superiors that he was "working too hard."  (*Id.* at 4.)  Plaintiff conceded that he did not always wear a hat, which is part of the required uniform.  (*See id.* at 4.)  With respect to his ability to get along with his peers, Plaintiff acknowledged that his "culture, socialization, and values, may be a little different" from his peers and explained that he declined to get involved in "some 'low level', and unproductive conversations."  (*Id.* at 5.)

Plaintiff alleges that, while working on August 3, 2017, his supervisor Tyson Holley approached him and "began shouting boisterously" "as if in attacking mode." (Am. Compl. Ex. 23 at 14.) Holley reprimanded Plaintiff for not enforcing the dress code, as patrons were entering the pool wearing shirts, which violated pool rules. (*Id.*) Plaintiff noted that there were several other staff members on duty that were also not enforcing the dress code, to which Holley, out of "malice" and "prejudice," responded, "I am not working here with you, at this, or any pool." (*Id.*) Plaintiff complained to Sergeants Soyer and Kamel, who told Plaintiff "to not pay attention to Mr. Tyson Holley, as they are [his] direct Supervisors." (*Id.* at 15.) Holley reported that Plaintiff refused to follow his directive about enforcing pool rules and remarked, "I don't know who you think you are talking to and you can talk to my boss." (Am. Compl. Ex. 45, Sub-Ex. F at 3.)

Supervisors filed additional complaints about Plaintiff for refusing to follow procedures, being disrespectful, using his cell phone in the pool area during work hours, and taking longer breaks than permitted. (Am. Compl. Ex. 45 ¶ 15; Am. Compl. Ex. 45, Sub-Ex. H.)

On August 26, 2017, Park Services terminated Plaintiff's employment. (Am. Compl. Ex. 5.) Park Services cited as reasons for termination "unsatisfactory work performance" and "insubordination." (Am. Compl. Ex. 6; Am. Compl. Ex. 45 ¶ 17.)

## II. Procedural Background

On October 11, 2017, Plaintiff filed a charge of discrimination based on national origin and retaliation with the Equal Employment Opportunity Commission ("EEOC") and the New York State Division of Human Rights. (Am. Compl. Exs. 17, 20.) On August 31, 2019, the EEOC dismissed Plaintiff's charge and notified Plaintiff of his right to sue within ninety days of his receipt of the notice. (Am. Compl. Ex. 16.) Plaintiff timely commenced this action on November 19,

2019, by filing the Complaint.  (Compl. [ECF No. 1].)  Plaintiff thereafter, with leave of the Court [ECF No. 42], filed an Amended Complaint.  (Am. Compl. [ECF No. 45].)[2]

Plaintiff's pleadings allege causes of action under the following: (1) Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17; (2) 42 U.S.C. § 1981; (3) Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–634; (4) New York State Human Right Law ("NYSHRL"), N.Y. Exec. Law §§ 290–297; (5) New York City Human Rights Law ("NYCHRL"), N.Y. City Admin. Code §§ 8-101 to 131; and (6) the Whistleblower Protection Act of 1989 ("WPA"), 5 U.S.C. §§ 1213 *et seq.*  (*See generally* Compl.; Am. Compl.)  Plaintiff's pleadings also suggest causes of action for First Amendment retaliation, breach of contract, libel, negligence, and emotional distress.  Plaintiff seeks $3,700,000 in damages.  (Am. Compl. 6.)

Defendant filed a motion to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(6), and a supporting memorandum of law.  (Mot. Dismiss [ECF No. 53]; Def.'s Br. [ECF No. 54].)  Plaintiff filed an opposition (Opp. [ECF No. 56]), and Defendant filed a reply (Reply [ECF No. 57]).

## **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

---

[2] Although "an amended complaint ordinarily supersedes the original, and renders it of no legal effect," *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977)), the Second Circuit has declined to extend this rule to *pro se* litigants, *see Elliot v. City of Hartford*, 649 F. App'x 31, 32 (2d Cir. 2016) (summary order) (citing *Austin v. Ford Models, Inc.*, 149 F.3d 148, 155 (2d Cir. 1998) (alteration in original), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)). Accordingly, the Court considers Plaintiff's Complaint and Amended Complaint together. *See, e.g.*, *Guy v. MTA N.Y.C. Transit*, 403 F. Supp. 3d 131, 133 (E.D.N.Y. 2017).

for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  While a sufficiently pleaded complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks, alterations, and citations omitted); *see also Iqbal*, 556 U.S. at 678 (noting that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" (citing *Twombly*, 550 U.S. at 555)).

A complaint filed by a *pro se* plaintiff "must be construed liberally with 'special solicitude' and interpreted to raise the strongest claims that it suggests." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)); *see also Wilson v. Dalene*, 699 F. Supp. 2d 534, 554 (E.D.N.Y. 2010) (noting that courts are "required to afford [a *pro se* plaintiff] leniency, holding his complaint to 'less stringent standards than formal pleadings drafted by lawyers'" (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))).  Nevertheless, the complaint must satisfy the *Twombly-Iqbal* plausibility standard.  *See Costabile v. N.Y.C. Health & Hosps. Corp.*, 951 F.3d 77, 80–81 (2d Cir. 2020).  Thus, "a *pro se* plaintiff must support his claims with 'specific and detailed factual allegations, not stated in wholly conclusory terms.'" *Wightman– Cervantes v. ACLU*, No. 06 Civ. 4708, 2007 WL 1805483, at *1 (S.D.N.Y. June 25, 2007) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000)).

In deciding a Rule 12(b)(6) motion, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint," *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); and *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)), as well as any document "upon which the complaint solely

relies and which is integral to the complaint," *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007)

(emphasis and alteration omitted) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42,

47 (2d Cir. 1991)).  "A document is integral to the complaint 'where the complaint relies heavily

upon its terms and effect.'"  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (quoting

*Chambers*, 282 F.3d at 153).  In addition, "A district court deciding a motion to dismiss may

consider factual allegations made by a *pro se* party in his papers opposing the motion."  *Walker v.

Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) (citing *Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir.

1987)).

## DISCUSSION

### I.      Title VII, ADEA, NYSHRL, NYCHRL

Plaintiff alleges causes of action under Title VII, the ADEA, the NYSHRL, and the

NYCHRL for discrimination based on race, color, national origin, age, alienage, and citizenship

status.  (Am. Compl. 3–4.)  Plaintiff alleges that Defendant terminated his employment for

discriminatory reasons, created a hostile work environment, and retaliated against him.  (*Id.* at 5.)

#### A.  Failure To Exhaust Administrative Remedies

"Exhaustion of administrative remedies through the EEOC is an essential element of the

Title VII and ADEA schemes and, as such, a precondition to bringing such claims in federal court."

*Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (per curiam)

(internal quotations marks omitted) (collecting cases).  Courts may only review claims that "were

either contained in the EEOC charge or are 'reasonably related' to claims in the charge."  *DeBerry*

*v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 393 (E.D.N.Y. 2014) (quoting *Legnani*,

274 F.3d at 686).  Claims are "reasonably related" if they "would fall within the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge."  *Butts v. City of N.Y.*

*Dep't of Hous. Pres. & Dev.*, 990 F.2d 1397, 1402–03 (2d Cir. 1993) (collecting cases). "[C]laims that introduce a 'wholly different type of discrimination' from that in the administrative charge are typically deemed to be not reasonably related." *Young v. U.S. Dep't of Homeland Sec.*, No. 10 Civ. 9571(RJS), 2011 WL 6057849, at *2 (S.D.N.Y. Dec. 5, 2011) (collecting cases).

Defendant argues that Plaintiff has failed to exhaust his administrative remedies with respect to his claims of discrimination based on race, color, and age because Plaintiff's charge of discrimination filed with the EEOC and the New York State Division of Human Rights alleged discrimination based only on national original and retaliation. (Def.'s Br. 11.)

The Second Circuit has recognized that "the line between national origin discrimination and racial discrimination is difficult to trace" and that generally courts should avoid "draw[ing] overly fine distinctions between race and national origin claims as part of the threshold exhaustion inquiry prior to the full development of a plaintiff's claims, given the potential overlap between the two forms of discrimination, and the 'loose pleading' which is permitted in the EEOC complaint." *Deravin v. Kerik*, 335 F.3d 195, 202 (2d Cir. 2003) (citing Butts, 990 F.2d at 1402). Furthermore, "race and national origin claims may substantially overlap . . . depending on the specific facts of the case" and that "even in the absence of an express linkage between race and national origin, the specific facts alleged by a plaintiff in his or her EEOC complaint may suggest both forms of discrimination, so that the agency receives adequate notice to investigate discrimination on both bases." *Id.* at 201–02.

Here, while in the EEOC charge Plaintiff alleged discrimination based only on national original and retaliation, discrimination based on race and color would reasonably fall within the scope of the EEOC investigation and could reasonably be expected to grow out of Plaintiff's allegations. (*See* Am. Compl. Ex. 17.) Accordingly, the Court finds that Plaintiff's race and color

discrimination claims are reasonably related to the national origin discrimination claim alleged in the EEOC charge such that they have been exhausted properly. *See Deravin*, 335 F.3d at 199, 203 (finding that plaintiff adequately exhausted racial discrimination claim even though he only checked the boxes marked "national original" and "retaliation" in EEOC charge); *see also Fisher v. Mermaid Manor Home for Adults, LLC*, 192 F. Supp. 3d 323, 328 (E.D.N.Y. 2016) (national origin discrimination reasonably related to race and color discrimination); *Sharabura v. Taylor*, No. 03 CV 1866(JG), 2003 WL 22170601, at *3 (E.D.N.Y. Sept. 16, 2003) (same).

Plaintiff's age discrimination claim, however, is not reasonably related to the national origin and retaliation claims in the EEOC charge. Plaintiff alleges no facts in the EEOC charge that would have prompted the EEOC to investigate age discrimination. (*See* Am. Compl. Ex. 17 (noting each actor's race but not age).) *See Dennis v. Pan American World Airways*, 746 F. Supp, 288, 291 (E.D.N.Y. 1990); *see also Bonilla v. Smithfield Assocs. LLC*, No. 09 Civ. 1549(DC), 2009 WL 4457304, at *3 (S.D.N.Y. Dec. 4, 2009) (finding that age discrimination claim was not reasonably related to national original discrimination claim since they involve different animus and would require investigation of different facts). Because it is not reasonably related to the claims alleged in the EEOC charge, Plaintiff's ADEA claim has not been exhausted properly and is therefore dismissed.

### B. Employment Discrimination

Employment discrimination claims under Title VII, NYSHRL, and NYCHRL all are analyzed under the same standard. *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) (citing *Dawson v. Bumble & Bumble*, 398 F.3d 211, 216–17 (2d Cir. 2005), *overruled on other grounds by Zarda v. Altitude Express, Inc.*, 883 F.3d 100 (2d Cir. 2018) (en banc)). To state a claim for employment discrimination, a plaintiff must allege that "(1) he belonged to a protected class; (2) he

was qualified for the position he held; (3) he suffered an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012) (quoting *Holcomb v. Iona Coll.*, 521 F.3d 130, 138 (2d Cir. 2008)).

An adverse action is defined in part by the causal role the claimant's protected identity played in the change. The change in terms and conditions must be "because of" the employee's race, color, religion, sex or national origin, and the claimant's protected identity must be "a 'substantial' or 'motivating' factor contributing to the employer's decision to take the action." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 85 (2d Cir. 2015) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 249 (1989) (plurality opinion), *superseded on other grounds by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071). At this stage, an employee must allege the adverse action was made "at least in part for a discriminatory reason" and this may be done by "alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Id.* at 87 (2d Cir. 2015) (citing *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015)).

Plaintiff's employment discrimination claim fails because Plaintiff has failed to plead facts that plausibly give rise to an inference of discriminatory animus. Other than one stray remark of a co-worker, discussed below, the Amended Complaint and exhibits attached thereto are primarily composed of conclusory assertions that Plaintiff was fired based on his national origin, race, and color. "Such bald statements—without any supporting facts—are too conclusory to permit an inference of discriminatory animus." *Trujillo v. City of New York*, No. 14 Civ. 8501, 2016 WL 10703308, at *14 (S.D.N.Y. Mar. 29, 2016) (collecting cases), *aff'd*, 696 F. App'x 560 (2d Cir. 2017); *see also Cain v. N. Country Cmty. Coll.*, No. 8:20-cv-232 (GLS/DJS), 2020 WL 7230722,

at *3 (N.D.N.Y. Dec. 8, 2020) (ellipsis omitted) ("Naked assertions of race discrimination without any specific factual allegation of a causal link between the defendants' conduct and the plaintiff's protected characteristic are too conclusory to withstand a motion to dismiss." (quoting *Sanders-Peay v. N.Y.C. Dep't of Educ.*, No. 14-CV-4534, 2014 WL 6473507, at *3 (E.D.N.Y. Nov. 18, 2014))).

The only allegation in Plaintiff's 274-page Amended Complaint that suggests discriminatory animus is the remark by his co-worker, CSA McClain, that Plaintiff should return to his home country. (Am. Compl. Ex. 23 at 6.) In determining whether a remark suggests discriminatory animus, courts consider four factors:

> (1) who made the remark, *i.e.*, a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, *i.e.*, whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, *i.e.*, whether it was related to the decisionmaking process.

*Schreiber v. Woldco, LLC*, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004) (collecting cases); *see Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 149–50 (2d Cir. 2010) (collecting cases) (endorsing four-factor framework).

Here, the alleged discriminatory remark was made by CSA Sheila McClain, a low-level co-worker who was not involved in Plaintiff's termination. Sergeant Odelia Lee, one of Plaintiff's supervisors, signed off on Plaintiff's termination. (Am. Compl. Ex. 5.) The timing and context of the remark—a staff meeting more than one month before Plaintiff's termination—make clear that it was wholly unrelated to the decision-making process. The stray remark by CSA McClain does not plausibly provide the minimal support of discriminatory animus to state an employment discrimination claim, and importantly, Plaintiff does not plausibly allege a causal connection between the remark and his termination or any other adverse employment action. *See Toney v.*

*Prob. Dep't*, No. CV 15–0561(JS)(GRB), 2016 WL 859381, at *6 (E.D.N.Y. Jan. 28, 2016) (finding that stray race-based comment that "black people live in filth" made by fellow employee with no decision-making authority over plaintiff's position was insufficient to plead discrimination claim), *report & recommendation adopted*, 2016 WL 868206 (E.D.N.Y. Mar. 4, 2016); *Henry v. NYC Health & Hosp. Corp.*, 18 F. Supp. 3d 396, 411 (S.D.N.Y. 2014) (granting motion to dismiss where "racially-charged comment about [plaintiff's] skin tone and hair color—the only act with respect to which the Amended Complaint plausibly alleges discriminatory animus"—was not linked to material adverse employment action); *White v. N.Y.C. Dep't of Educ.*, No. 12 Civ. 1376(CM), 2014 WL 1273770, at *18 (S.D.N.Y. Mar. 28, 2014) (finding that "single stray remark from a co-worker (not even a supervisor) d[id] not come close to rising to the needed level"). Accordingly, Plaintiff's claims for employment discrimination under Title VII, NYSHRL, and NYCHRL are dismissed.

### C.  Hostile Work Environment

For substantially the same reasons, Plaintiff has failed to state a claim for hostile work environment.  To state a claim for hostile work environment, a plaintiff must allege that his workplace was "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65, 67 (1986)); *see also Bermudez v. City of New York*, 783 F. Supp. 2d 560, 578 (S.D.N.Y. 2011) (collecting cases).  "The incidents complained of must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive." *Littlejohn*, 795 F.3d at 321 (quoting *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014)).

CSA McClain's stray remark is insufficient to establish a hostile work environment. *See Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) ("For racist comments, slurs, and jokes to constitute a hostile work environment, there must be more than a few isolated incidents of racial enmity, meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." (citations, alteration and internal quotation marks omitted)); *Rogers v. Bank of N.Y. Mellon*, No. 09 Civ. 8551 (HBP), 2016 WL 4362204, at *17 (S.D.N.Y. Aug. 15, 2016) (finding that single offensive comment was "not sufficiently severe or pervasive to support a hostile environment claim" (collecting cases)); *Adeniji v. Admin. for Children Servs., N.Y.C.*, 43 F. Supp. 2d 407, 422–23 (S.D.N.Y. 1999) ("A single incident of discriminatory comments is not sufficient to establish a hostile work environment." (collecting cases)). Nor are the reprimands that Plaintiff received sufficient to establish a hostile work environment. *See Littlejohn*, 795 F.3d at 321 (allegations such as additional work, changes in schedule, removal from meetings, and wrongful reprimands were insufficient to establish a hostile work environment); *Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 75 (2d Cir. 2019) ("Legitimate reprimands by an employer are not abuse."). Plaintiff alleges no other facts that suggest he was subjected to a hostile work environment. Accordingly, Plaintiff's hostile work environment claims are dismissed.

### D. Retaliation

Retaliation claims under Title VII and NYSHRL each are evaluated under the same standard. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 609 (2d Cir. 2006) (citing *Smith v. Xerox Corp.*, 196 F.3d 358, 363 n.1 (2d Cir. 1999); and *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714–15 (2d Cir. 1996)). To establish a prima facie case of retaliation under these statutes, a plaintiff must make four showings: "(1) she engaged in a protected activity; (2) her employer was aware of this activity; (3) the employer took adverse employment action against her; and (4) a

causal connection exists between the alleged adverse action and the protected activity." *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013) (quoting *Schiano*, 445 F.3d at 608). An employee engages in protected activity when he opposes employment practices prohibited under Title VII or the NYSHRL, *i.e.*, discrimination based on a protected characteristic. *Davis v. NYS Dep't of Corr. Attica Corr. Facility*, 110 F. Supp. 3d 458, 462 (W.D.N.Y. 2015) (quoting *Bennett v. Hofstra Univ.*, 842 F. Supp. 2d 489, 500 (E.D.N.Y. 2012)).

To survive a motion to dismiss, the plaintiff must plausibly allege that "(1) defendants discriminated—or took an adverse employment action—against him, (2) because he has opposed any unlawful employment practice." *Duplan v. City of New York*, 888 F.3d 612, 625 (2d Cir. 2018) (quoting *Vega*, 801 F.3d at 90). The causation element requires the plaintiff to "plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* (quoting *Vega*, 801 F.3d at 90–91). "Causation may be shown by direct evidence of retaliatory animus or inferred through temporal proximity to the protected activity." *Id.* (citing *Vega*, 801 F.3d at 90–91). "Where timing is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." *Slattery v. Swiss Reinsurance America Corp.*, 248 F.3d 87, 95 (2d Cir. 2001).

"The elements of a prima facie case of retaliation under the NYCHRL are identical [to Title VII and the NYSHRL], 'except that the plaintiff need not prove any "adverse" employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity.'" *Salahuddin v. N.Y.C. Dep't of Educ.*, No. 15 CV 6712-LTS-DCF, 2017 WL 3724287, at *3 (S.D.N.Y. Aug. 28, 2017) (quoting *Jimenez v. City of New York*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009)).

Plaintiff has failed to state a claim for retaliation under Title VII, the NYSHRL, and the NYCHRL because he has not plausibly alleged a causal connection between any protected activity and either his termination or something that would deter a person from engaging in protected activity.  Plaintiff alleges that he made several complaints to NYC Parks' personnel during his employment.  But most of his complaints centered around conditions of his employment and general frustrations with supervisors, patrons, and co-workers, not discrimination based on national origin, race, or color.  (*See generally* Am. Compl. Ex. 23.)  Such complaints are not protected activity under Title VII, the NYSHRL, and the NYCHRL.  *See, e.g.*, *White v. City of Middletown*, 45 F. Supp. 3d 195, 215 (D. Conn. 2014) ("General complaints that do not put the employer on notice of a claim of unlawful discrimination, do not constitute protected activity." (citing *Ochei v. Coler/Goldwater Mem'l Hosp.*, 450 F. Supp. 2d 275, 287 (S.D.N.Y. 2006); and *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch.*, LLC, 470 F. Supp. 2d 345, 357 (S.D.N.Y. 2007))).

Plaintiff's pleadings suggest two possible instances of protected activity.  First, at the July 16 muster, Plaintiff stated in the presence of Sergeant Soyer, his supervisor, that "he thought diversity, equal opportunity and equal employment exist in America, and didn't know some persons didn't see it this way." (Am. Compl. Ex. 23 at 6.)  This statement, however, was too vague and general to qualify as protected activity.  While "informal complaints to supervisors constitute protected activity under Title VII," *Martin v. State Univ. of N.Y.*, 704 F. Supp. 2d 202, 227–28 (E.D.N.Y. 2010) (collecting cases), such complaints "cannot be so vague or 'generalized' that the employer could not 'reasonably have understood that the plaintiff's complaint was directed at conduct prohibited by Title VII.'"  *Colas v. City of Univ. of N.Y.*, No. 17-CV-4825 (NGG) (JO), 2019 WL 2028701, at *8 (E.D.N.Y. May 7, 2019) (alteration omitted) (quoting *Rojas v. Roman*

*Catholic Diocese of Rochester*, 660 F.3d 98, 108 (2d Cir. 2011)).  Plaintiff's statement at the muster "neither pointed out discrimination against particular individuals nor discriminatory practices." *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590, 594 (2d Cir. 1988). And the statement was made *before* CSA McClain's comment about Plaintiff returning to his home country, so it could not have reasonably put Sergeant Soyer on notice of discriminatory employment practices.  Accordingly, Plaintiff did not engage in protected activity at the July 16 muster.

Second, on July 25, 2017, Plaintiff wrote to Iyana Titus and advised her of CSA McClain's remark that Plaintiff should return to his home country.  (Am. Compl. Ex. 12 at 7.)  While this correspondence qualifies as protected activity, Plaintiff fails to plead any causal connection between this complaint and his termination or anything that would deter a person from engaging in protected activity.  Plaintiff does not plausibly allege direct retaliatory animus.  Further, causation cannot be inferred through temporal proximity because Plaintiff's negative performance evaluation and ultimate termination were the culmination of events that began over a month before Plaintiff wrote to Titus.  *See Slattery*, 248 F.3d at 95; *see also Dixon v. Int'l Fed'n of Accountants*, No. 09 CV 2839(HB), 2010 WL 1424007, at *6 (S.D.N.Y. Apr. 9, 2010) (dismissing retaliation claim because Plaintiff "was subjected to repeated critiques and complaints about her management and performance skills before she ever lodged any complaints about discrimination"); *Stroud v. New York City*, 374 F. Supp. 2d 341, 352 (S.D.N.Y. 2005) (holding that plaintiff could not establish a prima facie case with respect to causation because the "adverse employment actions were both part, and the ultimate product, of 'an extensive period of progressive discipline'" (quoting *Slattery*, 248 F.3d at 95)).  Accordingly, Plaintiff's retaliation claims under Title VII, the NYSHRL, and the NYCHRL are dismissed.

## II.       Section 1981

Plaintiff alleges a cause of action under 42 U.S.C. § 1981 for intentional employment discrimination on the basis of race.  (Am. Compl. 4.)  But Section 1981 "does not provide a separate private right of action against state actors."  *Duplan*, 888 F.3d at 621.  As the Supreme Court has explained, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."  *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 733 (1989); *accord Duplan*, 888 F.3d at 619–21 (reaffirming *Jett* holding).  Accordingly, Plaintiff cannot maintain a claim under Section 1981.

Even if Plaintiff's claim under Section 1981 were construed as a claim under Section 1983, it would still fail.  *See Collymore v. City of New York*, 767 F. App'x 42, 45 n.2 (2d Cir. 2019) (summary order) (noting district court correctly construed Section 1981 claims as Section 1983 claims pursuant to *Duplan*).  "[A] municipality cannot be held liable pursuant to § 1983 solely because of the discriminatory actions of one of its employees."  *Back v. Hastings on Hudson Union Free Sch. Dist.*, 365 F.3d 107, 128 (2d Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)).  Plaintiff "has failed to allege that the 'challenged acts were performed pursuant to a municipal policy or custom,' as required to maintain a § 1983 action against a municipality."  *Duplan*, 888 F.3d at 621 (quoting *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004); and citing *Monell*, 436 U.S. at 692–94).  Accordingly, Plaintiff's claim under Section 1981—even if construed as a claim under Section 1983—is dismissed.

## III.      First Amendment Retaliation

Plaintiff alleges a claim for First Amendment retaliation in the original Complaint.  (Compl. App'x 1–2.)  A plaintiff claiming First Amendment retaliation must demonstrate that: "(1) his speech addressed a matter of public concern, (2) he suffered an adverse employment action, and

(3) a causal connection existed between the speech and the adverse employment action, 'so that it can be said that his speech was a motivating factor in the determination.'" *Mandell v. County of Suffolk*, 316 F.3d 368, 382 (2d Cir. 2003) (quoting *Morris v. Lindau*, 196 F.3d 102, 109–10 (2d Cir. 1999), *abrogated on other grounds by Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012)).

The test for whether speech is protected by the First Amendment has two requirements: "(1) that the employee speak as a citizen, and (2) that the employee speak on a matter of public concern." *Frisenda v. Inc. Vill. of Malverne*, 775 F. Supp. 2d 486, 504 (E.D.N.Y. 2011); *see Sousa v. Roque*, 578 F.3d 164, 169–70 (2d Cir. 2009). Speech is on a matter of public concern where it relates "to any matter of political, social or other concern to the community." *Nagle v. Marron*, 663 F.3d 100, 106 (2d Cir. 2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). "Statements made pursuant to official duties are not protected." *Id.* (citing *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). Furthermore, "even if a public employee's speech is not required by, or included in, his job description, or made in response to a request by the employer, he speaks as an employee and not as a citizen if the speech is part-and-parcel of his concerns about his ability to properly execute his duties." *Id.* (alterations and internal quotation marks omitted) (quoting *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010)).

Plaintiff's First Amendment retaliation claim fails because Plaintiff's speech was either not protected by the First Amendment or was not causally related to his termination. Plaintiff's July 25 letter to Ms. Titus does not address a matter of public concern. In the letter, Plaintiff complains of general conduct of his supervisors and how he was not allowed to address certain situations involving patrons in the manner he saw fit. (*See generally* Am. Compl. Ex. 12.) Plaintiff's letter does not qualify for First Amendment protection because it "principally focuses on an issue that is personal in nature and generally related to [Plaintiff's] own situation" and "is calculated to redress

personal grievances." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 95 (2d Cir. 2020) (quoting *Montero v. City of Yonkers*, 890 F.3d 386, 399–400 (2d Cir. 2018)); *see also Weintraub*, 593 F.3d at 203 (finding that a teacher's complaint regarding how her supervisors handle classroom discipline was not protected speech).

In his opposition, Plaintiff argues that his employee memo-book entries and Verified Counter Answer filed with the EEOC describe safety violations that are a matter of public concern. (Opp. 23.) The memo-book entries are statements made in the context of Plaintiff's official job duties and therefore are not protected. *Nagle*, 663 F.3d at 106 (citing *Garcetti*, 547 U.S. at 421); *see also Brady v. County of Suffolk*, 657 F. Supp. 2d 331, 344–54 (E.D.N.Y. 2009) (finding that police officers' internal memo and oral statements to supervisors about policy of not ticketing off-duty officers were made pursuant to official duties and therefore not protected). And assuming Plaintiff's EEOC filings qualify as speech on a matter of public concern, they post-dated Plaintiff's termination and therefore could not have been a motivating factor of his termination. *See Lami v. Stahl*, No. 3:05CV1416 (MRK), 2007 WL 2221162, at *5 (D. Conn. July 31, 2007); *see also Moran v. City of New Rochelle*, 346 F. Supp. 2d 507, 517 (S.D.N.Y. 2004) (noting that "actions that occurred prior to the speech could not have been caused by the speech and, therefore, cannot form the basis of liability under a [First Amendment] retaliation claim"). Accordingly, Plaintiff's claim for First Amendment retaliation is dismissed.

## IV.    Whistleblower Protection Act

In the original Complaint, Plaintiff alleges a cause of action pursuant to the Whistleblower Protection Act of 1989. (Compl. App'x 1.) But this statute provides remedies only to federal employees. *See Delgado v. Puerto Rican Fam. Inst., Inc.*, No. 97 CIV. 7122(DAB), 2001 WL 964000, at *8 n.8 (S.D.N.Y. Aug. 23, 2001); *Rogers v. Makol*, No. 3:13-CV-946 JAM, 2014 WL

4494235, at *5 (D. Conn. Sept. 10, 2014); *Burnett v. Trinity Inst. Homer Perkins Ctr., Inc.*, No. 1:10-CV-681 GLSDRH, 2011 WL 281023, at *4 n.4 (N.D.N.Y. Jan. 25, 2011); *Thurber v. Finn Acad.*, No. 6:20-CV-06152 EAW, 2021 WL 927627, at *5 (W.D.N.Y. Mar. 11, 2021); *Hurley v. Ithaca City Sch. Dist.-Bd, Educ.*, No. 3:20-cv-0328 (DNH/ML), 2020 WL 1937561, at *5 (N.D.N.Y. Apr. 22, 2020) (collecting cases). Because he alleges only that he is a former employee of the City of New York, Plaintiff cannot maintain a cause of action under the Whistleblower Protection Act. *See id.* (dismissing claim under Whistleblower Protection Act brought by municipal employee); *Young v. Madison-Oneida Bd. of Co-op. Educ. Servs.*, No. 6:11-CV-375 LEK/GHL, 2012 WL 124593, at *2 (N.D.N.Y. Jan. 17, 2012) (same). Accordingly, this claim is dismissed.

## V.     Breach of Contract

Plaintiff alleges a claim for breach of contract arising from his termination. (Am. Compl. 5.) But Plaintiff does not allege the existence of an oral or written contract with Defendant. "New York has a well-established at-will employment doctrine: 'Absent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party.'" *Albert v. Loksen*, 239 F.3d 256, 264 (2d Cir. 2001) (alteration omitted) (quoting *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 333, 506 N.E.2d 919, 514 N.Y.S.2d 209 (1987)).

Plaintiff argues that his termination falls under an exemption to at-will employment. (Opp. 25; Am. Compl. Ex. 15.) To rebut the presumption of at-will employment, an employee must present "evidence that he was made aware of a written policy expressly limiting the employer's right of termination and that he detrimentally relied on that policy in accepting the employment." *Albert*, 239 F.3d at 264 (alterations omitted) (quoting *Fitzgerald v. Martin-Marietta*, 256 A.D.2d

959, 960, 681 N.Y.S.2d 895 (3d Dep't 1998)).   In determining whether the presumption is overcome, courts consider "the totality of circumstances, including the writings, the situation, the course of conduct of the parties and their objectives." *Jones v. Dunkirk Radiator Corp.*, 21 F.3d 18, 22 (2d Cir. 1994) (collecting cases).   "[A]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will . . . ." *Sabetay*, 69 N.Y.2d at 333.

Plaintiff has not plausibly rebutted the at-will employment presumption.   In his opposition (Opp. 24), Plaintiff points to three exhibits attached to the Amended Complaint: (1) a NYC Parks handbook with information regarding Equal Employment Opportunity ("EEO") (Am. Compl. Ex. 47); (2) a signed certification that Plaintiff received and read the handbook (Am. Compl. Ex. 49); and (3) a signed certification that Plaintiff received and shall conform to the provisions of Chapter 68 of the New York City Charter (Am. Compl. Ex. 48).   These documents, however, do not establish a contract limiting Defendant's ability to terminate Plaintiff's employment.   The handbook regarding EEO simply states that discriminatory conduct is prohibited in the workplace (Am. Compl. Ex. 47), and Chapter 68 of the New York City Charter outlines prohibitions on the conduct of public servants, *see* N.Y.C. Charter §§ 2600 *et seq.*   "An employer's general statements reiterating its obligation to abide by existing law concerning discrimination and equal employment do not serve as the basis for [a breach of contract] claim." *Abdi v. Brookhaven Sci. Assocs., LLC*, 447 F. Supp. 2d 221, 229 (E.D.N.Y. 2006) (citing *Burger v. Litton Indus., Inc.*, No. 91 Civ. 0918 (WK) (AJP), 1996 WL 421449, at *22 (S.D.N.Y. Apr. 25, 1996); and *Blaise–Williams v. Sumitomo Bank, Ltd.*, 189 A.D.2d 584, 585–86, 592 N.Y.S.2d 41 (1st Dep't 1993)); *see Albert*, 239 F.3d at 264–65 (noting that employment-related materials "advising employees to report" issues "are the kind of 'generalized language' that under New York law 'will not give rise to an implied employment contract'" (quoting *Fitzgerald*, 256 A.D.2d at 960)).

Plaintiff's allegations of other exemptions are without merit.  (*See* Am. Compl. Ex. 15.)

There is no implied obligation of good faith and fair dealing in at-will employment relationships.

*Zaltz v. Wells Fargo Home Mortg.*, No. 09 Civ. 11225 (BSJ), 2010 WL 3026536, at *5 (S.D.N.Y.

Aug. 2, 2010) (collecting cases).  In addition, under New York law, "there is no exception to the

at-will relationship even if the firing violated public policy."  *Hunter v. Kaufman Enters., Inc.*, No.

CV 09–5540(JS)(AKT), 2011 WL 3555809, at *3 (E.D.N.Y. Aug. 8, 2011) (citing *Lobosco v. N.Y.

Tel. Co.*, 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 751 N.E.2d 462 (2001)).  Accordingly, Plaintiff's

breach of contract claim is dismissed.

## VI.    Libel

Plaintiff seeks damages for libel.  (Am. Compl. 5.)  To state a claim for libel under New

York law, the claimant must plead "(1) a false statement that is (2) published to a third party

(3) without privilege or authorization, and that (4) causes harm."  *Elias v. Rolling Stone LLC*, 872

F.3d 97, 104 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 120 A.D.3d 28, 34, 987

N.Y.S.2d 37 (1st Dep't 2014)).  Plaintiff has not alleged with particularity any facts that suggest

that Defendant published false statements about Plaintiff to a third party that caused harm to

Plaintiff.  Accordingly, Plaintiff's libel claim is dismissed.

## VII.    Negligence

Plaintiff alleges a cause of action for negligence.  (Am. Compl. 5.)  Plaintiff does not

specify the grounds for this cause of action in his pleadings, but in his opposition, he seeks relief

for negligent infliction of emotional distress.  (Opp. 27.)

Under New York law, "'a cause of action for negligent infliction of emotional distress arises

only in unique circumstances, when a defendant owes a special duty only to plaintiff' or 'where

there is proof of a traumatic event that caused the plaintiff to fear for her own safety.'"  *Starr v.*

24

*Time Warner, Inc.*, No. 07 Civ. 5871(DC), 2007 WL 4144627, at \*6 (S.D.N.Y. Nov. 21, 2007) (alteration omitted) (quoting *Cucchi v. N.Y.C. Off-Track Betting Corp.*, 818 F. Supp. 647, 656 (S.D.N.Y. 1993)).  "[A]n employer does not owe a special duty to an individual employee, because it has an obligation to treat all employees in the same manner." *Alexander v. Westbury Union Free Sch. Dist.*, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) (quoting *Cucchi*, 818 F. Supp. at 656).

Plaintiff's claim for negligent infliction of emotional distress fails because Plaintiff has not alleged the breach of a special duty or a traumatic event that caused him to fear for his safety. Accordingly, this claim is dismissed.

## VIII.   Intentional Infliction of Emotional Distress

In his original Complaint, Plaintiff asserts a claim for intentional infliction of emotional distress.  (Compl. App'x 2.)  To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must satisfy four elements: "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993)).  To qualify as extreme and outrageous, "[t]he conduct alleged must be 'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Coggins v. County of Nassau*, 254 F. Supp. 3d 500, 523 (E.D.N.Y. 2017) (quoting *Martin v. Citibank, N.A.*, 762 F.2d 212, 220 (2d Cir. 1985)).

As an initial matter, Plaintiff is precluded from bringing a claim for intentional infliction of emotional distress arising from his termination because he was an at-will employee. *See, e.g.*, *Abeles v. Mellon Bank Corp.*, 298 A.D.2d 106, 747 N.Y.S.2d 372, 373 (1st Dep't 2002) ("[P]laintiff

was an at-will employee terminable from her position at any time and for any reason, or even for no reason at all, and thus was without recourse to sue, as she has, for wrongful discharge by means of a cause of action for intentional infliction of emotional distress.") (citing *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983))).  In any event, Plaintiff's allegations of Defendant's conduct fall far short of the high bar to state a claim of intentional infliction of emotional distress.  *See, e.g.*, *Gay v. Carlson*, 60 F.3d 83, 89 (2d Cir. 1995) (affirming dismissal of claim for intentional infliction of emotional distress based on allegations that defendants fabricated accounts of plaintiff's alleged misconduct to induce employer to fire plaintiff); *see also Chimarev v. TD Waterhouse Inv'r Servs., Inc.*, 280 F. Supp. 2d 208, 215 (S.D.N.Y. 2003) (noting that "being snubbed by co-workers, disciplined by managers in an unpleasant manner, and taunted by peers for ethnic differences are not actionable under the tort of intentional infliction of emotional distress").  Accordingly, Plaintiff's claim for intentional infliction of emotional distress is dismissed.

\*      \*      \*

The Court has carefully reviewed Plaintiff's Amended Complaint and the parties' briefs. Any remaining allegations or claims not specifically discussed in this opinion are without merit and fail to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED and the Amended Complaint is DISMISSED.  The Clerk of Court is respectfully requested to terminate docket entry 53 and to close the case.

**SO ORDERED.**

Date:  **September 28, 2021**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**